| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Ray Cattaneo | **DEFENDANTS**<br>Matthew M. Motil |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Eric R. Neuman, Diller & Rice LLC<br>1107 Adams St.<br>Toledo, OH 43604       (419) 244-8500 | **ATTORNEYS** (If Known)<br>Thomas W. Coffey<br>2430 Tremont Avenue, Front<br>Cleveland, OH 44113-4635 |
|---|---|

| **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Determination of Dischargeability of tax debt  pursuant to 11 U.S.C. § 523(a)(2), § 523(a)(4) and § 523(a)(19)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §§523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
   (other than domestic support)
☒ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought      Determination that Plaintiff's claim is not dischargeable as  the result of fraud, or defalcation while acting in a fiduciary capacity dischargeable and entering a monetary judgment for actual damages as determined by the Court and other equitable relief this Court may determine is fair and just.

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>  Matthew M. Motil | BANKRUPTCY CASE NO.<br>  22-10571 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Ohio | DIVISION OFFICE<br>  Cleveland | NAME OF JUDGE<br>  Arthur I. Harrix |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>       April 18, 2022 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Eric R. Neuman, Attorney for Creditor,  Ray Cattaneo | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## CLEVELAND, OHIO

| | | |
|---|---|---|
| In Re: | * | Case No.  22-10571 |
| | | Chapter 7 |
| Matthew M. Motil | * | Judge Arthur I Harris |
| | | Adv. Case No. |
|        Debtor | * | |
| | | |
| Ray Cattaneo | * | |
| 606 N. Central Expressway | | |
| Allen, Texas 75013 | * | |
| | | |
|        Plaintiff, | * | |
| vs. | | |
| | * | |
| Matthew M. Motil | | |
| 7011 Chadbourne Drive | * | |
| North Olmsted, OH 44070 | | |
| | * | |
|        Defendant. | | |
| | * | |
| Notice also to: | | |
| | | |
| Thomas W. Coffey | * | |
| Attorney for Debtor | | |
| 2430 Tremont Avenue, Front | * | |
| Cleveland, OH 44113-4635 | | |
| (Debtor's Attorney) | * | |
| | | |
| * | * | * |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF A PARTICULAR DEBT PURSUANT TO 11 U.S.C § 523(a)(2), § 523(a)(4) AND § 523(a)(19)

Now comes the Plaintiff, Ray Cattaneo, ("Plaintiff") by and through undersigned counsel,

and for its complaint states as follows:

1

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §157 and

1334 and 11 U.S.C. §523(a). This is an adversary proceeding pursuant to Bankruptcy Rule

7001(6) and a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (I). Pursuant to

Bankruptcy Rule 7008, the Plaintiff states that he consents to the entry of final orders and

judgments by the bankruptcy court.

2.      Venue is proper in this district pursuant to 28 U.S.C. §1409.

## INTRODUCTION AND ALLEGATIONS COMMON
## TO ALL COUNTS OF THE COMPLAINT

3.      Plaintiff is an individual residing in Collin County, Texas.

4.      That upon information and belief, the Defendant, Matthew Motil (hereinafter the
"Defendant"), is an individual residing in the state of Ohio

5.      That upon information and belief, the Defendant had an ownership interest in a
limited liability company called NSEM Mansfield 1, LLC. ("NSEM").

6.      That upon information and belief, the Defendant had control over the business
operations of NSEM.

7.      That the Defendant holds himself out to be an expert and knowledgeable in real
estate investing and investments.

8.      That the Defendant, through at least June of 2020, made numerous posts on the
internet concerning the opportunities the Defendant could offer for investing in real estate.

9.      That such posts included the Defendant providing a newsletter to would be
investors.

10.     That the Plaintiff subscribed to the newsletter offered by the Defendant.

11.     That based upon his subscription to the Defendant's newsletter, the Defendant individually sent to the Plaintiff emails concerning opportunities for investors to invest with the Defendant.

12.     That in June of 2020, the Plaintiff responded to one of the above referenced emails sent by the Defendant individually.

13.     That based upon such response, the Plaintiff conferred with the Defendant in June of 2020, individually, with regards to making an investment. That such communications included at least two phone calls and a few text conversations between the Plaintiff and the Defendant.

