B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Lori Rehn | **DEFENDANTS**<br>Matthew M. Motil |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Eric R. Neuman, Diller & Rice LLC<br>1107 Adams St.<br>Toledo, OH 43604          (419) 244-8500 | **ATTORNEYS** (If Known)<br>Thomas W. Coffey<br>2430 Tremont Avenue, Front<br>Cleveland, OH 44113-4635 |
| **PARTY** (Check One Box Only)<br>☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Determination of Dischargeability of tax debt  pursuant to 11 U.S.C. § 523(a)(2), § 523(a)(4) and § 523(a)(19)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §§523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
   (other than domestic support)
☒ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court
   if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought        Determination that Plaintiff's claim is not dischargeable as  the result of fraud, or defalcation while acting in a fiduciary capacity dischargeable and entering a monetary judgment for actual damages as determined by the Court and other equitable relief this Court may determine is fair and just.

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Matthew M. Motil | BANKRUPTCY CASE NO.<br>22-10571 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Ohio | DIVISION OFFICE<br>Cleveland | NAME OF JUDGE<br>Arthur I. Harrix |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>April 18, 2022 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Eric R. Neuman, Attorney for Creditor | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## CLEVELAND, OHIO

| | | |
|---|---|---|
| In Re: | * | Case No.  22-10571 |
| | | Chapter 7 |
| Matthew M. Motil | * | Judge Arthur I Harris |
| | | Adv. Case No. |
| Debtor | * | |
| | | |
| Lori Rehn | * | |
| 403 Fort Ranch Road | | |
| Georgetown, Texas 78633 | * | |
| | | |
| Plaintiff, | * | |
| vs. | | |
| | * | |
| Matthew M. Motil | | |
| 7011 Chadbourne Drive | * | |
| North Olmsted, OH 44070 | | |
| | * | |
| Defendant. | | |
| | * | |
| Notice also to: | | |
| | | |
| Thomas W. Coffey | * | |
| Attorney for Debtor | | |
| 2430 Tremont Avenue, Front | * | |
| Cleveland, OH 44113-4635 | | |
| (Debtor's Attorney) | * | |

\* \* \*

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF A PARTICULAR DEBT PURSUANT TO 11 U.S.C § 523(a)(2), § 523(a)(4) AND § 523(a)(19)

Now comes the Plaintiff, Lori Rehn, ("Plaintiff"), by and through undersigned counsel,

and for its complaint states as follows:

1

## JURISDICTIONAND VENUE

1.    The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §157 and 1334 and 11 U.S.C. §523(a). This is an adversary proceeding pursuant to Bankruptcy Rule 7001(6) and a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (I). Pursuant to Bankruptcy Rule 7008, the Plaintiff states that she consents to the entry of final orders and judgments by the bankruptcy court.

2.    Venue is proper in this district pursuant to 28 U.S.C. §1409.

## INTRODUCTION AND ALLEGATIONS COMMON
## TO ALL COUNTS OF THE COMPLAINT

3.    Plaintiff is an individual residing in Georgetown Texas.

4.    That upon information and belief, the Defendant, Matthew Motil (hereinafter the "Defendant"), is an individual residing in the state of Ohio.

5.    That upon information and belief, the Defendant had an ownership interest in a number of business entities, including Invcle150, LLC, Buycle158, LLC and Buycle175, LLC.

6.    That upon information and belief, the Defendant is and was the sole and managing member of Invcle150, LLC, Buycle158, LLC and Buycle175, LLC. (Collectively "Entities").

7.    That upon information and belief, the Entities are all limited liability companies formed under Ohio law.

8.    That upon information and belief, the Defendant had, during the time giving rise to the allegations contained in this Complaint, complete and total control over the business operations of the Entities.

2

9.     That the Defendant holds himself out to be an expert and knowledgeable in real estate investing and investments.

10.     That the Defendant was active on social media whereby he solicited investment opportunities.

11.     That the Plaintiff came to know the Defendant, on the internet, through an organization called Apex which assists entrepreneurs.

12.     That upon information and belief, the Defendant had been active in the Apex organization for some time.

13.     That the Plaintiff knew, through Apex, that other members had made investment with the Defendant.

14.     That through representations made by the Defendant on-line though Apex, the Plaintiff contacted the Defendant concerning investment opportunities.

15.     That based upon this contact, the Plaintiff and the Defendant communicated by phone and email on a number of occasions in late 2019 and early 2020 concerning the investment opportunities offered by the Defendant.

16.     That based upon representations made by the Defendant, the Plaintiff decided to invest with the Defendant as now more fully set forth.

17. That on or around January 27, 2020, the Defendant sent to Plaintiff an email, providing as follows:

Lori,

Thank you for trusting us with your investments. I am attaching the mortgage docs and the promissory notes for the three separate deals. Once funds have been received, we will file documents with the county recorders office. Let me know once funds have been sent so we can track it on our end. Let me know if you have any questions.

3

18.     That on or around January 27, 2020, the Defendant, acting on behalf of the Entities, entered into a series of transactions (hereinafter the "Agreements") whereby Plaintiff was and did in fact lend $150,000.00 to the Entities for a term of twelve (12) months as follows:

(a). Loan 1-$60,000.00 to Invcle150, LLC, ("Loan 1");

(b) Loan 2-$50,000.00 to Buycle158, LLC ("Loan 2"); and

(c) Loan 3-$40,000.00 to Buycle175, LLC ("Loan 3").

Collectively the "Loans."

19.     That the salient terms of the Loans are as follows:

(a) Loan 1-monthly payments of $600.00 for a term of 12 months, with a balloon payment of $60,000 due on or before March 1, 2021.

(b)  Loan 2- monthly payments of $500.00 for a term of 12 months, with a balloon payment of $50,000 due on or before March 1, 2021.

(c) Loan 3 - monthly payments of $400.00 for a term of 12 months, with a balloon payment of $40,000 due on or before March 1, 2021.

Attached hereto as Exhibit A are copies of the respective "Notes" giving rise to the Loans.

20.     That the Defendant signed the Loans on behalf of the respective Entities.

21.     That the Defendant represented to the Plaintiff that the Loans were to be secured by first mortgages against specified real estate as follows:

(a) Loan 1-to be secured by a first mortgage against real property owned by Invcle150, LLC located at 13529 Leroy Avenue, Cleveland, Ohio 44135;

(b) Loan 2-to be secured by a first mortgage against real property owned by Buycle158, LLC located at 13410 Wainfleet Avenue, Cleveland, Ohio 44135; and

(c) Loan 3-to be secured by a first mortgage against real property owned by Buycle175, LLC located at 3318 Hearthstone Road, Parma, Ohio 44134.

Collectively the above mortgages are referred to herein as the "Mortgages" and the above real properties are referred herein to as the "Properties." Attached hereto as Exhibit B are copies of the Mortgages.

22.    That the Defendant signed the Mortgages on behalf of the respective Entities.

23.    That the Defendant executed the Notes on behalf of the Entities.

24.    The documentation for the Loans, including the Mortgages and respective Notes, were prepared by the Defendant on behalf of the respective Entities.

25.    That the Loans provide that the borrower, the Defendant, shall pay all costs and expenses incurred by Plaintiff, including all reasonable attorney fees, for the collection of the Loans upon default.

26.    That the Defendant individually and behalf of the respective Entities did not comply with the terms of the Loans and said Loans are in default.

27.    That the Defendant, individually, and on behalf of the respective Entities defaulted under the Loans and Agreement because, inter alia, they failed to pay the principal of the Loans when due and still have not paid such principal.

