**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE: | Case No.: 22-10571-aih |
|     MATTHEW M. MOTIL, | Judge: ARTHUR I. HARRIS |
| *Debtor.* | Chapter 7 |
| KAYLA VOLLER<br>10058 Severn Lane<br>Parker, CO 80134, | Adv. Case No.: |
| *Plaintiff-Creditor.* | **COMPLAINT TO DETERMINE** |
|  -vs- | **DISCHARGEABILITY OF A** |
|  | **PARTICULAR DEBT –** |
| MATTHEW MOTIL<br>7011 Chadbourne Drive<br>North Olmsted, OH 44070, | **11 U.S.C § 523(a)(2),**<br>**§ 523(a)(4) AND § 523(a)(19)** |
| *Defendant-Debtor.* |  |

NOW COMES the above-named Plaintiff, by and through undersigned counsel, and for her Adversary Complaint against the above-named Defendant, hereby states and alleges as follows:

**PARTIES**

1.      Plaintiff KAYLA VOLLER ("Plaintiff" or "Mrs. Voller") is an individual of full age and majority residing at the address set forth in the caption above.

2.      Defendant MATTHEW MOTIL ("Defendant" or "Mr. Motil") is an individual of full age and majority residing at the address set forth in the caption above. Defendant is the debtor in the above-captioned Chapter 7 proceeding.

## JURISDICTION & VENUE

3.     The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 523(a). This is an adversary proceeding pursuant to Bankruptcy Rule 7001(6) and a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (I).

4.     Pursuant to Bankruptcy Rule 7008, Plaintiff states consents to the entry of final orders and judgments by the bankruptcy court.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## STATEMENT OF FACTS

6.     Matthew Motil is a conman and a snake oil salesman.

7.     He touts himself as, among other things, a "doctor", an expert real estate investor, a podcaster, a bestselling author, and a professor.[1]

8.     It appears that Mr. Motil has been running a Ponzi scheme for the last several years and that his house of cards is now collapsing.

9.     Indeed, all the tell-tale signs of a crumbling Ponzi scheme are unfolding – i.e., (a) Mr. Motil has been making excuses regarding why distributions have been late or have not been paid at all (blaming COVID-19, the United States Postal Service, etc.); (b) he has now stopped returning phone calls, text messages, and emails altogether and is nowhere to be found; and (c) his victims are rushing to court and the lawsuits are piling up in various counties in northeast Ohio.

10.    Mr. Motil's scam of Mrs. Voller largely mirrors that of his other victims.

---

[1] See https://www.drmattmotil.com/.

2

11.    Mrs. Voller lives and works in the Denver, Colorado metro area. In 2015, she was assigned a temporary work assignment in Akron, Ohio, which required that she relocate to Akron from January 1, 2016 through January 31, 2017.

12.    During her spare time while working in Akron, Mrs. Voller began researching the northeast Ohio real estate investment market.

13.    Mrs. Voller returned to Denver after her work assignment in Akron ended in January 2017. But she continued researching and staying updated on the northeast Ohio real estate market, looking for an investment opportunity.

14.    During the course of her research, Mrs. Voller was given Mr. Motil's contact information and website. She later signed up for his email newsletter September 13, 2017.

15.    Mrs. Voller gave birth to her first child in November 2019. As such, she was looking for a more passive investment as opposed to actual property ownership.

16.    She ultimately reached out to Mr. Motil at the beginning of 2020 and requested information about the passive investment opportunities he currently had available.

17.    The two subsequently talked on the phone and corresponded via text and email. By February, the parties had agreed to a short-term passive investment deal where Mrs. Voller would invest $200,000 with Mr. Motil.

18.    More specifically, the parties agreed that Mrs. Voller would lend $200,000 to one of Mr. Motil's real estate holding companies – in this case, NSEM Mansfield 1, LLC ("NSEM 1").

19.    The loan was secured by a Promissory Note (the "Note") and Mortgage (the "Mortgage"), both dated February 17, 2020 (collectively, the "Loan Documents"). (*See* Exs. 1 and 2 attached hereto.)

20.    Mr. Motil executed both documents on behalf of NSEM 1.

21.     The terms of investment/loan were straightforward and are clearly set forth in the Note. Mrs. Voller's $200,000 was to be financed at 3.33% per month for three months (March 2020 through June 2020).[2]

22.     The first month's interest payment was prorated, followed by three $6,666.67 monthly interest payment. With the final interest payment, NSEM 1 was also required to return Mrs. Voller's $200,000 principal via a balloon payment. (*See* Note, Ex. 1 attached hereto.)

23.     As collateral for the loan, Mrs. Voller was given a blanket mortgage lien on the twenty-five residential properties attached to the Mortgage as Ex. A (the "Properties").

24.     After receiving the signed Loan Documents, Mrs. Voller wired the $200,000 to Mr. Motil on February 19, 2020.

25.     Thereafter, Mrs. Voller received the following payments from Mr. Motil in accordance with the terms of the Note:

| 03/06/2020 | $2,503.45 | (February prorated interest) |
|---|---|---|
| 04/03/2020 | $6,666.67 | |
| 05/05/2020 | $6,666.67 | |
| 06/02/2020 | $6,666.67 | |

26.     With the final June interest payment, however, Mr. Motil did not make the required $200,000 balloon payment – i.e., the return of Mrs. Voller's principal and closeout of the loan.

27.     Instead, when Mrs. Voller contacted Mr. Motil about the missed balloon payment, he made up a story about hers and two other balloon payments getting "messed up."

28.     He then went on to offer Mrs. Voller the option of receiving $100,000 of her principal back and rolling the other $100,000 into a new investment vehicle, which she agreed to.

---

[2] The beginning date of March 1, 2019 in the Note is a typo or scrivener's error. The emails between Mrs. Voller and Mr. Motil clearly establish that the intent of the parties was that this was to be a three-month loan with a 10% return (i.e., $20,000) plus prorated interest for February.

4

29.     But that never happened. Other than sporadic so-called "investor update" emails sent to a general email list, Mr. Motil largely went radio silent after June 2020, and Mrs. Voller did not receive any of her principal back.

30.     However, she continued to receive monthly interest payments of $6,666.67/month from July 2020 through February 2021.[3]

31.     After that, Mr. Motil went completely dark, and Mrs. Voller has not heard from him since.

32.     On March 13, 2021, Mrs. Voller wrote to Mr. Motil demanding the return of her principal within 120 days in accordance with the express terms of her Note. Not surprisingly, Mr. Motil never responded.

33.     To date, Mrs. Voller has only received $75,836.82 from Mr. Motil, a far cry from what she is still owed.

34.     Moreover, Mrs. Voller has since discovered that Mr. Motil never recorded her Mortgage, meaning that her loan is now possibly unsecured.

## STATE COURT LITIGATION

35.     As a result of the above-referenced defaults, Plaintiff filed suit against Mr. Motil, NSEM 1, and other parties in the Richland County Common Pleas Court, which is captioned *Voller v. Motil, et al.*, Case No. 2021 CV 0302 N.

36.     The state court case was stayed as a result of Mr. Motil's bankruptcy filing.

37.     Plaintiff's Complaint in the state court case is hereby incorporated herein.

---

[3] Mr. Motil missed the August 2020 payment but paid $13,333.34 in September.

## CLAIMS FOR RELIEF

38.     Plaintiff is a creditor of Defendant and holds a claim in his bankruptcy case against the estate ("Claim").

## COUNT 1
### 11 USC § 523(A)(2)(A)

39.     Plaintiff incorporates each and every allegation in this Complaint, whether above or below, as if fully restated herein.

40.     Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ***.

41.     In connection with Plaintiff's loan and the Loan Documents, Defendant, individually and on behalf of NSEM 1, made representations to Plaintiff that he would comply with and abide by the representations he made, including those set forth in the Note and Mortgage.

42.     At the time of making the loan and executing the Loan Documents, Defendant, individually and on behalf of NSEM 1, had no intention of honoring those promises, representations, and covenants, he made individually and on behalf of NSEM 1.

43.     The promises and representations made by Defendant, individually and on behalf of NSEM 1, including those promises and representations concerning the value of the Properties and the lack of superior encumbrances against the Properties, were material promises and representations and induced Plaintiff to enter into the Loan Documents and make the Loan.

6

44.     In the absence of the material promises and representations made by Defendant, individually and on behalf of NSEM 1, Plaintiff would not have entered into the Loan Documents, nor would she have made the loan.

45.     Plaintiff reasonably and justifiably relied upon the false and fraudulent promises made by Defendant, individually and of NSEM 1, including, but not limited to, those representations concerning the lack of superior encumbrances against the Properties and the value of the Properties.