14.     That on or around June 16, 2020, the Defendant, acting on behalf of NSEM, entered into a transaction (hereinafter the "Agreement") whereby Plaintiff was to lend $100,000.00 for a term of six (6) months to NSEM.

15.     The $100,000.00 loan under the Agreement was to be secured by a first lien upon the real property located at 146 S. Main Street, Mansfield, Ohio 44902 (hereinafter the "Property").

16.     That NSEM is the record title owner of the Property pursuant to a General Warranty Deed from Residential Income Fund 56, LLC to NSEM Mansfield, executed on March 4, 2019 and recorded with the Office of the Richland County Recorder on March 27, 2019 as Instrument No.: 201900003040, Book 2688, Pages 172-180.

17.     The Agreement was documented with a promissory note ("Note") and mortgage ("Mortgage") (hereinafter collectively the "Loan"). Copies of the Note and Mortgage are attached hereto, respectively identified as "Exhibit A" and "Exhibit B".

18.     That the Defendant executed the Note on behalf of NSEM.

19.      The documentation for the Loan was prepared by the Defendant and NSEM.

20.     That the Note provides that the borrower will pay $1,000.00 to the Plaintiff for a term of six (6) months from August 1, 2020 through January 1, 2021, with a balloon repayment of $100,000.00 due on or before February 1, 2021.

21.     The Note further provides that the borrower shall pay all costs and expenses incurred by Plaintiff, including all reasonable attorney fees, for the collection of the Note upon default.

22.     That the Defendant individually and behalf of NSEM did not comply with the terms of the Note and said Note is in default.

23.     That the Defendant individually and on behalf of NSEM represented to the Plaintiff that the Property was unencumbered by other liens.

24.     That at the time of the Loan, the Property was in fact encumbered by other interests.

25.     That at the time of the Loan and Agreement, the Property was encumbered by other interests, including mortgages, security agreements, fixture filings, and assignments to other individuals and entities, with all such interest being superior in right to the Mortgage.

26.     That the Defendant knew at the time of the Loan and Agreement, that the Property was in fact encumbered by other interests which would be superior in right to the Mortgage.

27.     That at the time of the Loan, the Defendant individually and on behalf of NSEM intentionally misrepresented to the Plaintiff that the Property was unencumbered by other liens which would be superior in right to the Mortgage.

28.     That the Defendant, individually and on behalf of NSEM misrepresented to Plaintiff that the value of the Property was in excess of $100,000.00.

4

29.     That the Defendant, individually and on behalf of NSEM knew that the value of the Property was not in excess of $100,000.00.

30.     That the value of the Property is not, in fact, worth more than $100,000.00.

31.     That the Defendant, individually and on behalf of NSEM represented to the Plaintiff that they would file the Mortgage on his behalf with the Richland County Recorder's Office.

32.     That neither the Defendant, individually or on NSEM filed the Mortgage with the Richland County Recorder's Office.

33.     That the Defendant, individually, and on behalf of NSEM have not supplied and refuse to supply Plaintiff with the original Note and Mortgage despite promises to do so.

34.     Upon information and belief, the Defendant owns and/or controls numerous other business entities.

35.     That upon information and belief, the Defendant used the proceeds from the Loan for his own use and benefit, and/or, upon information and belief, the Defendant used the proceeds received from the Loan for the benefit and use of those other entities which are owned and/or controlled by the Defendant.

36.     That the Defendant engaged in scheme to defraud the Plaintiff of the Loan Proceeds.

37.     That upon information and belief, the Defendant on behalf of himself and other business entities in which he owned and/or controlled, engaged in a scheme to defraud investors, including the Plaintiff.

38.     That the Defendant individually and on behalf of NSEM was engaged in a scheme to defraud the Plaintiff by inducing by artifice and trickery, the Plaintiff to enter into the

5

Agreement and make the Loan, with the Defendant never having the intention to honor its promises and representations.

39.     That on March 27, 2022, the Defendant commenced a case in this Court seeking relief under Chapter 7 of the United States Bankruptcy Code. ("Case").

40.     That the pursuant to the Agreement and the Loan, the Plaintiff is a creditor of the Defendant and holds a claim in the Case. ("Claim").