28.    That the Defendant individually and on behalf of the respective Entities represented to the Plaintiff that the Properties were unencumbered by other liens.

29.    That at the time of the Loans, the Properties were in fact encumbered by other superior interests.

30.    That at the time of the Loans and Agreement, the Properties were encumbered by other interests which were superior in right to the Mortgages.

5

31.     That the Defendant knew at the time of the Loans and Agreement, that the Properties were in fact encumbered by other interests which would be superior in right to the Mortgages.

32.     That at the time of the Loans, the Defendant individually and on behalf of the respective Entities intentionally misrepresented to the Plaintiff that the Properties were unencumbered by other liens which would be superior in right to the Mortgages.

33.     That the Defendant, individually and on behalf of the respective Entities misrepresented to the Plaintiff that the value of the Properties was in excess of $150,000.00.

34.     That the Defendant, individually and on behalf of the respective Entities knew that the value of the Properties was not in excess of $150,000.00.

35.     That the value of the Properties are not, in fact, worth more than $150,000.00.

36.     That the Defendant, individually and on behalf of the Entities represented to the Plaintiff that they would file and record the Mortgages.

37.     That neither the Defendant, individually or on behalf of the Entities filed the Mortgages with the applicable recorder's office.

38.     That the Defendant, individually, and on behalf of the Entities, have not supplied and refuse to supply Plaintiff with the original Notes and Mortgages despite promises to do so.

39.     Upon information and belief, the Defendant owns and/or controls numerous other business entities.

40.     That upon information and belief, the Defendant used the proceeds from the Loans for his own use and benefit, and/or, upon information and belief, the Defendant used the proceeds received from the Loans for the benefit and use of those other entities which are owned and/or controlled by the Defendant.

6

41.     That the Defendant engaged in scheme to defraud the Plaintiff of the proceeds from the Loans.

42.     That upon information and belief, the Defendant, on behalf of himself and other business entities in which he owned and/or controlled, engaged in a scheme to defraud investors, including the Plaintiff.

43.     That the Defendant individually and on behalf of the Entities was engaged in a scheme to defraud the Plaintiff by inducing by artifice and trickery, the Plaintiff to enter into the Agreement and make the Loans, with the Defendant never having the intention to honor his promises and representations or with the Defendant having no reasonable expectation that he would have the ability to honor his promises and representations.

44.     That on March 27, 2022, the Defendant commenced a case in this Court seeking relief under Chapter 7 of the United States Bankruptcy Code. ("Case").

45.     That the pursuant to the Agreement and the Loan, the Plaintiff is a creditor of the Defendant and holds a claim in the Case. ("Claim").

**FIRST CAUSE OF ACTION UNDER 11 USC 523(A)(2)(A)**

46.     Plaintiff reincorporates as if fully rewritten herein, the allegations contained in the above paragraphs.

47.     That Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-
>
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>>
>> (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

48.     That in entering into the Agreement and by entering into the Loans, the Defendant individually and on behalf of the Entities made representations to the Plaintiff that he would comply with and abide by the representations he made, including those set forth in the Notes and Mortgages.

49.     That at the time of the Agreement and the Loans, the Defendant individually and on behalf of the Entities had no intention of honoring those promises and representations he made individually and on behalf of the Entities.

50.     That the promises and representations made by the Defendant individually and on behalf of the Entities, including those promises and representations concerning the value of the Properties and the lack of superior encumbrances against the Properties, were material promises and representations and induced the Plaintiff to enter into the Agreement and make the Loans.

51.     That in the absence of the material promises and representations made by the Defendant individually and on behalf of the Entities, the Plaintiff would not have entered into the Agreement, nor would the Plaintiff have made the Loans.

52.     That the Plaintiff reasonably and justifiably relied upon the false and fraudulent promises made by the Defendant individually and of the Entities, including but not limited to those representations concerning the lack of superior encumbrances against the Properties and the value of the Properties.

53.     That the promises and representations made by the Defendant individually and on behalf of the Entities with respect to the Agreement and the Loans were intentionally false and fraudulent representations.

54.     That the Plaintiff performed all those promises made with respect to the Agreement and the Loans.

55.     That the Defendant, individually and on behalf of the Entities knew or should have known that the Plaintiff would rely on the false and fraudulent representations made to her concerning the Agreement and the Loans.

56.     That as a direct and proximate result of the Defendant's intentionally false and fraudulent material representations, the Plaintiff had been damaged in an amount in excess of $150,000.00.

57.     **WHEREFORE**, pursuant to 11 USC § 523(a)(2), the Plaintiff seeks an order and judgment from the Court holding that the Plaintiff's Claim in the Case arose as the result of a false pretense, false misrepresentation and/or actual fraud on the part of the Defendant, and therefore such Claim is not subject to any order of discharge entered in the Case, and that to the extent the Claim of the Plaintiff is not liquidated in another court of competent jurisdiction, that the Court liquidated the Claim of the Plaintiff by entering a monetary judgment against the Defendant for actual damages in an amount determined by the Court, that the Court award fees and costs to the Plaintiff, including her attorney fees and other legal costs, that the Court award the Plaintiff punitive damages and that the Court enter any other relief it deems just and equitable.

### SECOND CAUSE OF ACTION UNDER 11 USC 523(A)(4)

58.     Plaintiff reincorporates as if fully rewritten herein, the allegations contained in the above paragraphs.

59.     Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

> A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-

> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

60.    That Defendant, by being the owner and/or person in control of the Entities, was under a legal duty to operate in the best interest of the Entities and acted in a fiduciary capacity with respect to the Entities.

61.    That as a fiduciary, the Defendant was under a legal obligation to act in the best interest of the Entities.

62.    That the Plaintiff actually, reasonably and justifiably relief on Defendant's fiduciary capacity with respect to the Entities when entering into the Agreement and the Loans.

63.    That the Defendant misappropriated and stole from the Entities those funds the Plaintiff had lent to the Entities under the Loans.

64.    That the Defendant's actions of misappropriating and stealing from the Entities violated those fiduciary duties the Defendant had to the Entities.

65.    That the Defendant's actions of misappropriating and stealing from the Entities constitutes the act of defalcation for purposes of § 523(a)(4).

66.    That the Defendant's actions of misappropriating and stealing from the Entities constitutes the acts of embezzlement and larceny for purposes of § 523(a)(4).

67.    That by the Defendant's actions of misappropriating and stealing money from the Entities, the Plaintiff's claim against the Entities and her ability to recover against the Entities under the Loans has been diminished and such claims have been rendered potentially valueless.

68.     That as a direct and proximate result of the Defendant's actions of misappropriating and stealing money from the Entities, and committing the act of defalcation while acting in a fiduciary capacity, the Plaintiff has suffered an injury and incurred damages.

69.    **WHEREFORE**, pursuant to 11 USC § 523(a)(4), the Plaintiff seeks an order and judgment from the Court holding that the Plaintiff's Claim in the Case arose as the result of fraud

or defalcation while acting in a fiduciary capacity, embezzlement, or larceny on the part of the Defendant, and therefore such Claim is not subject to any order of discharge entered in the Case, and that to the extent the Claim of the Plaintiff is not liquidated in another court of competent jurisdiction, that the Court liquidated the Claim of the Plaintiff by entering a monetary judgment against the Defendant for actual damages in an amount determined by the Court, that the Court award fees and costs to the Plaintiff, including her attorney fees and other legal costs, that the Court award the Plaintiff punitive damages and that the Court enter any other relief it deems just and equitable.