46.     The promises and representations made by Defendant, individually and on behalf of NSEM 1, with respect to the Loan Documents and the loan were intentionally false and fraudulent representations.

47.     Plaintiff performed all those promises made with respect to the Loan Documents and the Loans.

48.     Defendant, individually and on behalf of NSEM 1, knew or should have known that Plaintiff would rely on the false and fraudulent representations made to her concerning the Loan Documents and the loan.

49.     As a direct and proximate result of Defendant's intentionally false and fraudulent material representations, Plaintiff had been damaged in an amount in excess of $200,000.00.

50.     Pursuant to 11 USC § 523(a)(2), Plaintiff seeks an order and judgment from the Court holding that Plaintiff's Claim arose as the result of a false pretense, false misrepresentation, and/or actual fraud on the part of Defendant, and therefore such Claim is not subject to any order of discharge entered in the Case, and that to the extent the Claim of Plaintiff is not liquidated in another court of competent jurisdiction, that the Court liquidated the Claim of Plaintiff by entering a monetary judgment against Defendant for actual damages in an amount determined by the Court,

7

that the Court award fees and costs to Plaintiff, including her attorney fees and other legal costs, that the Court award Plaintiff punitive damages and that the Court enter any other relief it deems just and equitable.

## COUNT 2
### 11 USC § 523(A)(4)

51.     Plaintiff incorporates each and every allegation in this Complaint, whether above or below, as if fully restated herein.

52.     Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

53.     Defendant, by being the owner and/or person in control of NSEM 1, was under a legal duty to operate in the best interest of NSEM 1 and acted in a fiduciary capacity with respect to NSEM 1.

54.     as a fiduciary, Defendant was under a legal obligation to act in the best interest of NSEM 1.

55.     Plaintiff actually, reasonably and justifiably relief on Defendant's fiduciary capacity with respect to NSEM 1 when entering into the Agreement and the Loans.

56.     Defendant misappropriated and stole from NSEM 1 those funds Plaintiff had lent to NSEM 1 under the Loans.

57.     Defendant's actions of misappropriating and stealing from NSEM 1 violated those fiduciary duties Defendant had to NSEM 1.

58.     Defendant's actions of misappropriating and stealing from NSEM 1 constitutes the act of defalcation for purposes of § 523(a)(4).

8

59.     Defendant's actions of misappropriating and stealing from NSEM 1 constitutes the acts of embezzlement and larceny for purposes of § 523(a)(4).

60.     by Defendant's actions of misappropriating and stealing money from NSEM 1, Plaintiff's claim against NSEM 1 and her ability to recover against NSEM 1 under the Loans has been diminished and such claims have been rendered potentially valueless.

61.     As a direct and proximate result of Defendant's actions of misappropriating and stealing money from NSEM 1, and committing the act of defalcation while acting in a fiduciary capacity, Plaintiff has suffered an injury and incurred damages in excess of $200,000.

62.     Pursuant to 11 USC § 523(a)(4), Plaintiff seeks an order and judgment from the Court holding that Plaintiff's Claim arose as the result of fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny on the part of Defendant, and therefore such Claim is not subject to any order of discharge entered in the Case, and that to the extent the Claim of Plaintiff is not liquidated in another court of competent jurisdiction, that the Court liquidated the Claim of Plaintiff by entering a monetary judgment against Defendant for actual damages in an amount determined by the Court, that the Court award fees and costs to Plaintiff, including her attorney fees and other legal costs, that the Court award Plaintiff punitive damages and that the Court enter any other relief it deems just and equitable.

## **COUNT 3**
### **11 USC § 523(A)(19)**

63.     Plaintiff incorporates each and every allegation in this Complaint, whether above or below, as if fully restated herein.

64.     The Loan Documents and the loan entered into between the parties were securities for purposes of Federal Law and applicable state law.

9

65.     Defendant, individually and on behalf of NSEM 1, sold to Plaintiff securities by entering into the Loan Documents and accepting the loan from Plaintiff.

66.     Defendant is not licensed to sell securities.

67.     Defendant never registered NSEM 1 to sell securities; nor were was the loan registered as securities.

68.     The securities sold by Defendant, individually and on behalf of NSEM 1, did not meet the requirements necessary to comply with Federal Securities Law and applicable state securities law as among other matters, the necessary disclosures were not made to Plaintiff.

69.     Defendant's sale of a securities to Plaintiff was in violation of Federal Securities Law and applicable state securities law and regulations issued under such laws.

70.     This Court or another court of competent jurisdiction may enter a judgment or other order finding that Defendant violated Federal Securities Law and applicable state securities law and regulations issued under such laws, and that such orders and judgment may be issued after the commencement of the Case.

71.     Pursuant to 11 USC § 523(a)(19), Plaintiff seeks an order and judgment from the Court holding that Plaintiff's Claim is not subject to any order of discharge entered in this bankruptcy proceeding, and that to the extent the Claim of Plaintiff is not liquidated in another court of competent jurisdiction, that the Court liquidated the Claim of Plaintiff by entering a monetary judgment against Defendant for actual damages as determined by the Court, that the Court award fees and costs to Plaintiff, including her attorney fees and other legal costs, that the Court award Plaintiff punitive damages and that the Court enter any other relief it deems just and equitable.

## GENERAL OBJECTION TO DISCHARGE

72.     Plaintiff incorporates each and every allegation in this Complaint, whether above or below, as if fully restated herein.

73.     Generally, unsecured debts of a debtor are discharged in Chapter 7 bankruptcy proceedings.

74.     However, under 11 U.S.C. 523(c), a creditor, such as Plaintiff, may object to the discharge of a debt pursuant to, among other things, 11 U.S.C. § 523(a)(2).

75.     Under 11 U.S.C. § 523(a)(2)(A), a discharge under 11 U.S.C. § 1328 does not discharge an individual debtor from any debt for money or property if that debt was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

76.     As set forth herein, Defendant's debt to Plaintiff was obtained and incurred by a false misrepresentation, fraudulent concealment and misrepresentation, and actual fraud.

77.     As such, said debt should not be discharged in this bankruptcy proceeding pursuant 11 U.S.C. § 523.

78.     In fairness and justice, this Court of equity should not allow Defendant to use bankruptcy law as a sword to further injure Plaintiff financially.

79.     In fairness and equity, Plaintiff should have an equitable lien on all of Defendant's personal property and available funds and against all the Properties until full payment and restitution is made to Plaintiff.

80.     This Court is requested to grant an equitable lien, and such order should survive this bankruptcy case and remain valid and enforceable regardless of the pendency of the case, and

11

the retention of jurisdiction to so find existence of an equitable lien and to enforce same is hereby requested.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kayla Voller demands judgment against Debtor/Defendant Matthew Motil and prays for the following relief:

A.     A finding that Defendant's debt to Plaintiff is not dischargeable in this bankruptcy proceeding.

B.     Imposition of an equitable lien against all of Defendant's assets and the Properties.

C.     A hearing or trial in order to determine the exact amount of Mr. Glynias' damages, including compensatory damages, punitive damages, attorney's fees, interest and costs; and

D.     Any such other relief that the Court deems just and proper.

Respectfully submitted,

 /s/ Evan T. Byron
Evan T. Byron, Esq. (0081100)
**KAUFMAN, DROZDOWSKI & GRENDELL, LLC**
29525 Chagrin Blvd, Suite 250
Pepper Pike, Ohio 44122
440.462.6500 – phone
440.462.6504 – fax
etb@kdglegal.com
*Counsel for Plaintiff Kayla Voller*

12

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

 /s/ Evan T. Byron

Evan T. Byron, Esq. (0081100)

# Promissory Note

On this date of <u>February 17th, 2020</u>, in return for valuable consideration received, the undersigned, <u>NSEM Mansfield 1, LLC</u> (hereinafter "Borrower") jointly and severally promises to pay <u>Kayla Voller</u> (hereinafter "Lender"), the sum of <u>$200,000.00</u> together with interest thereon, as stated in the terms of this note.

**Terms of Repayment** - This loan shall be repaid under the following terms:

$200,000.00 to be financed at 3.33% per month – Monthly payments of $6,666.67. 1st prorated payment on March 1st, 2019 – Last payment on June 1st, 2020 with a balloon of $200,000.00

**Collateral** - The following properties will be used as collateral –

<u>See attached Exhibit A</u>

**Payable On Demand** - The entire unpaid principal and accrued interest thereon, if any, shall become due and payable on demand by the holder of this note 120 days after such demand is made in writing. Should demand be made before note maturation, interest rate shall retroactively change to 3% APR.