**FIRST CAUSE OF ACTION UNDER 11 USC 523(A)(2)(A)**

41.     Plaintiff reincorporates as if fully rewritten herein, the allegations contained in the above paragraphs.

42.     That Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> >
> > (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

43.     That in entering into the Agreement and by entering into the Loan, the Defendant individually and on behalf of NSEM made representations to the Plaintiff that he would comply with and abide by the representations he made, including those set forth in the Note and Mortgage.

44.     That at the time of the Agreement and the Loan, the Defendant individually and on behalf of NSEM had no intention of honor those promises and representations he made.

45.     That the promises and representations made by the Defendant individually and on behalf of NSEM, including those promises and representations concerning the value of the

Property and the lack of superior encumbrances against the Property, were material promises and representations and induced the Plaintiff to enter into the Agreement and make the Loan.

46.     That in the absence of the material promises and representations made by the Defendant individually and on behalf of NSEM, the Plaintiff would not have entered into the Agreement, nor would the Plaintiff have made the Loan.

47.     That the Plaintiff reasonably and justifiably relied upon the false and fraudulent promises made by the Defendant individually and on behalf of NSEM, including but not limited to those representations concerning the lack of superior encumbrances against the Property and the value of the Property.

48.     That the promises and representations made by the Defendant individually and on behalf of NSEM with respect to the Agreement and the Loan were intentionally false and fraudulent representations.

49.     That the Plaintiff performed all those promises made with respect to the Agreement and the Loan.

50.     That the Defendant, individually and on behalf of the NSEM knew or should have known that the Plaintiff would rely on the false and fraudulent representations made to him concerning the Agreement and the Loan.

51.     That as a direct and proximate result of the Defendant's intentionally false and fraudulent material representations, the Plaintiff had been damaged in an amount in excess of $100,000.00.

52.     **WHEREFORE**, pursuant to 11 USC § 523(a)(2), the Plaintiff seeks an order and judgment from the Court holding that the Plaintiff's Claim in the Case arose as the result of a false pretense, false misrepresentation and/or actual fraud on the part of the Defendant, and

therefore such Claim is not subject to any order of discharge entered in the Case, and that to the

extent the Claim of the Plaintiff is not liquidated in another court of competent jurisdiction, that

the Court liquidated the Claim of the Plaintiff by entering a monetary judgment against the

Defendant for actual damages in an amount determined by the Court, that the Court award fees

and costs to the Plaintiff, including his attorney fees and other legal costs, that the Court award

the Plaintiff punitive damages and that the Court enter any other relief it deems just and

equitable.

## SECOND CAUSE OF ACTION UNDER 11 USC 523(A)(4)

53.     Plaintiff reincorporates as if fully rewritten herein, the allegations contained in the

above paragraphs.

54.     Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

> A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does
> not discharge an individual debtor from any debt-
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or
> larceny[.]

55.     That Defendant, by being the owner and/or person in control of NSEM, was under

a legal duty to operate in the best interest of NSEM and acted in a fiduciary capacity with respect

to NSEM.

56.     That as a fiduciary, the Defendant was under a legal obligation to act in the best

interest of NSEM.

57.     That the Plaintiff actually, reasonably and justifiably relief on Defendant's

fiduciary capacity with respect to NSEM when entering into the Agreement and the Loan.

58.     That the Defendant misappropriated and stole from NSEM those funds the

Plaintiff had lent to NSEM under the Loan.

59.     That the Defendant's actions of misappropriating and stealing from NSEM violated those fiduciary duties the Defendant had to NSEM.

60.     That the Defendant's actions of misappropriating and stealing from NSEM constitutes the act of defalcation for purposes of § 523(a)(4).

61.     That the Defendant's actions of misappropriating and stealing from NSEM constitutes the acts of embezzlement and larceny for purposes of § 523(a)(4).

62.     That by the Defendant's actions of misappropriating and stealing money from NSEM, the Plaintiff's claim against NSEM and his ability to recover against NSEM under the Loan has been diminished and such claim has been rendered potentially valueless.

63.     That as a direct and proximate result of the Defendant's actions of misappropriating and stealing money from NSEM, and committing the act of defalcation while acting in a fiduciary capacity, the Plaintiff has suffered an injury and incurred damages.