## THIRD CAUSE OF ACTION UNDER 11 USC 523(A)(19)

70.     Plaintiff reincorporates as if fully rewritten herein, the allegations contained in the above paragraphs.

71.     That the Agreement and Loans entered into between the Parties were securities for purposes of Federal Law and applicable state law.

72.     That the Defendant individually and on behalf of the Entities sold to Plaintiff securities by entering into the Agreement and the Loans.

73.     That upon information and belief, the Defendant is not licensed to sell securities.

74.     That upon information and belief, the Defendant never registered the Entities to sell securities; nor were the Loans registered as securities.

75.     That the securities sold by the Defendant individually and on behalf of the Entities did not meet the requirements necessary to comply with Federal Securities Law and applicable state securities law as among other matters, the necessary disclosures were not made to the Plaintiff.

22-10571-aih    Doc 30    FILED 05/06/22    ENTERED 05/06/22 16:01:18    Page 13 of 35

76.     That the Defendant's sale of a securities to the Plaintiff was in violation of Federal Securities Law and applicable state securities law and regulations issued under such laws.

77.     That this Court or another court of competent jurisdiction may enter a judgment or other order finding that the Defendant violated Federal Securities Law and applicable state securities law and regulations issued under such laws, and that such orders and judgment may be issued after the commencement of the Case.

78.     **WHEREFORE**, pursuant to 11 USC § 523(a)(19), the Plaintiff seeks an order and judgment from the Court holding that the Plaintiff's Claim in the Case is not subject to any order of discharge entered in the Case, and that to the extent the Claim of the Plaintiff is not liquidated in another court of competent jurisdiction, that the Court liquidated the Claim of the Plaintiff by entering a monetary judgment against the Defendant for actual damages as determined by the Court, that the Court award fees and costs to the Plaintiff, including her attorney fees and other legal costs, that the Court award the Plaintiff punitive damages and that the Court enter any other relief it deems just and equitable.

Respectfully submitted

*s/Eric R. Neuman*
Eric R. Neuman (0069794)
DILLER & RICE
Attorney for Plaintiff
1107 Adams Street
Toledo, Ohio 43604
Phone: (419) 724-9047
Fax: (419) 238-4705
eric@drlawllc.com

## Promissory Note

On this date of <u>January 27, 2020</u>, in return for valuable consideration received, the undersigned, <u>BuyCLE158, LLC</u> (hereinafter "Borrower") jointly and severally promises to pay <u>Lori A. Rehn</u> (hereinafter "Lender"), the sum of <u>$50,000.00</u> together with interest thereon, as stated in the terms of this note.

**Terms of Repayment** - This loan shall be repaid under the following terms:

$50,000.00 to be financed at 12% simple interest – Monthly payments of $500.00. 1st prorated payment on March 1st, 2020 – Last payment on March 1st, 2021 with a balloon of $50,000.00

**Collateral** - The following property will be used as collateral –

<u>3318 Hearthstone Road, Cleveland, Ohio 44134</u>

**Payable On Demand** - The entire unpaid principal and accrued interest thereon, if any, shall become due and payable on demand by the holder of this note 120 days after such demand is made in writing. Should demand be made before note maturation, interest rate shall retroactively change to 3% APR.

**Place of Payment** - all payments due under this note shall be made by ACH or mailed to

_____
_ or at such other place as the holder of this Note may designate in writing.

**Borrower's Address** - The Borrower shall provide to provide prompt written notice to the Lender of any change of address.

**Prepayment** - This Note may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall first be applied to interest, and then to principal payments in the order of their maturity.

**Default** - In the event of default, the borrower[s] agree to pay all costs and expenses incurred by the Lender, including all reasonable attorney fees (including both hourly and contingent attorney fees as permitted by law) for the collection of this Note upon default, and including reasonable collection charges (including, where consistent with industry practices, a collection charge set as a percentage of the outstanding balance of this Note) should collection be referred to a collection agency.

The note holder understands and agrees that regardless of any other provisions contained herein, this note is a non-recourse note and the holder's sole recourse in the event of a default shall be against the property securing this note and not against the borrower.

**Acceleration of Debt** - In the event that the borrower fails to make any payment due under the terms of this Note, or breach any condition relating to any security, security agreement, note, mortgage or lien granted as collateral security for this Note, seeks relief under the Bankruptcy Code, or suffers an involuntary petition in bankruptcy or receivership not vacated within thirty

(30) days, the entire balance of this Note and any interest accrued thereon shall be immediately due and payable to the holder of this Note.

**Joint and Several Liability** - All borrowers identified in this Note shall be jointly and severally liable for any debts secured by this Note.

**Modification** - No modification or waiver of any of the terms of this Agreement shall be allowed unless by written agreement signed by both parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

**Transfer of the Note** - The borrowers hereby waive any notice of the transfer of this Note by the Lender or by any subsequent holder of this Note, agree to remain bound by the terms of this Note subsequent to any transfer, and agree that the terms of this Note may be fully enforced by any subsequent holder of this Note.

**Severability of Provisions** - In the event that any portion of this Note is deemed unenforceable, all other provisions of this Note shall remain in full force and effect.

**Choice of Law** - All terms and conditions of this Note shall be interpreted under the laws of the state of Ohio.

Signed Under Penalty of Perjury, this 27th Day of January, 2020,


Matthew Motil for
BuyCLE158, LLC

# Promissory Note

On this date of <u>January 27, 2020</u>, in return for valuable consideration received, the undersigned, <u>INVCLE150, LLC</u> (hereinafter "Borrower") jointly and severally promises to pay Lori <u>A. Rehn</u> (hereinafter "Lender"), the sum of <u>$60,000.00</u> together with interest thereon, as stated in the terms of this note.

**Terms of Repayment** - This loan shall be repaid under the following terms:

$60,000.00 to be financed at 12% annual interest-only with a 12 month balloon – Monthly payments of $600.00. 1st prorated payment on March 1st, 2020 – Last payment on March 1st, 2021 with a balloon of $60,000.00.

**Collateral** - The following properties will be used as collateral –

<u>13529 Leroy Avenue, Cleveland, Ohio 44135</u>

**Payable On Demand** - The entire unpaid principal and accrued interest thereon, if any, shall become due and payable on demand by the holder of this note 120 days after such demand is made in writing.

**Place of Payment** - all payments due under this note shall be made by ACH or mailed to

_____ or at such other place as the holder of this Note may designate in writing.

**Borrower's Address** - The Borrower shall provide to provide prompt written notice to the Lender of any change of address.

**Prepayment** - This Note may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall first be applied to interest, and then to principal payments in the order of their maturity.

**Default** - In the event of default, the borrower[s] agree to pay all costs and expenses incurred by the Lender, including all reasonable attorney fees (including both hourly and contingent attorney fees as permitted by law) for the collection of this Note upon default, and including reasonable collection charges (including, where consistent with industry practices, a collection charge set as a percentage of the outstanding balance of this Note) should collection be referred to a collection agency.

The note holder understands and agrees that regardless of any other provisions contained herein, this note is a non-recourse note and the holder's sole recourse in the event of a default shall be against the property securing this note and not against the borrower.

**Acceleration of Debt** - In the event that the borrower fails to make any payment due under the terms of this Note, or breach any condition relating to any security, security agreement, note, mortgage or lien granted as collateral security for this Note, seeks relief under the Bankruptcy Code, or suffers an involuntary petition in bankruptcy or receivership not vacated within thirty

(30) days, the entire balance of this Note and any interest accrued thereon shall be immediately due and payable to the holder of this Note.