**Place of Payment** - all payments due under this note shall be made by ACH or mailed to

~~or at such other place as the holder of this~~ Note may designate in writing.

**Borrower's Address** - The Borrower shall provide to provide prompt written notice to the Lender of any change of address.

**Prepayment** - This Note may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall first be applied to interest, and then to principal payments in the order of their maturity.

**Default** - In the event of default, the borrower[s] agree to pay all costs and expenses incurred by the Lender, including all reasonable attorney fees (including both hourly and contingent attorney fees as permitted by law) for the collection of this Note upon default, and including reasonable collection charges (including, where consistent with industry practices, a collection charge set as a percentage of the outstanding balance of this Note) should collection be referred to a collection agency.

The note holder understands and agrees that regardless of any other provisions contained herein, this note is a non-recourse note and the holder's sole recourse in the event of a default shall be against the property securing this note and not against the borrower.

**Acceleration of Debt** - In the event that the borrower fails to make any payment due under the terms of this Note, or breach any condition relating to any security, security agreement, note, mortgage or lien granted as collateral security for this Note, seeks relief under the Bankruptcy Code, or suffers an involuntary petition in bankruptcy or receivership not vacated within thirty



(30) days, the entire balance of this Note and any interest accrued thereon shall be immediately due and payable to the holder of this Note.

**Joint and Several Liability -** All borrowers identified in this Note shall be jointly and severally liable for any debts secured by this Note.

**Modification -** No modification or waiver of any of the terms of this Agreement shall be allowed unless by written agreement signed by both parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

**Transfer of the Note -** The borrowers hereby waive any notice of the transfer of this Note by the Lender or by any subsequent holder of this Note, agree to remain bound by the terms of this Note subsequent to any transfer, and agree that the terms of this Note may be fully enforced by any subsequent holder of this Note.

**Severability of Provisions -** In the event that any portion of this Note is deemed unenforceable, all other provisions of this Note shall remain in full force and effect.

**Choice of Law -** All terms and conditions of this Note shall be interpreted under the laws of the state of Ohio.

Signed Under Penalty of Perjury, this 17th Day of February, 2020,

Matthew Motil for
NSEM Manfield 1, LLC

**Exhibit A**
Portfolio of Properties

38 Rowland Mansfield OH 44901

45 N Foster Mansfield OH 44901

49 Wolfe Mansfield OH 44901

129 Gettings Place Mansfield OH 44901

133 Arthur Ave Mansfield OH 44901

136 Weldon Mansfield OH 44901
139 S Franklin Mansfield OH 44901

146 S Main Mansfield OH 44901

147 W 5th St Mansfield OH 44901

151 Boughton Ave Mansfield OH 44901

155 W 5th Mansfield OH 44901

179 Western Ave, Mansfield, OH 44906

214 Atcheson Ave, Mansfield, OH 44903

258 Elmwood Dr, Mansfield, OH 44906

278 N Home Ave, Mansfield, OH 44906

290 N Home Ave, Mansfield, OH 44906

316 Hammond Ave, Mansfield, OH 44902

323 W Emerald St, Willard, OH 44890

375 3rd Ave Mansfield OH 44901

379 Home Ave Mansfield 44901

203 Buckingham, Mansfield, Ohio 44903

425 W 4th Mansfield OH 44903

431 Plymouth St, Plymouth OH 44865

574 W 4th St. Mansfield OH 44903

701 Springmill St. Mansfield OH 44903

6220 Olivesburg-Fitchville, Greenwich, Ohio 44837

417-421 Plymouth St. Plymouth OH 44865

**MORTGAGE**

Made on this  17th day of  February , 2020,

Between

Kayla Voller

(hereinafter "Mortgagee")

And

NSEM Mansfield 1, LLC

(hereinafter "Mortgagor")

**Whereas, MORTGAGOR** by its Note (hereinafter the "NOTE") dated February 17, 2020 is indebted to MORTGAGEE in the principal amount of $200,000.00 advanced by MORTGAGEE to MORTGAGOR, together with interest thereon at the rate(s) provided in the NOTE until the INDEBTEDNESS is paid in full in the manner and at the times set forth in the NOTE, with the final payment of principal and interest, if not sooner paid, due and payable at the maturity date set forth in the NOTE, as the same may be amended, and containing other terms and conditions, all of which are specifically incorporated herein by reference; and

**Whereas,** as a condition to extending the aforementioned INDEBTEDNESS to MORTGAGOR, the MORTGAGEE requires, and MORTGAGOR has agreed to secure the payment and performance of its obligations under the Note with this MORTGAGE.

**Now, Therefore,** MORTGAGOR, in consideration of the INDEBTEDNESS and as security for the payment of the same, does hereby mortgage, grant and convey to the MORTGAGEE, its successors and assigns:

All of MORTGAGOR'S right, title and interest in, to and under (i) the premises commonly referred to as **Mansfield Portfolio 1** (i) as more particularly described in Exhibit A attached hereto and made a part hereof, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining and all of the estate, right, title, interest, claim and demand whatsoever of the Mortgagor therein and in the public streets and ways adjacent thereto, either at law or in equity, in possession or expectancy (collectively, the "Property"); and (ii) the structures and buildings, and all additions and improvements thereto, now or hereafter erected upon the Property (including all equipment constituting fixtures thereon) (collectively, the "Improvements", and together with the Property, the "Mortgaged Premises");

**TO HAVE AND TO HOLD,** the Mortgaged Premises unto the Mortgagee, its successors and/or assigns, to its own use forever in accordance with the provisions hereof.

Provided, however, that if the MORTGAGEE the INDEBTEDNESS and shall fully perform each of the other covenants and agreements hereinafter set forth, then this Mortgage and the estate hereby granted and conveyed shall become void.

**This Mortgage** is executed and delivered subject to the following covenants and agreements:

(1)        MORTGAGOR shall promptly pay when due the INDEBTEDNESS according to the NOTE and this Mortgage.



(2)  Until the INDEBTEDNESS is fully paid, MORTGAGOR shall: (a) pay and discharge, when the same shall become due and payable, all taxes, assessments, sewer and water rents and all other charges and claims assessed or levied from time to time by any lawful authority upon any part of the MORTGAGED PREMISES and which shall or might have priority in lien or payment to the INDEBTEDNESS secured hereby, such payments to be made directly to the person or entity to which payment is owed; (b) pay and discharge all liens, claims or encumbrances which may be filed against the MORTGAGED PREMISES and which might have priority in lien or payment to the INDEBTEDNESS secured hereby; (c) provide and keep in effect, by paying the necessary premiums and charges thereon, such policies of hazard and liability insurance as MORTGAGEE may from time to time require on the improvements now or hereafter erected on the MORTGAGED PREMISES, with loss payable clauses in favor of MORTGAGOR and MORTGAGEE, as their respective interests may appear; and (d) promptly submit to MORTGAGEE evidence of the date and punctual payment of all of the foregoing charges. In the event of loss, MORTGAGOR shall give prompt notice to the insurance carrier and MORTGAGEE. Unless MORTGAGEE and MORTGAGOR otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the MORTGAGED PREMISES, if the restoration or repair is economically feasible and MORTGAGEE'S security is not lessened. If the restoration or repair is not feasible or if MORTGAGEE'S security would be lessened, the insurance proceeds shall be applied to the INDEBTEDNESS secured by this Mortgage, whether or not then due, with any excess paid to MORTGAGOR. If MORTGAGOR abandons the MORTGAGED PREMISES or does not answer, within 30 days, a notice from MORTGAGEE that the insurance carrier has offered to settle a claim, then MORTGAGEE may collect the insurance proceeds. MORTGAGEE may use the proceeds to repair or restore the MORTGAGED PREMISES or to pay the INDEBTEDNESS secured by this MORTAGEE and MORTGAGOR otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of monthly payments. If the MORTGAGED PREMISES are acquired by the MORTGAGEE through foreclosure, MORTGAGOR'S rights to any insurance policies and proceeds resulting from damage to the MORTGAGED PREMISES prior to the acquisitions shall pass to MORTGAGEE to the extent of the INDEBTEDNESS secured by this Mortgage immediately prior to the acquisition.

(3)  MORTGAGOR shall maintain all improvements subject to this Mortgage in good and substantial repair, MORTGAGEE shall have the right to enter upon the MORTGAGED PREMISES at any reasonable hour for the purpose of inspecting the order, condition and repair of the improvements erected thereon.