64.     **WHEREFORE**, pursuant to 11 USC § 523(a)(4), the Plaintiff seeks an order and judgment from the Court holding that the Plaintiff's Claim in the Case arose as the result of fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny on the part of the Defendant, and therefore such Claim is not subject to any order of discharge entered in the Case, and that to the extent the Claim of the Plaintiff is not liquidated in another court of competent jurisdiction, that the Court liquidated the Claim of the Plaintiff by entering a monetary judgment against the Defendant for actual damages in an amount determined by the Court, that the Court award fees and costs to the Plaintiff, including his attorney fees and other legal costs, that the Court award the Plaintiff punitive damages and that the Court enter any other relief it deems just and equitable.

## THIRD CAUSE OF ACTION UNDER 11 USC 523(A)(19)

65.     Plaintiff reincorporates as if fully rewritten herein, the allegations contained in the above paragraphs.

66.     That the Agreement and Loan entered into between the Parties was a security for purposes of Federal Law and applicable state law.

67.     That the Defendant individually and on behalf of NSEM sold to Plaintiff a security by entering into the Agreement and Loan.

68.     That upon information and belief, the Defendant is not licensed to sell securities.

69.     That the security sold by the Defendant individually and on behalf of NSEM did not meet the requirements necessary to comply with Federal Securities Law and applicable state securities law as among other matters, the necessary disclosures were not made to the Plaintiff.

70.     That the Defendant's sale of a securities to the Plaintiff was in violation of Federal Securities Law and applicable state securities law and regulations issued under such laws.

71.     That this Court or another court of competent jurisdiction may enter a judgment or other order finding that the Defendant violated Federal Securities Law and applicable state securities law and regulations issued under such laws, and that such orders and judgment may be issued after the commencement of the Case.

72.     **WHEREFORE**, pursuant to 11 USC § 523(a)(19), the Plaintiff seeks an order and judgment from the Court holding that the Plaintiff's Claim in the Case is not subject to any order of discharge entered in the Case, and that to the extent the Claim of the Plaintiff is not liquidated in another court of competent jurisdiction, that the Court liquidated the Claim of the Plaintiff by entering a monetary judgment against the Defendant for actual damages as

determined by the Court, that the Court award fees and costs to the Plaintiff, including his

attorney fees and other legal costs, that the Court award the Plaintiff punitive damages and that

the Court enter any other relief it deems just and equitable.

Respectfully submitted

*s/Eric R. Neuman*
Eric R. Neuman (0069794)
DILLER & RICE
Attorney for Plaintiff
1107 Adams Street
Toledo, Ohio 43604
Phone: (419) 724-9047
Fax: (419) 238-4705
eric@drlawllc.com

11

# EXHIBIT A

# Promissory Note

On this date of <u>June 16, 2020</u>, in return for valuable consideration received, the undersigned, <u>NSEM Mansfield 1, LLC</u> (hereinafter "Borrower") jointly and severally promises to pay <u>Ray Cattaneo (hereinafter "Lender"), the sum of</u> <u>$100,000.00</u> together with interest thereon, as stated in the terms of this note.

**Terms of Repayment** - This loan shall be repaid under the following terms:

$100,000.00 to be financed at 12% simple interest payed in arrears – Monthly payments of $1,000.00. 1st prorated payment on August 1st, 2020 for a 6 month term ending on February 1, 2021 with a balloon of $100,000.00

**Collateral** - The following property will be used as collateral –

<u>146 S. Main Street, Mansfield, Ohio 44902</u>

**Payable On Demand** - The entire unpaid principal and accrued interest thereon, if any, shall become due and payable on demand by the holder of this note 30 days after such demand is made in writing.

**Place of Payment** - all payments due under this note shall be made by ACH or mailed to

_____

or at such other place as the holder of this Note may designate in writing.

**Borrower's Address** - The Borrower shall provide to provide prompt written notice to the Lender of any change of address.

**Prepayment** - This Note may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall first be applied to interest, and then to principal payments in the order of their maturity.

**Default** - In the event of default, the borrower[s] agree to pay all costs and expenses incurred by the Lender, including all reasonable attorney fees (including both hourly and contingent attorney fees as permitted by law) for the collection of this Note upon default, and including reasonable collection charges (including, where consistent with industry practices, a collection charge set as a percentage of the outstanding balance of this Note) should collection be referred to a collection agency.

The note holder understands and agrees that regardless of any other provisions contained herein, this note is a non-recourse note and the holder's sole recourse in the event of a default shall be against the property securing this note and not against the borrower.