**Joint and Several Liability** - All borrowers identified in this Note shall be jointly and severally liable for any debts secured by this Note.

**Modification** - No modification or waiver of any of the terms of this Agreement shall be allowed unless by written agreement signed by both parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

**Transfer of the Note** - The borrowers hereby waive any notice of the transfer of this Note by the Lender or by any subsequent holder of this Note, agree to remain bound by the terms of this Note subsequent to any transfer, and agree that the terms of this Note may be fully enforced by any subsequent holder of this Note.

**Severability of Provisions** - In the event that any portion of this Note is deemed unenforceable, all other provisions of this Note shall remain in full force and effect.

**Choice of Law** - All terms and conditions of this Note shall be interpreted under the laws of the state of Ohio.

Signed Under Penalty of Perjury, this 27<u><sup>th</sup></u> Day of January, 2020,

Matthew   Motil   for INVCLE150, LLC

# Promissory Note

On this date of <u>January 27, 2020</u>, in return for valuable consideration received, the undersigned, <u>BuyCLE175, LLC</u> (hereinafter "Borrower") jointly and severally promises to pay <u>Lori A. Rehn</u> (hereinafter "Lender"), the sum of <u>$40,000.00</u> together with interest thereon, as stated in the terms of this note.

**Terms of Repayment** - This loan shall be repaid under the following terms:

$40,000.00 to be financed at 12% simple interest – Monthly payments of $400.00. 1st prorated payment on March 1st, 2020 – Last payment on March 1st, 2021 with a balloon of $40,000.00

**Collateral** - The following property will be used as collateral –

<u>13410 Wainfleet Avenue, Cleveland, Ohio 44135</u>

**Payable On Demand** - The entire unpaid principal and accrued interest thereon, if any, shall become due and payable on demand by the holder of this note 120 days after such demand is made in writing. Should demand be made before note maturation, interest rate shall retroactively change to 3% APR.

**Place of Payment** - all payments due under this note shall be made by ACH or mailed to

_ or at such other place as the holder of this Note may designate in writing.

**Borrower's Address** - The Borrower shall provide to provide prompt written notice to the Lender of any change of address.

**Prepayment** - This Note may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall first be applied to interest, and then to principal payments in the order of their maturity.

**Default** - In the event of default, the borrower[s] agree to pay all costs and expenses incurred by the Lender, including all reasonable attorney fees (including both hourly and contingent attorney fees as permitted by law) for the collection of this Note upon default, and including reasonable collection charges (including, where consistent with industry practices, a collection charge set as a percentage of the outstanding balance of this Note) should collection be referred to a collection agency.

The note holder understands and agrees that regardless of any other provisions contained herein, this note is a non-recourse note and the holder's sole recourse in the event of a default shall be against the property securing this note and not against the borrower.

**Acceleration of Debt** - In the event that the borrower fails to make any payment due under the terms of this Note, or breach any condition relating to any security, security agreement, note, mortgage or lien granted as collateral security for this Note, seeks relief under the Bankruptcy Code, or suffers an involuntary petition in bankruptcy or receivership not vacated within thirty

(30) days, the entire balance of this Note and any interest accrued thereon shall be immediately due and payable to the holder of this Note.

**Joint and Several Liability** - All borrowers identified in this Note shall be jointly and severally liable for any debts secured by this Note.

**Modification** - No modification or waiver of any of the terms of this Agreement shall be allowed unless by written agreement signed by both parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

**Transfer of the Note** - The borrowers hereby waive any notice of the transfer of this Note by the Lender or by any subsequent holder of this Note, agree to remain bound by the terms of this Note subsequent to any transfer, and agree that the terms of this Note may be fully enforced by any subsequent holder of this Note.

**Severability of Provisions** - In the event that any portion of this Note is deemed unenforceable, all other provisions of this Note shall remain in full force and effect.

**Choice of Law** - All terms and conditions of this Note shall be interpreted under the laws of the state of Ohio.

Signed Under Penalty of Perjury, this 27<u>th</u> Day of January, 2020,

_Matthew Motil (signature)_

Matthew Motil for BuyCLE175, LLC

_____[Space Above This Line For Recording Date]_____

## MORTGAGE

Made on this  27  day of January, 2020,

Between

Lori A. Rehn

(hereinafter "Mortgagee")

And

BUYCLE158, LLC

(hereinafter "Mortgagor")

**Whereas, MORTGAGOR** by its Note (hereinafter the "NOTE") dated January 27, 2020 is indebted to MORTGAGEE in the principal amount of $50,000.00 advanced by MORTGAGEE to MORTGAGOR, together with interest thereon at the rate(s) provided in the NOTE until the INDEBTEDNESS is paid in full in the manner and at the times set forth in the NOTE, with the final payment of principal and interest, if not sooner paid, due and payable at the maturity date set forth in the NOTE, as the same may be amended, and containing other terms and conditions, all of which are specifically incorporated herein by reference; and

**Whereas,** as a condition to extending the aforementioned INDEBTEDNESS to MORTGAGOR, the MORTGAGEE requires, and MORTGAGOR has agreed to secure the payment and performance of its obligations under the Note with this MORTGAGE.

**Now, Therefore,** MORTGAGOR, in consideration of the INDEBTEDNESS and as security for the payment of the same, does hereby mortgage, grant and convey to the MORTGAGEE, its successors and assigns:

All of MORTGAGOR'S right, title and interest in, to and under (i) the premises commonly referred to as **3318 Hearthstone Road, Parma, Ohio 44134** (i) as more particularly described in Exhibit A attached hereto and made a part hereof, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining and all of the estate, right, title, interest, claim and demand whatsoever of the Mortgagor therein and in the public streets and ways adjacent thereto, either at law or in equity, in possession or expectancy (collectively, the "Property");  and (ii)  the structures and buildings, and all additions and improvements thereto, now or hereafter erected upon the Property (including all equipment constituting fixtures thereon) (collectively, the "Improvements", and together with the Property, the "Mortgaged Premises");

**TO HAVE AND TO HOLD**, the Mortgaged Premises unto the Mortgagee, its successors and/or assigns, to its own use forever in accordance with the provisions hereof.

**Provided,** however, that if the MORTGAGOR shall pay to the MORTGAGEE the INDEBTEDNESS and shall fully perform each of the other covenants and agreements hereinafter set forth, then this Mortgage and the estate hereby granted and conveyed shall become void.

**This Mortgage** is executed and delivered subject to the following covenants and agreements:

(1)          MORTGAGOR shall promptly pay when due the INDEBTEDNESS according to the NOTE and this Mortgage.