(4)  MORTGAGOR covenants and agrees not to create, nor permit to accrue, upon all or any part of the MORTGAGED PREMISES any debt, lien or charge which would be prior in lien or payment to the lien of this Mortgage.

(5)  In the event MORTGAGOR neglects or refuses to perform the covenants and agreements contained in this Mortgage, then MORTGAGEE may, but shall not be required to, do so, and make whatever advances are necessary to protect the value of the MORTGAGED PREMISES and MORTGAGEE'S rights in the MORTGAGED PREMISES, provided that no such payment by the MORTGAGEE shall be considered a waiver or release of any remedy MORTGAGEE may have against MORTGAGOR. MORTGAGEE'S actions may include paying taxes, assessments, maintenance charges, insurance premiums, costs or expenses for the protection of the MORTGAGED PREMISES or the lien of this Mortgage or paying expenses, including attorney's fees, incurred by reason of the MORTGAGOR'S default. Any advances made by MORTGAGEE hereunder shall become additional INDEBTEDNESS of MORTGAGOR secured by this Mortgage. Unless MORTGAGEE agrees in writing to other terms of payment, these advances shall bear interest from the date of disbursement at the rate(s) set forth in the NOTE and shall be payable, with interest, upon notice from MORTGAGEE to MORTGAGOR requesting payment.

(6)  Should the MORTGAGED PREMISES or any part thereof be taken or damaged by reason of any public condemnation proceeding or similar action, the MORTGAGEE shall be entitled to all compensation, awards, and any other payment or relief therefore to the extent of the outstanding INDEBTEDNESS and shall be entitled, at its option, to commence, appear in, and prosecute in its own name, any action or proceeding or to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action, and proceeds are hereby assigned to the MORTGAGEE, who may, after deducting there from its expenses, including attorney's

fees, release any monies received by it or apply the same to any INDEBTEDNESS secured hereby.

(7)     If all or any part of the MORTGAGED PREMISES or any interest in it is sold or transferred, or if a beneficial interest in MORTGAGOR is sold or transferred and MORTGAGOR is not a natural person, MORTGAGEE shall, upon request by MORTGAGOR, participate and permit a partial release of the parcels of the Premises provided that MORTGAGOR pays to MORTGAGEE the Release Price assigned to each parcel included in the partial release request, as set forth in EXHIBIT A attached hereto and made a part hereof.

(8)     The following shall constitute Events of Default under this Mortgage: (a) MORTGAGOR'S failure to pay any installment of principal or interest in accordance with the NOTE; (b) MORTGAGOR'S failure to pay any other sum required to be paid in accordance with the NOTE or this Mortgage, when the same is due and payable; or (c) MORTGAGOR'S failure to perform any covenant or agreement in the NOTE or this Mortgage. If one or more of the foregoing Events of Default occurs, MORTGAGEE may, at its option, after any notice and opportunity to cure required by law and otherwise without notice and opportunity to cure, declare the entire unpaid balance of the INDEBTEDNESS to be immediately due and payable. MORTGAGEE may immediately institute an action of mortgage foreclosure or take any other legal action for the enforcement of this Mortgage, and proceed to final judgment and execution thereon for the INDEBTEDNESS, costs of suit and an attorney's commission for collection of        ten        percent (10.0%) but not less than $2,500.00. Interest at the highest rate provided in the NOTE shall continue to accrue on any judgment obtained by MORTGAGEE, until actual payment is made of the full amount due MORTGAGEE. MORTGAOR hereby waives and releases all benefits that might accrue to MORTGAGOR by virtue of any present or future laws exempting the MORTGAGED PREMISES, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment.

(9)     The covenants in this Mortgage shall bind, and its benefits shall inure to, the MORTGAGOR and the MORTGAGEE and their respective heirs, executors, administrators, successors and assigns, subject to the provisions of Paragraph 8.

(10)    If this Mortgage is executed by more than one person, the undertakings and liability of each shall be joint and several.

(11)    Any notice which is mailed certified mail to MORTGAGOR or to the person(s) who (is)(are) the then owner(s) of the MORTGAGED PREMISES at the address of the MORTGAGED PREMISES or at such other address as MORTGAGOR shall designate to MORTGAGEE in writing, shall be sufficient notice when required under this Mortgage.

(12)    MORTGAGEE'S rights and remedies as provided herein or in the NOTE shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of MORTGAGEE, and may be exercised as often as the occasion therefor shall occur; and the failure to exercise any right or remedy shall in no event be construed as a waiver by MORTGAGEE or release of the same.

(13)    In the event any term or provision of this Mortgage or the application thereof to any person or circumstances shall, to any extent be invalid and unenforceable, the remainder of this Mortgage, or its application other than to that which is held invalid or unenforceable, shall not be affected thereby, and each term and provision hereof shall be valid and enforceable to the fullest extent permitted by law.

This Mortgage shall be governed by the law of Ohio, in which the MORTGAGED PREMISES are located. This provision shall not limit the applicability of federal law to this Mortgage.

Executed this __17th__ Day of __February__ , __2020__ .

For the Mortgagor,

By: Matthew Motil

ACKNOWLEDGMENT STATE OF __Ohio__ COUNTY OF __Cuyahoga__

On this __17th__ day of __February__ , __2020__ personally appeared before me,

__Matthew Motil__ ,

known to me or provided sufficient identification, to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

Kristen M Kish (seal)
Notary Public

My commission expires: 12/16/2023

**Document Prepared by Matthew Motil**

**EXHIBIT A**
**PORTFOLIO OF PROPERTIES**
**MORTGAGE RELEASE VALUES**

| ADDRESS | MORTGAGE RELEASE VALUE |
|---|---|
| 38 Rowland Mansfield OH 44901 | $12,859.88 |
| 45 N Foster Mansfield OH 44901 | $5,662.19 |
| 49 Wolfe Mansfield OH 44901 | $13,243.76 |
| 129 Gettings Place Mansfield OH 44901 | $5,182.34 |
| 133 Arthur Ave Mansfield OH 44901 | $11,132.44 |
| 136 Weldon Mansfield OH 44901 | $13,243.76 |
| 139 S Franklin Mansfield OH 44901 | $7,293.67 |
| 146 S Main Mansfield OH 44901 | $14,395.39 |
| 147 W 5th St Mansfield OH 44901 | $11,516.31 |
| 151 Boughton Ave Mansfield OH 44901 | $5,566.22 |
| 155 W 5th Mansfield OH 44901 | $7,485.60 |
| 179 Western Ave, Mansfield, OH 44906 | $8,445.30 |
| 214 Atcheson Ave, Mansfield, OH 44903 | $6,525.91 |
| 258 Elmwood Dr, Mansfield, OH 44906 | $7,677.54 |
| 278 N Home Ave, Mansfield, OH 44906 | $5,758.16 |
| 290 N Home Ave, Mansfield, OH 44906 | $5,566.22 |
| 316 Hammond Ave, Mansfield, OH 44902 | $14,587.33 |
| 375 3rd Ave Mansfield OH 44901 | $5,374.28 |
| 379 Home Ave Mansfield 44901 | $8,061.42 |
| 425 W 4th Mansfield OH 44903 | $13,627.64 |
| 431 Plymouth St, Plymouth OH 44865 | $16,794.63 |
| | |
| | |

## SCHEDULE A
## PROPERTY DESCRIPTION

Parcel # 1

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: BEING LOT NUMBER SIX THOUSAND FIVE HUNDRED SIXTY-SEVEN (#6567) AS THE SAME IS NUMBERED AND DELINEATED UPON THE RECORDED PLAT THEREOF OF RECORD IN PLAT BOOK 9, PAGE 3, TOGETHER WITH 7-1/2 FEET OF AN ALLEY TO THE SOUTH, VACATED BY ORDINANCE #40-4, RECORDERS OFFICE, RICHLAND COUNTY, OHIO.

PARCEL NO. 027-07-056-12-000

ADDRESS: 49 WOLFE AVENUE, MANSFIELD, OHIO

PARCEL #2:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: BEING A PART OF LOT NUMBER FIVE THOUSAND EIGHTY-EIGHT (#5088) AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN SET IN THE NORTHWEST CORNER OF LOT NUMBER 5088;

THENCE NORTH 89 DEGREES 52 MINUTES 26 SECONDS EAST ALONG THE NORTH LINE OF LOT NUMBER 5088, A DISTANCE OF 48.00 FEET TO A PK NAIL SET IN THE NORTHEAST CORNER OF LOT NUMBER 5088; THENCE SOUTH 00 DEGREES 00 MINUTES 00 SECONDS WEST ALONG THE EAST LINE OF LOT NUMBER 5088, A DISTANCE OF 33.66 FEET TO AN IRON PIN SET;

THENCE SOUTH 89 DEGREES 52 MINUTES 26 SECONDS WEST, A DISTANCE OF 48.00 FEET TO AN IRON PIN SET ON THE WEST LINE OF LOT NO. 5088, THENCE NORTH 00 DEGREES 00 MINUTES 00 SECONDS EAST ALONG THE WEST LINE OF LOT NUMBER 5088, A DISTANCE OF 33.66 FEET TO THE PLACE OF BEGINNING, AND CONTAINING 1615.6766 SQUARE FEET BUT SUBJECT TO ALL LEGAL HIGHWAYS, ALSO ALL EASEMENTS OF RECORD.