**Acceleration of Debt** - In the event that the borrower fails to make any payment due under the terms of this Note, or breach any condition relating to any security, security agreement, note, mortgage or lien granted as collateral security for this Note, seeks relief under the Bankruptcy Code, or suffers an involuntary petition in bankruptcy or receivership not vacated within thirty

(30) days, the entire balance of this Note and any interest accrued thereon shall be immediately due and payable to the holder of this Note.

**Joint and Several Liability** - All borrowers identified in this Note shall be jointly and severally liable for any debts secured by this Note.

**Modification** - No modification or waiver of any of the terms of this Agreement shall be allowed unless by written agreement signed by both parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

**Transfer of the Note** - The borrowers hereby waive any notice of the transfer of this Note by the Lender or by any subsequent holder of this Note, agree to remain bound by the terms of this Note subsequent to any transfer, and agree that the terms of this Note may be fully enforced by any subsequent holder of this Note.

**Severability of Provisions** - In the event that any portion of this Note is deemed unenforceable, all other provisions of this Note shall remain in full force and effect.

**Choice of Law** - All terms and conditions of this Note shall be interpreted under the laws of the state of Ohio.

Signed Under Penalty of Perjury, this 16th Day of June, 2020,

Matthew Motil for
NSEM Mansfield 1, LLC

# EXHIBIT B

## MORTGAGE

Made on this 16th day of June, 2020, Between

        Ray Cattaneo                       (hereinafter "Mortgagee")

        And

        NSEM Mansfield 1, LLC             (hereinafter "Mortgagor")

**Whereas, MORTGAGOR** by its Note (hereinafter the "NOTE") dated June 16, 2020 is indebted to MORTGAGEE in the principal amount of $100,000.00 advanced by MORTGAGEE to MORTGAGOR, together with interest thereon at the rate(s) provided in the NOTE until the INDEBTEDNESS is paid in full in the manner and at the times set forth in the NOTE, with the final payment of principal and interest, if not sooner paid, due and payable at the maturity date set forth in the NOTE, as the same may be amended, and containing other terms and conditions, all of which are specifically incorporated herein by reference; and

**Whereas,** as a condition to extending the aforementioned INDEBTEDNESS to MORTGAGOR, the MORTGAGEE requires, and MORTGAGOR has agreed to secure the payment and performance of its obligations under the Note with this MORTGAGE.

**Now, Therefore,** MORTGAGOR, in consideration of the INDEBTEDNESS and as security for the payment of the same, does hereby mortgage, grant and convey to the MORTGAGEE, its successors and assigns:

All of MORTGAGOR'S right, title and interest in, to and under (i) the premises commonly referred to as **146 S. Main Street, Mansfield, Ohio 44902** (i) as more particularly described in Exhibit A attached hereto and made a part hereof, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining and all of the estate, right, title, interest, claim and demand whatsoever of the Mortgagor therein and in the public streets and ways adjacent thereto, either at law or in equity, in possession or expectancy (collectively, the "Property"); and (ii) the structures and buildings, and all additions and improvements thereto, now or hereafter erected upon the Property (including all equipment constituting fixtures thereon) (collectively, the "Improvements", and together with the Property, the "Mortgaged Premises");

**TO HAVE AND TO HOLD,** the Mortgaged Premises unto the Mortgagee, its successors and/or assigns, to its own use forever in accordance with the provisions hereof.

**Provided,** however, that if the MORTGAGOR shall pay to the MORTGAGEE the INDEBTEDNESS and shall fully perform each of the other covenants and agreements hereinafter set forth, then this Mortgage and the estate hereby granted and conveyed shall become void.

**This Mortgage** is executed and delivered subject to the following covenants and agreements:

(1)        MORTGAGOR shall promptly pay when due the INDEBTEDNESS according to the NOTE and this Mortgage.