(2)    Until the INDEBTEDNESS is fully paid, MORTGAGOR shall: (a) pay and discharge, when the same shall become due and payable, all taxes, assessments, sewer and water rents and all other charges and claims assessed or levied from time to time by any lawful authority upon any part of the MORTGAGED PREMISES and which shall or might have priority in lien or payment to the INDEBTEDNESS secured hereby, such payments to be made directly to the person or entity to which payment is owed; (b) pay and discharge all liens, claims or encumbrances which may be filed against the MORTGAGED PREMISES and which might have priority in lien or payment to the INDEBTEDNESS secured hereby; (c) provide and keep in effect, by paying the necessary premiums and charges thereon, such policies of hazard and liability insurance as MORTGAGEE may from time to time require on the improvements now or hereafter erected on the MORTGAGED PREMISES, with loss payable clauses in favor of MORTGAGOR and MORTGAGEE, as their respective interests may appear; and (d) promptly submit to MORTGAGEE evidence of the date and punctual payment of all of the foregoing charges. In the event of loss, MORTGAGOR shall give prompt notice to the insurance carrier and MORTGAGEE. Unless MORTGAGEE and MORTGAGOR otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the MORTGAGED PREMISES, if the restoration or repair is economically feasible and MORTGAGEE'S security is not lessened. If the restoration or repair is not feasible or if MORTGAGEE'S security would be lessened, the insurance proceeds shall be applied to the INDEBTEDNESS secured by this Mortgage, whether or not then due, with any excess paid to MORTGAGOR. If MORTGAGOR abandons the MORTGAGED PREMISES or does not answer, within 30 days, a notice from MORTGAGEE that the insurance carrier has offered to settle a claim, then MORTGAGEE may collect the insurance proceeds. MORTGAGEE may use the proceeds to repair or restore the MORTGAGED PREMISES or to pay the INDEBTEDNESS secured by this MORTAGEE and MORTGAGOR otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of monthly payments. If the MORTGAGED PREMISES are acquired by the MORTGAGEE through foreclosure, MORTGAGOR'S rights to any insurance policies and proceeds resulting from damage to the MORTGAGED PREMISES prior to the acquisitions shall pass to MORTGAGEE to the extent of the INDEBTEDNESS secured by this Mortgage immediately prior to the acquisition.

(3)    MORTGAGOR shall maintain all improvements subject to this Mortgage in good and substantial repair, MORTGAGEE shall have the right to enter upon the MORTGAGED PREMISES at any reasonable hour for the purpose of inspecting the order, condition and repair of the improvements erected thereon.

(4)    MORTGAGOR covenants and agrees not to create, nor permit to accrue, upon all or any part of the MORTGAGED PREMISES any debt, lien or charge which would be prior in lien or payment to the lien of this Mortgage.

(5)    In the event MORTGAGOR neglects or refuses to perform the covenants and agreements contained in this Mortgage, then MORTGAGEE may, but shall not be required to, do so, and make whatever advances are necessary to protect the value of the MORTGAGED PREMISES and MORTGAGEE'S rights in the MORTGAGED PREMISES, provided that no such payment by the MORTGAGEE shall be considered a waiver or release of any remedy MORTGAGEE may have against MORTGAGOR. MORTGAGEE'S actions may include paying taxes, assessments, maintenance charges, insurance premiums, costs or expenses for the protection of the MORTGAGED PREMISES or the lien of this Mortgage or paying expenses, including attorney's fees, incurred by reason of the MORTGAGOR'S default. Any advances made by MORTGAGEE hereunder shall become additional INDEBTEDNESS of MORTGAGOR secured by this Mortgage. Unless MORTGAGEE agrees in writing to other terms of payment, these advances shall bear interest from the date of disbursement at the rate(s) set forth in the NOTE and shall be payable, with interest, upon notice from MORTGAGEE to MORTGAGOR requesting payment.

(6)    Should the MORTGAGED PREMISES or any part thereof be taken or damaged by reason of any public condemnation proceeding or similar action, the MORTGAGEE shall be entitled to all compensation, awards, and any other payment or relief therefore to the extent of the outstanding INDEBTEDNESS and shall be entitled, at its option, to commence, appear in, and prosecute in its own name, any action or proceeding or to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action, and proceeds are hereby assigned to the

MORTGAGEE, who may, after deducting there from its expenses, including attorney's fees, release any monies received by it or apply the same to any INDEBTEDNESS secured hereby.

(7)     If all or any part of the MORTGAGED PREMISES or any interest in it is sold or transferred, or if a beneficial interest in MORTGAGOR is sold or transferred and MORTGAGOR is not a natural person, without MORTGAGEE'S prior written consent, MORTGAGEE may, at its option, require immediate payment in full of all INDEBTEDNESS secured by this Mortgage. This option shall not be exercised if prohibited by law as of the date of this Mortgage. If MORTGAGEE exercises this option, MORTGAGEE shall give MORTGAGOR written notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is mailed within which MORTGAGOR must pay the entire INDEBTEDNESS. If MORTGAGOR fails to pay these sums prior to the expiration of the 30-day period, MORTGAGEE may invoke any remedy permitted by this Mortgage without further notice or demand on MORTGAGOR.

(8)     The following shall constitute Events of Default under this Mortgage: (a) MORTGAGOR'S failure to pay any installment of principal or interest in accordance with the NOTE; (b) MORTGAGOR'S failure to pay any other sum required to be paid in accordance with the NOTE or this Mortgage, when the same is due and payable; or (c) MORTGAGOR'S failure to perform any covenant or agreement in the NOTE or this Mortgage. If one or more of the foregoing Events of Default occurs, MORTGAGEE may, at its option, after any notice and opportunity to cure required by law and otherwise without notice and opportunity to cure, declare the entire unpaid balance of the INDEBTEDNESS to be immediately due and payable. MORTGAGEE may immediately institute an action of mortgage foreclosure or take any other legal action for the enforcement of this Mortgage, and proceed to final judgment and execution thereon for the INDEBTEDNESS, costs of suit and an attorney's commission for collection of          ten          percent (10.0%) but not less than $2,500.00. Interest at the highest rate provided in the NOTE shall continue to accrue on any judgment obtained by MORTGAGEE, until actual payment is made of the full amount due MORTGAGEE. MORTGAOR hereby waives and releases all benefits that might accrue to MORTGAGOR by virtue of any present or future laws exempting the MORTGAGED PREMISES, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment.

(9)     The covenants in this Mortgage shall bind, and its benefits shall inure to, the MORTGAGOR and the MORTGAGEE and their respective heirs, executors, administrators, successors and assigns, subject to the provisions of Paragraph 8.

(10)    If this Mortgage is executed by more than one person, the undertakings and liability of each shall be joint and several.

(11)    Any notice which is mailed certified mail to MORTGAGOR or to the person(s) who (is)(are) the then owner(s) of the MORTGAGED PREMISES at the address of the MORTGAGED PREMISES or at such other address as MORTGAGOR shall designate to MORTGAGEE in writing, shall be sufficient notice when required under this Mortgage.

(12)    MORTGAGEE'S rights and remedies as provided herein or in the NOTE shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of MORTGAGEE, and may be exercised as often as the occasion therefor shall occur; and the failure to exercise any right or remedy shall in no event be construed as a waiver by MORTGAGEE or release of the same.

(13)    In the event any term or provision of this Mortgage or the application thereof to any person or circumstances shall, to any extent be invalid and unenforceable, the remainder of this Mortgage, or its application other than to that which is held invalid or unenforceable, shall not be affected thereby, and each term and provision hereof shall be valid and enforceable to the fullest extent permitted by law.

This Mortgage shall be governed by the law of Ohio, in which the MORTGAGED PREMISES are located. This provision shall not limit the applicability of federal law to this Mortgage.

Executed this 27th Day of January , 2020 .