BASIS OF BEARINGS: SURVEY BY D.C. SEILER, NOVEMBER 14, 1994. SURVEY BY LARRY G. BLUNK, P.S. 6320, NOVEMBER 3, 2002.

PARCEL NO. 027-06-100-13-000

ADDRESS: 45 NORTH FOSTER STREET, MANSFIELD, OHIO

PARCEL #3:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: BEING LOT NUMBER FIVE THOUSAND SEVEN HUNDRED NINETY-SIX (#5796) AS THE SAME IS NUMBERED AND DELINEATED UPON THE RECORDED PLAT THEREOF.

PARCEL NO. 027-01-037-08-000

ADDRESS: 133 ARTHUR AVENUE, MANSFIELD, OHIO

PARCEL #4:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: BEING LOT NUMBER SEVEN THOUSAND SEVEN HUNDRED THIRTY-NINE (#7739) OF THE CONSECUTIVE NUMBERS OF LOTS IN SAID CITY AS RECORDED IN PLAT VOLUME 10; PAGE 17.

PARCEL NO. 027-03-097-02-000

ADDRESS: 129 GETTINGS PLACE, MANSFIELD, OHIO

PARCEL #5:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND .STATE OF OHIO: BEING LOT NUMBER SIX THOUSAND EIGHT HUNDRED TWELVE (#6812) OF THE CONSECUTIVELY NUMBERED LOTS AS SHOWN AT PLAT VOLUME 9, PAGE 9.

PARCEL NO. 027-03-110-16-000

ADDRESS: 574 WEST FOURTH STREET, MANSFIELD, OHIO

PARCEL #6:

SITUATED.IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: KNOWN AS BEING LOT NUMBER SEVEN THOUSAND ONE HUNDRED TWENTY-SEVEN (#7127) OF THE CONSECUTIVELY NUMBERED LOTS IN SAID CITY AS SHOWN BY THE RECORDED PLAT IN VOLUME 9; PAGE 24.

PARCEL NO. 027-03-067-14-000

ADDRESS: 179 WESTERN AVENUE, MANSFIELD, OHIO

PARCEL #7:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND. STATE OF OHIO: BEING LOT NUMBER SEVEN THOUSAND SEVEN HUNDRED EIGHTY-SIX (#7786) OF THE CONSECUTIVELY NUMBERED LOTS AS SHOWN AT PLAT VOLUME 10, PAGE 20.

PARCEL NO. 027-03-033-03-000

ADDRESS: 214 ATCHESON AVENUE, MANSFIELD, OHIO

PARCEL #8:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO; BEING LOT NUMBER SIX THOUSAND THREE HUNDRED FIFTY-FOUR (#6354) OF THE CONSECUTIVE-NUMBERS OF LOTS IN SAID CITY AS SHOWN AT VOLUME 8, PAGE 39 OF PLATS.

PARCEL NO. 027-03-055-09-000

ADDRESS: 258 ELMWOOD DRIVE, MANSFIELD, OHIO

PARCEL #9:

BEING PART OF INLOT 6769 OF THE NEW AND REVISED NUMBERS OF THE CITY OF MANSFIELD, COUNTY OF RICHLAND, STATE OF OHIO AND BEING MORE FULLY DESCRIBED AS FOLLOWS: BEGINNING AT A 5/8 INCH REBAR SET AT THE NORTHEAST CORNER OF INLOT 6769; THENCE RUNNING SOUTH 02° 08′ 30″, EAST ALONG THE EAST LINE OF INLOT 6769 (ALSO BEING THE WEST LINE OF A 16.00 FOOT ALLEY) FOR 92.04 FEET TO AN EXISTING IRON PIN AT THE SOUTHEAST CORNER OF INLOT 6769; THENCE TURNING AND RUNNING NORTH 89° 31′ 55″ WEST ALONG THE SOUTH LINE OF INLOT 6769 FOR 70.33 FEET TO AN EXISTING IRON PIN AT THE SOUTHWEST CORNER OF INLOT 6769; THENCE TURNING AND RUNNING NORTH 02° 16′ 34″ WEST ALONG THE WEST LINE OF SAID INLOT FOR 26.50 FEET TO A 5/8 INCH REBAR SET; THENCE TURNING AND RUNNING SOUTH 89° 31′ 55″ EAST FOR 17.50 FEET TO A 5/8 INCH REBAR SET; THENCE TURNING AND RUNNING NORTH 02° 16′ 34″ WEST FOR 86.43 FEET TO THE NORTH LINE OF INLOT 6769 (AN EXISTING IRON PIN BEING NORTH 68° 25′ 59″ WEST AND 0.15 FEET FROM THIS POINT); THENCE TURNING AND RUNNING SOUTH 68° 25′ 59″ EAST ALONG SAID NORTH LINE (ALSO BEING THE SOUTH LINE OF WEST FOURTH STREET) FOR 57.93 FEET TO THE PLACE OF BEGINNING. ALL 5/8 INCH REBARS SET HAVE A PLASTIC CAP STAMPED "PS 7016". THE ABOVE DESCRIBED PARCEL HAS A CALCULATED AREA OF 5,884.03 SQUARE FEET OF LAND ACCORDING TO A SURVEY MADE ON MARCH 18, 2003 BY STEVEN H RIEDEL, OHIO SURVEYOR 7016. BASIS OF BEARINGS: SURVEY INDEX E PAGE 240.

PARCEL NO. 027-03-083-10-000

PARCEL #11:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND® STATE OF OHIO: BEING LOT NUMBER THIRTEEN THOUSAND THIRTY-ONE (#13031) OF THE CONSECUTIVELY NUMBERED LOTS AS SHOWN AT PLAT VOLUME 18, PAGE 55.

PARCEL NO. 027-06-059-05-000

ADDRESS: 278 HOME AVENUE, MANSFIELD, OHIO

PARCEL #12:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: BEING LOT NUMBER NINE HUNDRED EIGHTY-THREE (#983) AS THE SAME IS NUMBERED AND DELINEATED UPON THE RECORDED PLAT THEREOF, OF RECORD IN PLAT BOOK 2, NO. 3, PAGE 6, RECORDERS OFFICE, RICHLAND COUNTY, OHIO.

PARCEL NO. 027-06-094-05-000

ADDRESS: 316 HAMMOND AVENUE, MANSFIELD, OHIO

PARCEL #13:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: BEING LOT NUMBER THIRTEEN THOUSAND' TWO HUNDRED SIXTY-THREE (#13263) OF THE CONSECUTIVELY NUMBERED LOTS AS SHOWN AT VOLUME 18, PAGE 165 OF PLATS.

PARCEL NO. 027-06-060-12-000

ADDRESS: 379 HOME AVENUE, MANSFIELD, OHIO

PARCEL #14:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: BEING 26.00 FEET OFF THE WEST SIDE OF INLOT NUMBER EIGHT HUNDRED NINETY-SEVEN (#897) OF THE CONSECUTIVE NUMBERS OF INLOTS IN THE SAID CITY OF MANSFIELD; COMMENCING AT A POINT 26.00 FEET EAST OF THE NORTHWEST CORNER OF SAID LOT; THENCE RUNNING WEST ON THE NORTH LINE OF SAID LOT, 26.00 FEET TO SAID NORTHWEST CORNER THEREOF; THENCE SOUTH THE FULL LENGTH OF SAID LOT ON THE WEST BOUNDARY LINE THEREOF TO THE SOUTHWEST CORNER THEREOF; THENCE WEST ON THE SOUTH BOUNDARY LINE OF SAID LOT, 26.00 FEET; THENCE NORTH THE LENGTH OF SAID LOT PARALLEL WITH THE WEST BOUNDARY LINE TO THE PLACE OP BEGINNING. TOGETHER WITH THAT PART OF THE EASTERN PORTION OF SAID LOT ACQUIRED BY DECREE DETERMINING THE · PROPER DIVISION LINE BETWEEN THE PARCELS OF LAND OWNED BY PLAINTIFF AND DEFENDANT, TOGETHER WITH EASEMENT FOR OVERHANG OF EAVES ON HOUSE AND GARAGE IN JOURNAL ENTRY FILED JUNE 25, 1954 IN COMMON PLEAS COURT CASE NO. 34592.