(2)      Until the INDEBTEDNESS is fully paid, MORTGAGOR shall: (a) pay and discharge, when the same shall become due and payable, all taxes, assessments, sewer and water rents and all other charges and claims assessed or levied from time to time by any lawful authority upon any part of the MORTGAGED PREMISES and which shall or might have priority in lien or payment to the INDEBTEDNESS secured hereby, such payments to be made directly to the person or entity to which payment is owed; (b) pay and discharge all liens, claims or encumbrances which may be filed against the MORTGAGED PREMISES and which might have priority in lien or payment to the INDEBTEDNESS secured hereby; (c) provide and keep in effect, by paying the necessary premiums and charges thereon, such policies of hazard and liability insurance as MORTGAGEE may from time to time require on the improvements now or hereafter erected on the MORTGAGED PREMISES, with loss payable clauses in favor of MORTGAGOR and MORTGAGEE, as their respective interests may appear; and (d) promptly submit to MORTGAGEE evidence of the date and punctual payment of all of the foregoing charges. In the event of loss, MORTGAGOR shall give prompt notice to the insurance carrier and MORTGAGEE. Unless MORTGAGEE and MORTGAGOR otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the MORTGAGED PREMISES, if the restoration or repair is economically feasible and MORTGAGEE'S security is not lessened. If the restoration or repair is not feasible or if MORTGAGEE'S security would be lessened, the insurance proceeds shall be applied to the INDEBTEDNESS secured by this Mortgage, whether or not then due, with any excess paid to MORTGAGOR. If MORTGAGOR abandons the MORTGAGED PREMISES or does not answer, within 30 days, a notice from MORTGAGEE that the insurance carrier has offered to settle a claim, then MORTGAGEE may collect the insurance proceeds. MORTGAGEE may use the proceeds to repair or restore the MORTGAGED PREMISES or to pay the INDEBTEDNESS secured by this MORTAGEE and MORTGAGOR otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of monthly payments. If the MORTGAGED PREMISES are acquired by the MORTGAGEE through foreclosure, MORTGAGOR'S rights to any insurance policies and proceeds resulting from damage to the MORTGAGED PREMISES prior to the acquisitions shall pass to MORTGAGEE to the extent of the INDEBTEDNESS secured by this Mortgage immediately prior to the acquisition.

(3)      MORTGAGOR shall maintain all improvements subject to this Mortgage in good and substantial repair, MORTGAGEE shall have the right to enter upon the MORTGAGED PREMISES at any reasonable hour for the purpose of inspecting the order, condition and repair of the improvements erected thereon.

(4)      MORTGAGOR covenants and agrees not to create, nor permit to accrue, upon all or any part of the MORTGAGED PREMISES any debt, lien or charge which would be prior in lien or payment to the lien of this Mortgage.

(5)      In the event MORTGAGOR neglects or refuses to perform the covenants and agreements contained in this Mortgage, then MORTGAGEE may, but shall not be required to, do so, and make whatever advances are necessary to protect the value of the MORTGAGED PREMISES and MORTGAGEE'S rights in the MORTGAGED PREMISES, provided that no such payment by the MORTGAGEE shall be considered a waiver or release of any remedy MORTGAGEE may have against MORTGAGOR. MORTGAGEE'S actions may include paying taxes, assessments, maintenance charges, insurance premiums, costs or expenses for the protection of the MORTGAGED PREMISES or the lien of this Mortgage or paying expenses, including attorney's fees, incurred by reason of the MORTGAGOR'S default. Any advances made by MORTGAGEE hereunder shall become additional INDEBTEDNESS of MORTGAGOR secured by this Mortgage. Unless MORTGAGEE agrees in writing to other terms of payment, these advances shall bear interest from the date of disbursement at the rate(s) set forth in the NOTE and shall be payable, with interest, upon notice from MORTGAGEE to MORTGAGOR requesting payment.

(6)      Should the MORTGAGED PREMISES or any part thereof be taken or damaged by reason of any public condemnation proceeding or similar action, the MORTGAGEE shall be entitled to all compensation, awards, and any other payment or relief therefore to the extent of the outstanding INDEBTEDNESS and shall be entitled, at its option, to commence, appear in, and prosecute in its own name, any action or proceeding or to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action, and proceeds are hereby assigned to the

MORTGAGEE, who may, after deducting there from its expenses, including attorney's fees, release any monies received by it or apply the same to any INDEBTEDNESS secured hereby.