For the Mortgagor,

_Carlie Motil_ (signature)
By: BUYCLE158, LLC

ACKNOWLEDGMENT STATE OF Ohio COUNTY OF Cuyahoga

On this 27th day of January , 2020 personally appeared before me,

Matthew Motil ,

known to me or provided sufficient identification, to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

_Kristen M Kish_ (seal)
Notary Public

My commission expires: 12|16|2023

**Document Prepared by Matthew Motil**

KRISTEN M. KISH
NOTARY PUBLIC · STATE OF OHIO
RECORDED IN CUYAHOGA COUNTY
MY COMMISSION EXPIRES DECEMBER 16, 2023

**Exhibit A**
Legal Description

Situated in the State of <u>Ohio</u> County of <u>Cuyahoga</u> and in the City of <u>Parma</u>

Located at:
**3318 Hearthstone Road, Parma, Ohio 44134**

With the legal description:

Parcel No. – 444-20-022

_____[Space Above This Line For Recording Date]_____

## MORTGAGE

Made on this __27__ day of __January__ 2020,

Between

Lori A. Rehn

(hereinafter "Mortgagee")

And

INVCLE150, LLC

(hereinafter "Mortgagor")

**Whereas, MORTGAGOR** by its Note (hereinafter the "NOTE") dated __January 27, 2020__ is indebted to MORTGAGEE in the principal amount of $60,000.00 advanced by MORTGAGEE to MORTGAGOR, together with interest thereon at the rate(s) provided in the NOTE until the INDEBTEDNESS is paid in full in the manner and at the times set forth in the NOTE, with the final payment of principal and interest, if not sooner paid, due and payable at the maturity date set forth in the NOTE, as the same may be amended, and containing other terms and conditions, all of which are specifically incorporated herein by reference; and

**Whereas,** as a condition to extending the aforementioned INDEBTEDNESS to MORTGAGOR, the MORTGAGEE requires, and MORTGAGOR has agreed to secure the payment and performance of its obligations under the Note with this MORTGAGE.

**Now, Therefore,** MORTGAGOR, in consideration of the INDEBTEDNESS and as security for the payment of the same, does hereby mortgage, grant and convey to the MORTGAGEE, its successors and assigns:

All of MORTGAGOR'S right, title and interest in, to and under (i) the premises commonly referred to as **13529 Leroy Avenue, Cleveland, Ohio 44135** (i) as more particularly described in Exhibit A attached hereto and made a part hereof, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining and all of the estate, right, title, interest, claim and demand whatsoever of the Mortgagor therein and in the public streets and ways adjacent thereto, either at law or in equity, in possession or expectancy (collectively, the "Property"); and (ii) the structures and buildings, and all additions and improvements thereto, now or hereafter erected upon the Property (including all equipment constituting fixtures thereon) (collectively, the "Improvements", and together with the Property, the "Mortgaged Premises");

**TO HAVE AND TO HOLD**, the Mortgaged Premises unto the Mortgagee, its successors and/or assigns, to its own use forever in accordance with the provisions hereof.

**Provided,** however, that if the MORTGAGOR shall pay to the MORTGAGEE the INDEBTEDNESS and shall fully perform each of the other covenants and agreements hereinafter set forth, then this Mortgage and the estate hereby granted and conveyed shall become void.

**This Mortgage** is executed and delivered subject to the following covenants and agreements:

(1)        MORTGAGOR shall promptly pay when due the INDEBTEDNESS according to the NOTE and this Mortgage.

(2)        Until the INDEBTEDNESS is fully paid, MORTGAGOR shall: (a) pay and discharge, when the same shall become due and payable, all taxes, assessments, sewer and water rents and all other charges and claims assessed or levied from time to time by any lawful authority upon any part of the MORTGAGED PREMISES and which shall or might have priority in lien or payment to the INDEBTEDNESS secured hereby, such payments to be made directly to the person or entity to which payment is owed; (b) pay and discharge all liens, claims or encumbrances which may be filed against the MORTGAGED PREMISES and which might have priority in lien or payment to the INDEBTEDNESS secured hereby; (c) provide and keep in effect, by paying the necessary premiums and charges thereon, such policies of hazard and liability insurance as MORTGAGEE may from time to time require on the improvements now or hereafter erected on the MORTGAGED PREMISES, with loss payable clauses in favor of MORTGAGOR and MORTGAGEE, as their respective interests may appear; and (d) promptly submit to MORTGAGEE evidence of the date and punctual payment of all of the foregoing charges. In the event of loss, MORTGAGOR shall give prompt notice to the insurance carrier and MORTGAGEE. Unless MORTGAGEE and MORTGAGOR otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the MORTGAGED PREMISES, if the restoration or repair is economically feasible and MORTGAGEE'S security is not lessened. If the restoration or repair is not feasible or if MORTGAGEE'S security would be lessened, the insurance proceeds shall be applied to the INDEBTEDNESS secured by this Mortgage, whether or not then due, with any excess paid to MORTGAGOR. If MORTGAGOR abandons the MORTGAGED PREMISES or does not answer, within 30 days, a notice from MORTGAGEE that the insurance carrier has offered to settle a claim, then MORTGAGEE may collect the insurance proceeds. MORTGAGEE may use the proceeds to repair or restore the MORTGAGED PREMISES or to pay the INDEBTEDNESS secured by this MORTAGEE and MORTGAGOR otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of monthly payments. If the MORTGAGED PREMISES are acquired by the MORTGAGEE through foreclosure, MORTGAGOR'S rights to any insurance policies and proceeds resulting from damage to the MORTGAGED PREMISES prior to the acquisitions shall pass to MORTGAGEE to the extent of the INDEBTEDNESS secured by this Mortgage immediately prior to the acquisition.

(3)        MORTGAGOR shall maintain all improvements subject to this Mortgage in good and substantial repair, MORTGAGEE shall have the right to enter upon the MORTGAGED PREMISES at any reasonable hour for the purpose of inspecting the order, condition and repair of the improvements erected thereon.

(4)        MORTGAGOR covenants and agrees not to create, nor permit to accrue, upon all or any part of the MORTGAGED PREMISES any debt, lien or charge which would be prior in lien or payment to the lien of this Mortgage.

(5)        In the event MORTGAGOR neglects or refuses to perform the covenants and agreements contained in this Mortgage, then MORTGAGEE may, but shall not be required to, do so, and make whatever advances are necessary to protect the value of the MORTGAGED PREMISES and MORTGAGEE'S rights in the MORTGAGED PREMISES, provided that no such payment by the MORTGAGEE shall be considered a waiver or release of any remedy MORTGAGEE may have against MORTGAGOR. MORTGAGEE'S actions may include paying taxes, assessments, maintenance charges, insurance premiums, costs or expenses for the protection of the MORTGAGED PREMISES or the lien of this Mortgage or paying expenses, including attorney's fees, incurred by reason of the MORTGAGOR'S default. Any advances made by MORTGAGEE hereunder shall become additional INDEBTEDNESS of MORTGAGOR secured by this Mortgage. Unless MORTGAGEE agrees in writing to other terms of payment, these advances shall bear interest from the date of disbursement at the rate(s) set forth in the NOTE and shall be payable, with interest, upon notice from MORTGAGEE to MORTGAGOR requesting payment.

(6)        Should the MORTGAGED PREMISES or any part thereof be taken or damaged by reason of any public condemnation proceeding or similar action, the MORTGAGEE shall be entitled to all compensation, awards, and any other payment or relief therefore to the extent of the outstanding INDEBTEDNESS and shall be entitled, at its option, to commence, appear in, and prosecute in its own name, any action or proceeding or to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action, and proceeds are hereby assigned to the

MORTGAGEE, who may, after deducting there from its expenses, including attorney's fees, release any monies received by it or apply the same to any INDEBTEDNESS secured hereby.