PARCEL NO. 027-03-040-03-000

ADDRESS: 155 WEST FIFTH STREET, MANSFIELD, OH

PARCEL #15:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: BEING LOT NUMBER FIVE THOUSAND NINE HUNDRED (#5900) OF THE CONSECUTIVELY NUMBERED LOTS IN THE SAID CITY OF MANSFIELD, AS SHOWN AT PLAT VOLUME 9, PAGE 18. TOGETHER WITH ANY RIGHTS, IF ANY, IN UÑNAMED 10.00 FOOT PRIVATE DRIVE SHOWN AT RICHLAND COUNTY AUDITORS DUPLICATE.

PARCEL.NO. 027-03-128-10-000

ADDRESS: 151 BOUGHTON AVENUE, MANSFIELD, OHIO

PARCEL #16:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE.OF OHIO: BEING LOT NUMBER THREE THOUSAND SEVEN HUNDRED SEVENTY (#3770) AS THE SAME IS NUMBERED AND DELINEATED UPON THE RECORDED PLAT THEREOF.

PARCEL NO. 027-05-078-11-000

ADDRESS: 375 THIRD AVENUE, MANSFIELD, OHIO

PARCEL #17:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: BEING LOT NUMBER THIRTEEN THOUSAND THIRTY-THREE (#13033) OF THE CONSECUTIVELY NUMBERED LOTS IN SAID CITY AS RECORDED IN PLAT VOLUME 18, PAGE 21.

PARCEL NO. 027-06-010-08-000

ADDRESS: 290 HOME AVENUE, MANSFIELD, OHIO

PARCEL #18:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: BEING KNOWN AS PART OF INLOT NO. FOUR HUNDRED FORTY-THREE (#443) OF THE NEW AND REVISED NUMBERS OF THE SAID CITY, AND BEING MORE FULLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN EXISTING IRON PIN AT THE SOUTHWEST CORNER OF INLOT NO. 443;

THENCE RUNNING NORTH 00 DEGREES 05 MINUTES 12 SECONDS EAST ALONG THE WEST LINE OF INLOT NO. 443 (ALSO BEING THE EAST LINE OF SOUTH FRANKLIN AVENUE) FOR 30.00 FEET TO A 5/8 INCH REBAR SET;

THENCE TURNING AND RUNNING NORTH 89 DEGREES 42 MINUTES 34 SECONDS EAST FOR 170.00 FEET TO THE EAST LINE OF INLOT NO. 443 (AN EXISTING IRON PIN BEING NORTH 67 DEGREES 46 MINUTES 33 SECONDS EAST AND 1.41 FEET FROM THIS POINT);

THENCE TURNING AND RUNNING SOUTH 00 DEGREES 05 MINUTES 12 SECONDS WEST ALONG SAID EAST LINE (ALSO BEING THE WEST LINE OF AN EXISTING 20.00 FOOT ALLEY) FOR 30.00 FEET TO AN EXISTING IRON PIN AT THE SOUTHEAST CORNER OF INLOT NO. 443; THENCE TURNING AND RUNNING SOUTH 89 DEGREES 42 MINUTES 34 SECONDS WEST ALONG THE SOUTH LINE OF SAID INLOT FOR 170.09 FEET TO THE PLACE OF BEGINNING.

ALL 5/8 INCH REBARS SET HAVE A PLASTIC CAP STAMPED "PS 7016".

THE ABOVE DESCRIBED PARCEL HAS A CALCULATED AREA OF 5,099.89 SQUARE FEET OF LAND ACCORDING TO A SURVEY MADE ON JULY I, 2003 BY STEVEN H. RIEDEL, OHIO SURVEYOR #7016.

BASIS OF BEARINGS: SURVEY INDEX "B", PAGE 82.

PARCEL NO. 027-06-101-17-000

ADDRESS: 139 SOUTH FRANKLIN AVENUE, MANSFIELD, OHIO

PARCEL #19:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: BEING A PART OF LOTS NUMBER THREE HUNDRED THIRTY-THREE (#333) AND NUMBER ONE THOUSAND NINETY (#1090) AS RECORDED IN VOLUME 2, PAGE 118 OF THE RICHLAND COUNTY PLAT RECORDS AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN SET IN THE SOUTHWEST CORNER OF LOT NO. 1090;

THENCE NORTH 01 DEGREES 07 MINUTES 24 SECONDS EAST ALONG THE WEST LINE OF LOT NUMBERS 1090 AND 333, A DISTANCE OF 49.00 FEET TO AN IRON PIN FOUND;

THENCE SOUTH 88 DEGREES 43 MINUTES 30 SECONDS EAST, A DISTANCE OF 69. 99 FEET TO AN IRON PIN FOUND ON THE NORTH LINE OF LOT NO. 1090;

THENCE SOUTH 01 DEGREES 05 MINUTES 09 SECONDS WEST, A DISTANCE OF 47. 46 FEET TO AN IRON PIN FOUND ON THE SOUTH LINE OF LOT NO. 1090;

THENCE NORTH 89 DEGREES 59 MINUTES 15 SECONDS WEST ALONG THE SOUTH LINE OF LOT NO. 1090, A DISTANCE OF 70.03 FEET TO THE PLACE OF BEGINNING;

AND CONTAINING 3376. 0699 SQUARE FEET IN ALL, OF WHICH 314.9357 SQUARE FEET ARE IN A PART OF LOT NO. 333 AND 3061.1342 SQUARE FEET ARE IN A PART OF LOT NO. 1090, BUT SUBJECT TO ALL LEGAL HIGHWAYS, ALSO ALL EASEMENTS OF RECORD. BASIS OF BEARINGS: SURVEY BY R.M. LITTLE AUGUST 4, 1994. PREPARED BY LARRY G. ·BLUNK, P.S. 6320, DATED JUNE 25, 2003.

PARCEL NO. 027-03-046-03-000

ADDRESS: I36 WELDON AVENUE, MANSFIELD, OHIO

PARCEL #20:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: BEING' LOT NUMBER THREE THOUSAND FIFTY-SEVEN (#3057) AS THE SAME IS NUMBERED AND DELINEATED UPON THE RECORDED PLAT THEREOF AT VOLUME 4, PAGE 43 OF PLATS.

PARCEL NO. 027-03-079-16-000

ADDRESS: 38-40 ROWLAND AVENUE, MANSFIELD, OHIO


PARCEL·#21:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND .AND STATE OF OHIO: BEING LOT NUMBER TWO THOUSAND NINE HUNDRED TWENTY-SIX (#2926) OF THE CONSECUTIVE NUMBERS OF LOTS AS SHOWN AT VOLUME 4, PAGE 32 OF PLATS.

PARCEL NO. 027-03-046-11-000

ADDRESS: 147 WEST FIFTH STREET, MANSFIELD, OHIO


PARCEL #22:

SITUATED IN THE CITY OF MANSFIELD, COUNTY OF RICHLAND AND STATE OF OHIO: BEING LOT NUMBER SIX THOUSAND EIGHT HUNDRED TWENTY-ONE (#6821) AND LOT NUMBER FOUR HUNDRED THIRTY-EIGHT (#438) OF THE CONSECUTIVELY NUMBERED LOTS AS SHOWN AT PLAT VOLUME 9, PAGE 7, SUBJECT TO EASEMENT FOR HIGHWAY PURPOSES RECORDED AT DEED VOLUME 557, PAGE 157.