(7)     If all or any part of the MORTGAGED PREMISES or any interest in it is sold or transferred, or if a beneficial interest in MORTGAGOR is sold or transferred and MORTGAGOR is not a natural person, without MORTGAGEE'S prior written consent, MORTGAGEE may, at its option, require immediate payment in full of all INDEBTEDNESS secured by this Mortgage. This option shall not be exercised if prohibited by law as of the date of this Mortgage. If MORTGAGEE exercises this option, MORTGAGEE shall give MORTGAGOR written notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is mailed within which MORTGAGOR must pay the entire INDEBTEDNESS. If MORTGAGOR fails to pay these sums prior to the expiration of the 30-day period, MORTGAGEE may invoke any remedy permitted by this Mortgage without further notice or demand on MORTGAGOR.

(8)     The following shall constitute Events of Default under this Mortgage: (a) MORTGAGOR'S failure to pay any installment of principal or interest in accordance with the NOTE; (b) MORTGAGOR'S failure to pay any other sum required to be paid in accordance with the NOTE or this Mortgage, when the same is due and payable; or (c) MORTGAGOR'S failure to perform any covenant or agreement in the NOTE or this Mortgage. If one or more of the foregoing Events of Default occurs, MORTGAGEE may, at its option, after any notice and opportunity to cure required by law and otherwise without notice and opportunity to cure, declare the entire unpaid balance of the INDEBTEDNESS to be immediately due and payable. MORTGAGEE may immediately institute an action of mortgage foreclosure or take any other legal action for the enforcement of this Mortgage, and proceed to final judgment and execution thereon for the INDEBTEDNESS, costs of suit and an attorney's commission for collection of       ten      percent (10.0%) but not less than $2,500.00. Interest at the highest rate provided in the NOTE shall continue to accrue on any judgment obtained by MORTGAGEE, until actual payment is made of the full amount due MORTGAGEE. MORTGAOR hereby waives and releases all benefits that might accrue to MORTGAGOR by virtue of any present or future laws exempting the MORTGAGED PREMISES, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment.

(9)     The covenants in this Mortgage shall bind, and its benefits shall inure to, the MORTGAGOR and the MORTGAGEE and their respective heirs, executors, administrators, successors and assigns, subject to the provisions of Paragraph 8.

(10)    If this Mortgage is executed by more than one person, the undertakings and liability of each shall be joint and several.

(11)    Any notice which is mailed certified mail to MORTGAGOR or to the person(s) who (is)(are) the then owner(s) of the MORTGAGED PREMISES at the address of the MORTGAGED PREMISES or at such other address as MORTGAGOR shall designate to MORTGAGEE in writing, shall be sufficient notice when required under this Mortgage.

(12)    MORTGAGEE'S rights and remedies as provided herein or in the NOTE shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of MORTGAGEE, and may be exercised as often as the occasion therefor shall occur; and the failure to exercise any right or remedy shall in no event be construed as a waiver by MORTGAGEE or release of the same.

(13)    In the event any term or provision of this Mortgage or the application thereof to any person or circumstances shall, to any extent be invalid and unenforceable, the remainder of this Mortgage, or its application other than to that which is held invalid or unenforceable, shall not be affected thereby, and each term and provision hereof shall be valid and enforceable to the fullest extent permitted by law.

This Mortgage shall be governed by the law of Ohio, in which the MORTGAGED PREMISES are located. This provision shall not limit the applicability of federal law to this Mortgage.

Executed this __16th__ Day of __June_____, __2020_____.

For the Mortgagor,

_(signature)_

By: NSEM Mansfield 1, LLC

ACKNOWLEDGMENT STATE OF __Ohio_____ COUNTY OF __Cuyahoga_____

On this __16th__ day of __June_____, __2020_____ personally appeared before me,

__Matthew Motil_____,

known to me or provided sufficient identification, to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

__Kristen M Kish_____ (seal)
Notary Public

My commission expires: __12/16/2023__

**Document Prepared by Matthew Motil**

_(notary seal: KRISTEN M. KISH, NOTARY PUBLIC · STATE OF OHIO, MY COMMISSION EXPIRES DEC 16, 2023, RECORDED IN CUYAHOGA COUNTY)_

**Exhibit A**
Legal Description

Situated in the State of <u>Ohio</u> County of <u>Richland</u> and in the City of <u>Mansfield</u>

Located at:
**146 S. Main Street, Mansfield, Ohio 44902**

With the legal description:

Parcel No. – 027-01-038-04-000