(7)    If all or any part of the MORTGAGED PREMISES or any interest in it is sold or transferred, or if a beneficial interest in MORTGAGOR is sold or transferred and MORTGAGOR is not a natural person, without MORTGAGEE'S prior written consent, MORTGAGEE may, at its option, require immediate payment in full of all INDEBTEDNESS secured by this Mortgage. This option shall not be exercised if prohibited by law as of the date of this Mortgage. If MORTGAGEE exercises this option, MORTGAGEE shall give MORTGAGOR written notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is mailed within which MORTGAGOR must pay the entire INDEBTEDNESS. If MORTGAGOR fails to pay these sums prior to the expiration of the 30-day period, MORTGAGEE may invoke any remedy permitted by this Mortgage without further notice or demand on MORTGAGOR.

(8)    The following shall constitute Events of Default under this Mortgage: (a) MORTGAGOR'S failure to pay any installment of principal or interest in accordance with the NOTE; (b) MORTGAGOR'S failure to pay any other sum required to be paid in accordance with the NOTE or this Mortgage, when the same is due and payable; or (c) MORTGAGOR'S failure to perform any covenant or agreement in the NOTE or this Mortgage. If one or more of the foregoing Events of Default occurs, MORTGAGEE may, at its option, after any notice and opportunity to cure required by law and otherwise without notice and opportunity to cure, declare the entire unpaid balance of the INDEBTEDNESS to be immediately due and payable. MORTGAGEE may immediately institute an action of mortgage foreclosure or take any other legal action for the enforcement of this Mortgage, and proceed to final judgment and execution thereon for the INDEBTEDNESS, costs of suit and an attorney's commission for collection of      ten      percent (10.0%) but not less than $2,500.00. Interest at the highest rate provided in the NOTE shall continue to accrue on any judgment obtained by MORTGAGEE, until actual payment is made of the full amount due MORTGAGEE. MORTGAOR hereby waives and releases all benefits that might accrue to MORTGAGOR by virtue of any present or future laws exempting the MORTGAGED PREMISES, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment.

(9)    The covenants in this Mortgage shall bind, and its benefits shall inure to, the MORTGAGOR and the MORTGAGEE and their respective heirs, executors, administrators, successors and assigns, subject to the provisions of Paragraph 8.

(10)    If this Mortgage is executed by more than one person, the undertakings and liability of each shall be joint and several.

(11)    Any notice which is mailed certified mail to MORTGAGOR or to the person(s) who (is)(are) the then owner(s) of the MORTGAGED PREMISES at the address of the MORTGAGED PREMISES or at such other address as MORTGAGOR shall designate to MORTGAGEE in writing, shall be sufficient notice when required under this Mortgage.

(12)    MORTGAGEE'S rights and remedies as provided herein or in the NOTE shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of MORTGAGEE, and may be exercised as often as the occasion therefor shall occur; and the failure to exercise any right or remedy shall in no event be construed as a waiver by MORTGAGEE or release of the same.

(13)    In the event any term or provision of this Mortgage or the application thereof to any person or circumstances shall, to any extent be invalid and unenforceable, the remainder of this Mortgage, or its application other than to that which is held invalid or unenforceable, shall not be affected thereby, and each term and provision hereof shall be valid and enforceable to the fullest extent permitted by law.

This Mortgage shall be governed by the law of Ohio, in which the MORTGAGED PREMISES are located. This provision shall not limit the applicability of federal law to this Mortgage.

Executed this _27th_ Day of _January_, _2020_.

For the Mortgagor,

_[signature]_

By: INVCLE150, LLC

ACKNOWLEDGMENT STATE OF _Ohio_ COUNTY OF _Cuyahoga_

On this _27th_ day of _January_, _2020_ personally appeared before me,

_Matthew Motil_,

known to me or provided sufficient identification, to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

_Kristen M Kish_ (seal)
Notary Public

My commission expires: _12|16|2023_

**Document Prepared by Matthew Motil**

**Exhibit A**
Legal Description

Situated in the State of <u>Ohio</u> County of <u>Cuyahoga</u> and in the City of <u>Cleveland</u>

Located at:
**13529 Leroy Avenue, Cleveland, Ohio 44135**

With the legal description:

Parcel No. – 022-22-110

## MORTGAGE

Made on this 27th day of January , 2020,

Between

Lori A. Rehn

(hereinafter "Mortgagee")

And

BUYCLE175, LLC

(hereinafter "Mortgagor")

**Whereas, MORTGAGOR** by its Note (hereinafter the "NOTE") dated January 27, 2020 is indebted to MORTGAGEE in the principal amount of $40,000.00 advanced by MORTGAGEE to MORTGAGOR, together with interest thereon at the rate(s) provided in the NOTE until the INDEBTEDNESS is paid in full in the manner and at the times set forth in the NOTE, with the final payment of principal and interest, if not sooner paid, due and payable at the maturity date set forth in the NOTE, as the same may be amended, and containing other terms and conditions, all of which are specifically incorporated herein by reference; and

**Whereas,** as a condition to extending the aforementioned INDEBTEDNESS to MORTGAGOR, the MORTGAGEE requires, and MORTGAGOR has agreed to secure the payment and performance of its obligations under the Note with this MORTGAGE.

**Now, Therefore,** MORTGAGOR, in consideration of the INDEBTEDNESS and as security for the payment of the same, does hereby mortgage, grant and convey to the MORTGAGEE, its successors and assigns:

All of MORTGAGOR'S right, title and interest in, to and under (i) the premises commonly referred to as **13410 Wainfleet Avenue, Cleveland, Ohio 44135** (i) as more particularly described in Exhibit A attached hereto and made a part hereof, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining and all of the estate, right, title, interest, claim and demand whatsoever of the Mortgagor therein and in the public streets and ways adjacent thereto, either at law or in equity, in possession or expectancy (collectively, the "Property"); and (ii) the structures and buildings, and all additions and improvements thereto, now or hereafter erected upon the Property (including all equipment constituting fixtures thereon) (collectively, the "Improvements", and together with the Property, the "Mortgaged Premises");

**TO HAVE AND TO HOLD,** the Mortgaged Premises unto the Mortgagee, its successors and/or assigns, to its own use forever in accordance with the provisions hereof.

**Provided,** however, that if the MORTGAGOR shall pay to the MORTGAGEE the INDEBTEDNESS and shall fully perform each of the other covenants and agreements hereinafter set forth, then this Mortgage and the estate hereby granted and conveyed shall become void.

**This Mortgage** is executed and delivered subject to the following covenants and agreements:

(1)      MORTGAGOR shall promptly pay when due the INDEBTEDNESS according to the NOTE and this Mortgage.