PARCEL NO. 027-01-038-04-000 & NO. 027-01-038-05-000

ADDRESS: 146 SOUTH MAIN STREET, MANSFIELD, OHIO

PARCEL #23:

SITUATED IN THE VILLAGE OF PLYMOUTH, COUNTY OF RICHLAND AND 'STATE OF OHIO: BEING IN OUTLOT NUMBER THIRTY-FOUR (#34) IN SAID VILLAGE, MORE FULLY BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON BAR MONUMENT SET ON THE EASTERLY RIGHT-OF-WAY LINE OF PLYMOUTH STREET, SAID BAR BEING 307.38 FEET SOUTH 01 DEGREES 47 MINUTES 45 SECONDS EAST FROM THE NORTH WEST CORNER OF SAID OUTLOT NO. 34· IN THE SAID VILLAGE; THENCE NORTH 89 DEGREES 08 MINUTES 15 SECONDS EAST, A DISTANCE OF 210.28 FEET TO AN IRON BAR MONUMENT;

THENCE SOUTH 01 DEGREES 47 MINUTES 45 SECONDS EAST, A DISTANCE OF 208.68 FEET TO AN IRON BAR MONUMENT;

THENCE NORTH 87 DEGREES 12 MINUTES 30 SECONDS WEST, A DISTANCE OF 210.93 FEET TO AN IRON BAR MONUMENT SET ON THE EASTERLY RIGHT-OF-WAY LINE OF PLYMOUTH STREET;

THENCE NORTH 01 DEGREES 47 MINUTES 45 SECONDS WEST·ALONG SAID EASTERLY RIGHT-OF-WAY OF PLYMOUTH STREET, A DISTANCE OF 195.24 FEET TO THE PLACE OF BEGINNING.

THE ABOVE BOUNDS ENCLOSE AN AREA OF .9748 OF AN ACRE OF LAND, SUBJECT HOWEVER TO ALL LEGAL EASEMENTS OF RECORD.

PARCEL NO; 035-56-161-01-001

431 PLYMOUTH STREET, PLYMOUTH, OHIO

PARCEL #24

TRACT #1:

SITUATED IN THE VILLAGE OF PLYMOUTH, COUNTY OF RICHLAND AND STATE OF OHIO: BEING.WITHIN OUTLOTS NUMBER THIRTY-TWO (#32), NUMBER THIRTY-THREE (#33) AND NUMBER THIRTY-FOUR (#34), IN SAID VILLAGE, NORTHWEST QUARTER OF SECTION 5, AND BEING A PORTION OF ACREAGE CONVEYED TO WILLIAM C. AND DORIS I. ENDERBY BY DEED RECORDED IN VOLUME 680, PAGE 317 AND VOLUME 692,. PAGE 336 AND MORE FULLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN SET AT THE NORTHWEST CORNER OF A 0.9748 ACRE PARCEL CONVEYED TO DAVID A. AND THERESA K. RIEDLINGER BY DEED VOLUME 914, PAGE 82, BEING ALSO A POINT ON THE EAST LINE OF PLYMOUTH STREET AND THE WEST LINE OF OUTLOT NO. 34:

1). THENCE NORTH 01 DEGREES 37 MINUTES 42 SECONDS WEST ON SAID EAST LINE OF PLYMOUTH STREET AND WEST'LINE OF OUTLOT NO. 34, A DISTANCE OF 36.97 FEET TO A 1/2 INCH PIPE FOUND AT THE SOUTHWEST CORNER OF A STRIP CONVEYED TO J. & E. ARTHUR BY DEED VOLUME 664, PAGE 462;

2) THENCE NORTH 89 DEGREES 15 MINUTES 53 SECONDS EAST ON THE SOUTH LINE OF SAID STRIP AND AN EXTENSION THEREOF, PASSING THROUGH B 1/2 INCH PIPE FOUND AT 179.97 FEET, A TOTAL DISTANCE OF 663.32 FEET TO AN IRON PIN SET ON THE EAST LINE OF A 2 ACRE PARCEL CONVEYED TO W. & D. ENDERBY BY DEED VOLUME 692, PAGE 336;

3) THENCE SOUTH 00 DEGREES 30 MINUTES 15 SECONDS WEST ON SAID EAST LINE PASSING THROUGH A 1/2 INCH PIPE FOUND AT 130. 45 FEET, A TOTAL DISTANCE OF 130.56 FEET TO THE NORTH LINE OF OUTLOT NO. 33;

4) THENCE NORTH 87 DEGREES 48 MINUTES 45 SECONDS EAST ON SAID NORTH LINE, 340.64 FEET TO A 1/2 INCH PIPE FOUND AT THE NORTHEAST CORNER OF A 2.76 ACRE PARCEL CONVEYED TO W. & D. ENDERBY BY DEED VOLUME 680, PAGE 317;

5) THENCE SOUTH 01 DEGREES 21 MINUTES 29 SECONDS EAST ON THE EAST LINE OF SAID 2.76 ACRE PARCEL AND THE EAST LINE OF A 2.44 ACRE PARCEL CONVEYED TO W. & D. ENDERBY BY DEED VOLUME 680, PAGE 317, TOTAL DISTANCE OF 377.94 FEET TO A POINT REFERENCED BY A 1/2 INCH PIPE FOUND BEARING SOUTH 01 DEGREES 21 MINUTES 29 SECONDS EAST, 45.00 FEET;

6) THENCE SOUTH 88 DEGREES 31 MINUTES 33 SECONDS WEST, 623. 65 FEET TO A 1/2 INCH PIPE FOUND ON THE EAST LINE OF A PARCEL CONVEYED TO DAVID AND LINDA GIBSON BY DEED VOLUME 858, PAGE 589;

7) THENCE NORTH 00 DEGREES· 30 MINUTES 59 SECONDS EAST ON SAID EAST LINE, 227.21 FEET TO A 1/2 INCH PIPE FOUND AT THE NORTHEAST CORNER;

8) THENCE NORTH 87 DEGREES 12 MINUTES 46 SECONDS WEST ON THE NORTH LINE OF SAID GIBSON PARCEL, 383.21 FEET TO A 1/2 INCH BAR FOUND ON THE EAST LINE OF PLYMOUTH STREET;

9) THENCE NORTH 01 DEGREES 37 MINUTES 42 SECONDS WEST ON SAID EAST LINE, 24.97 FEET TO A 1/2 INCH BAR FOUND AT THE SOUTHWEST CORNER OF SAID RIEDLINGER PARCEL;

10) THENCE SOUTH 87' DEGREES 14 MINUTES 52 SECONDS EAST ON THE SOUTH LINE OF SAID RIEDLINGER PARCEL, 210.44 FEET TO A 1/2 INCH BAR FOUND AT THE SOUTHEAST CORNER THEREOF;

11) THENCE NORTH 01 DEGREES 30 MINUTES 57 SECONDS WEST ON THE EAST LINE OF SAID RIEDLINGER PARCEL, 208. 68 FEET TO THE NORTHEAST CORNER THEREOF, SAID CORNER BEING REFERENCED BY A 1/2 INCH BAR FOUND BEARING SOUTH 36 DEGREES 57 MINUTES 28 SECONDS WEST, 0.62 FEET;

12) THENCE SOUTH 89 DEGREES 05 MINUTES 23 SECONDS WEST ON THE NORTH LINE OF SAID RIEDLINGER PARCEL, 210. 25 FEET TO THE POINT OF BEGINNING, ENCLOSING AN AREA OF 7.5555 ACRES, BUT SUBJECT TO ALL LEGAL HIGHWAYS AND EASEMENTS. ENCLOSED IN THE 7.5555 ACRE PARCEL IS 1.6551 ACRES IN OUTLOT NO. 34, 5.1322 ACRES IN OUTLOT NO. 33 AND .7682 ACRES IN OUTLOT NO. 32.

THIS DESCRIPTION WAS PREPARED FROM A FIELD .SURVEY PERFORMED BY DAVID E. SEASLY P.S. #7050 IN MAY 1993. THE BEARINGS REFERRED TO HEREIN ARE BASED ON THE NORTH LINE OF OUTLOT NO. 33 AS SOUTH 87 DEGREES 48 MINUTES 45 SECONDS WEST AS PER DEED VOLUME 680, PAGE 318. THE IRON PINS SET ARE 5/8 INCH DIAMETER. REBAR WITH IDENTIFICATION CAPS MARKED "SEASLY S-7050".