(2)        Until the INDEBTEDNESS is fully paid, MORTGAGOR shall: (a) pay and discharge, when the same shall become due and payable, all taxes, assessments, sewer and water rents and all other charges and claims assessed or levied from time to time by any lawful authority upon any part of the MORTGAGED PREMISES and which shall or might have priority in lien or payment to the INDEBTEDNESS secured hereby, such payments to be made directly to the person or entity to which payment is owed; (b) pay and discharge all liens, claims or encumbrances which may be filed against the MORTGAGED PREMISES and which might have priority in lien or payment to the INDEBTEDNESS secured hereby; (c) provide and keep in effect, by paying the necessary premiums and charges thereon, such policies of hazard and liability insurance as MORTGAGEE may from time to time require on the improvements now or hereafter erected on the MORTGAGED PREMISES, with loss payable clauses in favor of MORTGAGOR and MORTGAGEE, as their respective interests may appear; and (d) promptly submit to MORTGAGEE evidence of the date and punctual payment of all of the foregoing charges. In the event of loss, MORTGAGOR shall give prompt notice to the insurance carrier and MORTGAGEE. Unless MORTGAGEE and MORTGAGOR otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the MORTGAGED PREMISES, if the restoration or repair is economically feasible and MORTGAGEE'S security is not lessened. If the restoration or repair is not feasible or if MORTGAGEE'S security would be lessened, the insurance proceeds shall be applied to the INDEBTEDNESS secured by this Mortgage, whether or not then due, with any excess paid to MORTGAGOR. If MORTGAGOR abandons the MORTGAGED PREMISES or does not answer, within 30 days, a notice from MORTGAGEE that the insurance carrier has offered to settle a claim, then MORTGAGEE may collect the insurance proceeds. MORTGAGEE may use the proceeds to repair or restore the MORTGAGED PREMISES or to pay the INDEBTEDNESS secured by this MORTAGEE and MORTGAGOR otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of monthly payments. If the MORTGAGED PREMISES are acquired by the MORTGAGEE through foreclosure, MORTGAGOR'S rights to any insurance policies and proceeds resulting from damage to the MORTGAGED PREMISES prior to the acquisitions shall pass to MORTGAGEE to the extent of the INDEBTEDNESS secured by this Mortgage immediately prior to the acquisition.

(3)        MORTGAGOR shall maintain all improvements subject to this Mortgage in good and substantial repair, MORTGAGEE shall have the right to enter upon the MORTGAGED PREMISES at any reasonable hour for the purpose of inspecting the order, condition and repair of the improvements erected thereon.

(4)        MORTGAGOR covenants and agrees not to create, nor permit to accrue, upon all or any part of the MORTGAGED PREMISES any debt, lien or charge which would be prior in lien or payment to the lien of this Mortgage.

(5)        In the event MORTGAGOR neglects or refuses to perform the covenants and agreements contained in this Mortgage, then MORTGAGEE may, but shall not be required to, do so, and make whatever advances are necessary to protect the value of the MORTGAGED PREMISES and MORTGAGEE'S rights in the MORTGAGED PREMISES, provided that no such payment by the MORTGAGEE shall be considered a waiver or release of any remedy MORTGAGEE may have against MORTGAGOR. MORTGAGEE'S actions may include paying taxes, assessments, maintenance charges, insurance premiums, costs or expenses for the protection of the MORTGAGED PREMISES or the lien of this Mortgage or paying expenses, including attorney's fees, incurred by reason of the MORTGAGOR'S default. Any advances made by MORTGAGEE hereunder shall become additional INDEBTEDNESS of MORTGAGOR secured by this Mortgage. Unless MORTGAGEE agrees in writing to other terms of payment, these advances shall bear interest from the date of disbursement at the rate(s) set forth in the NOTE and shall be payable, with interest, upon notice from MORTGAGEE to MORTGAGOR requesting payment.

(6)        Should the MORTGAGED PREMISES or any part thereof be taken or damaged by reason of any public condemnation proceeding or similar action, the MORTGAGEE shall be entitled to all compensation, awards, and any other payment or relief therefore to the extent of the outstanding INDEBTEDNESS and shall be entitled, at its option, to commence, appear in, and prosecute in its own name, any action or proceeding or to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action, and proceeds are hereby assigned to the

MORTGAGEE, who may, after deducting there from its expenses, including attorney's fees, release any monies received by it or apply the same to any INDEBTEDNESS secured hereby.

(7)     If all or any part of the MORTGAGED PREMISES or any interest in it is sold or transferred, or if a beneficial interest in MORTGAGOR is sold or transferred and MORTGAGOR is not a natural person, without MORTGAGEE'S prior written consent, MORTGAGEE may, at its option, require immediate payment in full of all INDEBTEDNESS secured by this Mortgage. This option shall not be exercised if prohibited by law as of the date of this Mortgage. If MORTGAGEE exercises this option, MORTGAGEE shall give MORTGAGOR written notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is mailed within which MORTGAGOR must pay the entire INDEBTEDNESS. If MORTGAGOR fails to pay these sums prior to the expiration of the 30-day period, MORTGAGEE may invoke any remedy permitted by this Mortgage without further notice or demand on MORTGAGOR.

(8)     The following shall constitute Events of Default under this Mortgage: (a) MORTGAGOR'S failure to pay any installment of principal or interest in accordance with the NOTE; (b) MORTGAGOR'S failure to pay any other sum required to be paid in accordance with the NOTE or this Mortgage, when the same is due and payable; or (c) MORTGAGOR'S failure to perform any covenant or agreement in the NOTE or this Mortgage. If one or more of the foregoing Events of Default occurs, MORTGAGEE may, at its option, after any notice and opportunity to cure required by law and otherwise without notice and opportunity to cure, declare the entire unpaid balance of the INDEBTEDNESS to be immediately due and payable. MORTGAGEE may immediately institute an action of mortgage foreclosure or take any other legal action for the enforcement of this Mortgage, and proceed to final judgment and execution thereon for the INDEBTEDNESS, costs of suit and an attorney's commission for collection of     ten     percent (10.0%) but not less than $2,500.00. Interest at the highest rate provided in the NOTE shall continue to accrue on any judgment obtained by MORTGAGEE, until actual payment is made of the full amount due MORTGAGEE. MORTGAOR hereby waives and releases all benefits that might accrue to MORTGAGOR by virtue of any present or future laws exempting the MORTGAGED PREMISES, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment.

(9)     The covenants in this Mortgage shall bind, and its benefits shall inure to, the MORTGAGOR and the MORTGAGEE and their respective heirs, executors, administrators, successors and assigns, subject to the provisions of Paragraph 8.

(10)    If this Mortgage is executed by more than one person, the undertakings and liability of each shall be joint and several.

(11)    Any notice which is mailed certified mail to MORTGAGOR or to the person(s) who (is)(are) the then owner(s) of the MORTGAGED PREMISES at the address of the MORTGAGED PREMISES or at such other address as MORTGAGOR shall designate to MORTGAGEE in writing, shall be sufficient notice when required under this Mortgage.

(12)    MORTGAGEE'S rights and remedies as provided herein or in the NOTE shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of MORTGAGEE, and may be exercised as often as the occasion therefor shall occur; and the failure to exercise any right or remedy shall in no event be construed as a waiver by MORTGAGEE or release of the same.

(13)    In the event any term or provision of this Mortgage or the application thereof to any person or circumstances shall, to any extent be invalid and unenforceable, the remainder of this Mortgage, or its application other than to that which is held invalid or unenforceable, shall not be affected thereby, and each term and provision hereof shall be valid and enforceable to the fullest extent permitted by law.

This Mortgage shall be governed by the law of Ohio, in which the MORTGAGED PREMISES are located. This provision shall not limit the applicability of federal law to this Mortgage.

Executed this __27th__ Day of __January__ , __2020__ .

For the Mortgagor,

_signature_

By: BUYCLE175, LLC

ACKNOWLEDGMENT STATE OF __Ohio__         COUNTY OF __Cuyahoga__

On this __27th__ day of __January__ , __2020__ personally appeared before me,

__Matthew Motil__ ,

known to me or provided sufficient identification, to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

__Kristen M Kish__ (seal)
Notary Public

My commission expires: __12|16|2023__

**Document Prepared by Matthew Motil**

Page 4 of 5

**Exhibit A**
Legal Description

Situated in the State of <u>Ohio</u> County of <u>Cuyahoga</u> and in the City of <u>North Olmsted</u>

Located at:
**13410 Wainfleet Avenue, Cleveland, Ohio 44135**

With the legal description:

Parcel No. – 020-02-021