SUBJECT TO THE RESERVATION AT OFFICIAL RECORD VOLUME 236, PAGE 901 WHEREIN THE GRANTOR RESERVED A PERPETUAL NON-EXCLUSIVE. EASEMENT FOR, PURPOSES OF INGRESS AND EGRESS, AND FOR ALL CUSTOMARY PRIVATE ROAD PURPOSES AND FOR GENERAL UTILITY PURPOSES, ON, OVER AND ACROSS THE FOLLOWING DESCRIBED REAL PROPERTY: BEING WITHIN OUTLOT NO. 34, VILLAGE OF PLYMOUTH, NORTHWEST QUARTER OF SECTION 5, PLYMOUTH TOWNSHIP, RICHLAND COUNTY, OHIO, AND BEING A PORTION OF ACREAGE CONVEYED TO WILLIAM C. AND DORIS I. ENDERBY BY DEED RECORDED IN VOLUME 680, PAGE 317 AND VOLUME 692, PAGE 336 AND MORE FULLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN SET AT THE NORTHWEST CORNER OF A 0.9748 ACRE PARCEL CONVEYED TO DAVID A. & THERESA K. RIEDLINGER BY DEED VOLUME 914, PAGE 82, BEING ALSO A POINT ON THE EAST LINE OF PLYMOUTH STREET AND THE WEST LINE OF OUTLOT NO. 34;

1) THENCE NORTH 01 DEGREES 37 MINUTES 42 SECONDS WEST ON SAID EAST LINE OF PLYMOUTH STREET AND WEST LINE OF OUTLOT NO. 34, A DISTANCE OF 36.97 FEET TO A 1/2 INCH PIPE FOUND AT THE SOUTHWEST CORNER OF A STRIP CONVEYED TO J. & E. ARTHUR BY DEED VOLUME 664, PAGE 462;

2) THENCE NORTH 89 DEGREES 15 MINUTES 53 SECONDS EAST ON THE SOUTH LINE OF SAID STRIP AND AN EXTENSION THEREOF, PASSING THROUGH A 1/2 INCH PIPE FOUND AT 179. 97 FEET, A TOTAL DISTANCE OF 240.33 FEET TO A POINT;

3) THENCE SOUTH 01 DEGREES 30 MINUTES 57 SECONDS EAST, 36.24 FEET TO A POINT;

4) THENCE SOUTH 89 DEGREES 05 MINUTES 23 SECONDS WEST MEETING AND BEING COINCIDENT WITH THE NORTH LINE OF SAID RIEDLINGER PARCEL AT 30.00 FEET, A TOTAL DISTANCE OF 240.25 FEET TO THE POINT OF BEGINNING ENCLOSING AN AREA OF 0.2019 ACRES.

Property address commonly known as: 38 Rowland Avenue, Mansfield, Ohio 44903 , 45 Foster Street North, Mansfield, Ohio 44902, 49 Wolfe Avenue, Mansfield, Ohio 44907 ,129 Gettings Place, Mansfield, Ohio 44903, 133 Arthur Avenue, Mansfield, Ohio 44903, 136 North Weldon Avenue, Mansfield, Ohio 44902, 139 South Franklin Street, Mansfield , Ohio 44902, 146 South Main Street, Mansfield, Ohio 44902, 147 West 5th Street, Mansfield, Ohio 44902, 151 Boughton Avenue, Mansfield, Ohio 44903, 155 West 5th Street , Mansfield, Ohio 44902, 179 Western Avenue, Mansfield, Ohio 44906, 214 Atcheson Avenue, Mansfield, Ohio 44903, 258 Elmwood Drive, Mansfield, Ohio 44906, 278 Home Avenue, Mansfield, Ohio 44906, 290 Home Avenue, Mansfield, Ohio 44906, 316 Hammond Avenue, Mansfield, Ohio 44902, 375 3rd Avenue, Mansfield, Ohio 44905, 379 Home Avenue, Mansfield, Ohio 44902, 425 West 4th Street, Mansfield, Ohio 44903, 431 Plymouth Street, Plymouth, Ohio 44865,

**IN THE COMMON PLEAS COURT**
**RICHLAND COUNTY, OHIO**

THIS FORM MUST BE COMPLETED AND FILED WITH ALL CIVIL SUITS –
PLEASE NOTE THE BACK OF THIS SHEET – IF THE SUIT YOU ARE FILING INVOVLES A
CONSUMER ACTION AS IDENTIFIED BY THE OHIO ATTORNEY GENERAL, YOU MUST
CHECK THE APPROPRIATE BOX TO ASSIST THIS OFFICE IN MEETING
THE REQUIREMENTS OF R.C. 1345.09(E)

RICHLAND COUNTY
CLERK OF COURTS
FILED

JUN 22  A II: 45

LINDA H. FRARY
CLERK OF COURTS

Kayla Voller

PLAINTIFF

CASE NO. ⏟21 CV 302⏟

vs.

**CIVIL CASE DESIGNATION SHEET**

NSEM Mansfield 1, LLC, et al.

DEFENDANT

Jury Demand (x) _____ Yes
                      x                No

**TYPE OF ACTION**

| | | | |
|---|---|---|---|
| _____ PT | Professional Tort | _____ OC | All Other Civil |
| _____ PL | Product Liability | _____ " | Replevin |
| x____ T | All Other Torts | _____ " | Appropriation |
| _____ W | Workers' Compensation | _____ " | Injunction |
| _____ F | Foreclosure | _____ " | Forcible Entry |
| _____ AA | Administrative Appeal | _____ " | _____ |
| _____ OH | Habeas Corpus | _____ " | Predatory Lending |

Will this be a case that may within 90 days be redesignated as a "Complex Litigation" Pursuant to
Superintendence Rule 8.01(B)? x_____ Yes _____ No

**REFILING INFORMATION**

Is this a filing of a previous related case? (X) _____ Yes x_____ No
If yes, please complete the following:

Case Number: _____ Assigned Judge: _____

Parties: _____ vs. _____

**SUITS INVOLVING LIKE ISSUES AND SIMILAR PARTIES**

Are there other cases pending that arise from the same incident or related parties?
(X) x_____ Yes _____No

0081100
Ohio Supreme Court Registration #

Attorney Signature or Party filing
Suit

**CONSUMER ACTION DESIGNATION: (please check where applicable)**

_____ Anti-Pyramid Sales Act (R.C. 1333.91 et seq.)
_____ Business Opportunity Purchaser's Protection Act (R.C. 1334.01 et seq.)
_____ Certificate of Motor Vehicle Title Law (R.C. 4501.181 et seq.)
_____ Condominium Sales Act (R.C. 5311.25 et seq.)
_____ Consumer Sales Practices Act (R.C. 1345.01)
_____ Credit Card Recording Act (R.C. 1349.18)
_____ Credit Freeze Act (R.C. 1349.52)
_____ Credit Service Organization Act (R.C. 4712.01 et seq.)
_____ Debt Adjusting Act (R.C. 4710.01 et seq.)
_____ Defective Assistive Devices Act (R. C. 1345.94 et seq.)
_____ Gift Card Act (R.C. 1349.61)
_____ Hearing Aid Returns Act (R.C. 1345.31 et seq.)
_____ Home Sales Solicitation Act (R.C. 1345.21 et seq.)
_____ Layaway Arrangements (R.C. 1317.24 et seq.)
_____ Lease-Purchase Contracts Act (R.C. 1315.01 et seq.)
_____ Lemon Law (R.C. 1345.71 et seq.)
_____ Mortgage Brokers Act (R.C. 1322.01 et seq.)
_____ Motor Vehicle Collision Repair Operators Act (R.C. 4775.02)
_____ Odomoter Rollback and Disclosures Act (R.C. 4549.41 et seq.)
_____ Prepaid Entertainment Contracts Act (R.C. 1345.41 et seq.)
_____ Public Utilities Commission Act (R.C. 4905.72)
_____ Retail Installment Sales Act (R.C. 1317.01 et seq.)
_____ Second Mortgage Act (R.C. 1321.35)
_____ Short Term Loan (R.C. 1321.35)
_____ Telemarketing Act (R.C. 109.87)
_____ Telephone Solicitation Sales Act (R.C. 4719.01 et seq.)
_____ Title Insurance Act (R.C. 3953.35)

RICHLAND COUNTY CLERK OF COURTS
50 PARK AVE EAST
MANSFIELD, OH 44902
(419) 774-5549

**Retain for Proof of Payment**

**2021 CV 0302 N VOLLER, KAYLA VS NSEM MANSFIELD 1 LLC**

| | |
|---|---|
| **Receipt Number** | 409956 |
| **Receipt Date** | 06/23/2021 |
| **Location** | |
| **Received From** | BYRON, EVAN T |
| **Address** | KAUFMAN DROZDOWSKI & GRENDELL LLC |
| **Address 2** | 29525 CHAGRIN BLVD., STE: 250 |
| **Address 3** | |
| **City/ST/Zip** | PEPPER PIKE OH 44122 |
| **On Behalf Of** | VOLLER, KAYLA |

| Payment | Amount | Reference Description |
|---|---|---|
| CHECK | 370.00 | 1414 |

| Applied Type | Amount |
|---|---|
| DEPOSIT | 203.00 |
| COST | 167.00 |
| Balance Due | .00 |
| A/R Balance Due | .00 |

**Comment**

| | |
|---|---|
| **Clerk** | BDALTON |
| **Locality** | |
| **Transaction Date** | 06/23/2021 |
| **Payment Complete** | |