**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE:** ) | **IN CHAPTER 7 PROCEEDINGS** |
| ) | |
| **MATTHEW M. MOTIL** ) | **CASE NO. 22-10571-aih** |
| ) | |
| **Debtor.** ) | **JUDGE ARTHUR I. HARRIS** |
| ) | |
| ————————————— ) | **ADV. PROCEEDING NO.** |
| ) | |
| **DANIELLE HANSEN** ) | **COMPLAINT OF CREDITORS,** |
| **12970 Simsbury Terrace** ) | **DANIELLE HANSEN AND TOBY** |
| **Fort Myers, Florida 33913** ) | **OLIVER TO DETERMINE** |
| ) | **DISCHARGEABILITY OF DEBT** |
| **and** ) | **PURSUANT TO 11 U.S.C. §727** |
| ) | |
| **TOBY OLIVER** ) | |
| **12371 Villagio Way** ) | |
| **Fort Myers, Florida 33912** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **MATTHEW M. MOTIL** ) | |
| 7011 Chadbourne Drive ) | |
| North Olmstead, OH 44070 ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| Notice also to: ) | |
| ) | |
| Thomas W. Coffey ) | |
| Attorney for Debtor ) | |
| 2430 Tremont Avenue, Front ) | |
| Cleveland, OH 44113-4635 ) | |
| ) | |
| Debtor's Attorney ) | |

Plaintiffs, Danielle Hansen ("Hansen") and Toby Oliver ("Oliver") (collectively, "Plaintiffs"), for their Complaint against Debtor and Defendant, Matthew M. Motil ("Defendant", "Debtor", or "Motil"), state as follows:

1

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157 (a) and (b)(1), and b(2)(H), and b(2)(I), and b(2)(J), and 11 U.S.C. § 727. This matter is a core proceeding as defined by 28 U.S.C. § 157.

2.      This is an adversary proceeding in which Plaintiffs are seeking a determination that the Defendant is not entitled to a discharge pursuant to 11 U.S.C. §§ 727(a)(2), 727(a)(3), 727 (a)(4), 727(a)(5), and 727(a)(7) and Bankruptcy Rule 4004.

3.      Hansen is an individual of full age and majority who resides at 12970 Simsbury Terrace, Fort Myers, Florida 33913.

4.      Oliver is an individual of full age and majority who resides at 12371 Villagio Way, Fort Myers, Florida 33912.

5.      Motil is an individual of full age and majority who resides at 7011 Chadbourne Drive, North Olmstead, Ohio 44070.

6.      Motil commenced a bankruptcy proceeding in this Court on March 27, 2022 (the "Petition Date") seeking relief under Chapter 7 of the United States Bankruptcy Code.

7.      NS Equity Cleveland, LLC; NSEM Mansfield 1, LLC; NSEM Mansfield 2, LLC; and North Shore Equity Sales, LLC (collectively, the "Motil Entities") are Ohio limited liability companies with their principal places of business in Cuyahoga County, Ohio, owned and fully controlled by Motil, such that the Motil Entities are simply the alter ego of Motil.

8.      Motil exercised complete control over the Motil Entities such that the Motil Entities had no separate mind, will, or existence of their own.

9.      Motil, individually, and using the Motil Entities, engaged in a scheme and pattern of behavior to defraud investors, including Plaintiffs, including but not limited to inducing Plaintiffs and other creditors, by artifice and trickery to make loans to Motil and the Motil Entities,

2

with Motil and the Motil Entities never having the intention to honor their promises or representations to repay the loans or to record mortgages on property securing the loans. Further, Motil, individually, and using the Motil Entities, would misrepresent to multiple parties that they held first mortgages on property to secure loans, and would knowingly and intentionally not record the mortgages or pay off the loans.

10.     Upon the solicitations and representations of Motil, Hansen and Motil entered into an agreement whereby Hansen lent the sum of $50,000.00 for a term of twelve (12) months to a limited liability company owned or controlled by Motil, namely NS Equity Cleveland, LLC (the "First Hansen Loan"), which loan was to be secured by a first lien upon certain real property located at 3593 West 50th Street, Cleveland, Ohio 44102 (the "West 50th Street Property").

11.     NS Equity was the record title holder of the West 50th Street Property by virtue of a Warranty Deed from SB Prime Properties LLC to NS Equity Cleveland, LLC, an Ohio Limited Liability Company and recorded at Instrument No. 201909130459 with the Cuyahoga County, Ohio Recorder.

12.     The First Hansen Loan was to be documented with a promissory note and mortgage to be prepared by Motil and NS Equity Cleveland, LLC.

13.     Motil prepared forms necessary to initiate an investment by Hansen and copies of an executed promissory note (the "First Hansen Note") and an executed mortgage (the "First Hansen Mortgage") both of which were created by Motil.  Copies of the First Hansen Note and First Hansen Mortgage are attached hereto as Exhibit A and Exhibit B, respectively, and are incorporated by reference herein.

14.     Motil and NS Equity have refused to supply the original First Hansen Note or First Hansen Mortgage to Hansen.

3

15.     Motil and NS Equity Cleveland, LLC agreed to record the First Hansen Mortgage with the Cuyahoga County Recorder and did not do so.

16.     Motil wrongfully converted the proceeds of the First Hansen Loan to NS Equity Cleveland, LLC to his own use and benefit and/or the use and benefit of North Shore Equity Sales, LLC and possibly to other entities controlled by Motil.

17.     Motil and NS Equity Cleveland, LLC did not repay the First Hansen Loan and still owe Hansen the principal amount of $50,000 plus interest on the First Hansen Loan.

18.     On March 31, 2021, Hansen recorded a First Hansen Affidavit of Facts Relating to Title on the West 50th Property as Instrument No. 202103310235 in the Cuyahoga County Records with a copy of the First Hansen Mortgage attached, averring that the First Hansen Mortgage should have been filed with the Cuyahoga County Recorder by Motil and NS Equity Cleveland, LLC, and that the First Hansen Affidavit of Facts Relating to Title was being recorded pursuant to R.C. 5301.252 in order to protect the interest and priority of Hansen. A copy of the First Hansen Affidavit of Facts Relating to Title is attached hereto as Exhibit C and incorporated by reference herein.

19.     Upon information and belief, Motil and NS Equity Cleveland, LLC solicited and entered into similar transactions with other creditors who made loans to Motil and NS Equity Cleveland upon the false promise that the creditors would receive recorded security interests in the West 50th Street Property.

20.     Motil attempted to transfer title to the West 50th Street Property via a General Warranty Deed between his entity, NS Equity Cleveland, LLC, and SFR3-020, LLC, which was recorded as Instrument No. 202104220405 with the Cuyahoga County Fiscal Officer on April 22, 2021, within one year of Motil's Petition Date. A copy of said Warranty Deed is attached hereto as Exhibit D and incorporated by reference herein.

4

21. Upon the solicitations and representations of Motil, Hansen and Motil also entered into an agreement whereby Hansen lent the sum of $85,000.00 for a term of six (6) months to a limited liability company owned or controlled by Motil, namely NSEM Mansfield 1, LLC (the "Second Hansen Loan"), which loan was to be secured by a first lien upon certain real property located at 431 Plymouth Street, Plymouth, Ohio 44864 (the "Plymouth Street Property").

22. NSEM Mansfield 1, LLC was the record title holder of the Plymouth Street Property by virtue of a Warranty Deed from Residential Income Fund 56, LLC, a California Limited Liability Company to NSEM Mansfield 1, LLC and recorded at Instrument No. 20190000003040 with the Richland County, Ohio Recorder.

23. The Second Hansen Loan was to be documented with a promissory note and mortgage, to be prepared by Motil and NSEM Mansfield 1, LLC.

24. Motil prepared forms necessary to initiate an investment by Hansen and copies of an executed promissory note (the "Second Hansen Note") and an executed mortgage (the "Second Hansen Mortgage") both of which were created by Motil. Copies of the Second Hansen Note and Second Hansen Mortgage are attached hereto as Exhibit E and Exhibit F, respectively, and are incorporated by reference herein.

25. Motil and NSEM Mansfield 1, LLC have refused to supply the original Second Hansen Note or Second Hansen Mortgage to Hansen.

26. Motil and NSEM Mansfield 1, LLC agreed to record the Second Hansen Mortgage with the Richland County Recorder and did not do so.

27. Motil wrongfully converted the proceeds of the Second Hansen Loan to NSEM Mansfield 1, LLC to his own use and benefit and/or the use and benefit of North Shore Equity Sales, LLC and possibly to other entities controlled by Motil.

28.    Motil and NSEM Mansfield 1, LLC did not repay the Second Hansen Loan and still owe Hansen the principal amount of $85,000 plus interest on the Second Hansen Loan.

29.    On March 31, 2021, Hansen recorded a Second Hansen Affidavit of Facts Relating to Title on the Plymouth Street Property as Instrument No. 202100004452 in the Richland County Records with a copy of the Second Hansen Mortgage attached, averring that the Second Hansen Mortgage should have been filed with the Richland County Recorder by Motil and NSEM Mansfield 1, LLC, and that the Second Hansen Affidavit of Facts Relating to Title was being recorded pursuant to R.C. 5301.252 in order to protect the interest and priority of Hansen. A copy of the Second Hansen Affidavit of Facts Relating to Title is attached hereto as Exhibit G and incorporated by reference herein.

30.    Upon information and belief, Motil and NSEM Mansfield 1, LLC solicited and entered into similar transactions with other creditors who made loans to Motil and NSEM Mansfield 1, LLC upon the false promise that the creditors would receive recorded security interests in the Plymouth Street Property.

31.    Upon the solicitations and representations of Motil, Oliver and Motil also entered into an agreement whereby Oliver lent the sum of $150,000.00 for a term of six (6) months to a limited liability company owned or controlled by Motil, namely NSEM Mansfield 2, LLC (the "Oliver Loan"), which loan was to be secured by a first lien upon certain real property located at 860-904 Elm Street, Bucyrus, Ohio 44820 (the "Elm Street Property").

32.    NSEM Mansfield 2, LLC was the record title holder of the Elm Street Property by virtue of a Warranty Deed from Residential Income Fund 56, LLC, a California Limited Liability Company to NSEM Mansfield 2, LLC and recorded at Instrument No. 201900206424 with the Crawford County, Ohio Recorder.

33.    The Oliver Loan was to be documented with a promissory note and mortgage, to be prepared by Motil and NSEM Mansfield 2, LLC.

6

34. Motil prepared and supplied forms necessary to initiate an investment by Olver and copies of an executed promissory note (the "Oliver Note") and an executed mortgage (the "Oliver Mortgage") both of which were created by Motil. Copies of the Oliver Note and Oliver Mortgage are attached hereto as Exhibit H and Exhibit I, respectively, and are incorporated by reference herein.

35. Motil and NSEM Mansfield 2, LLC have refused to supply the original Oliver Note or Oliver Mortgage to Oliver.

36. Motil and NSEM Mansfield 2, LLC agreed to record the Oliver Mortgage with the Crawford County Recorder and did not do so.

37. Motil wrongfully converted the proceeds of the Oliver Loan to NSEM Mansfield 2, LLC to his own use and benefit and/or the use and benefit of North Shore Equity Sales, LLC and possibly to other entities controlled by Motil.

38. Motil and NSEM Mansfield 2, LLC did not repay the Oliver Loan and still owe Oliver the principal amount of $150,000 plus interest on the Oliver Loan.

39. On March 31, 2021, Oliver recorded the Oliver Affidavit of Facts Relating to Title on the Elm Street Property as Instrument No. 202100218662 in the Crawford County Records with a copy of the Oliver Mortgage attached, averring that the Oliver Mortgage should have been filed with the Crawford County Recorder by Motil and NSEM Mansfield 2, LLC, and that the Oliver Affidavit of Facts Relating to Title was being recorded pursuant to R.C. 5301.252 in order to protect the interest and priority of Oliver. A copy of the Oliver Affidavit of Facts Relating to Title is attached hereto as Exhibit J and incorporated by reference herein.

40. Upon information and belief, Motil and NSEM Mansfield 2, LLC solicited and entered into similar transactions with other creditors who made loans to Motil and NSEM Mansfield

7

2, LLC upon the false promise that the creditors would receive recorded security interests in the Elm Street Property.

41.     Motil and the Motil Entities promised security interests to numerous other creditors in exchange for loans, which Motil and the Motil Entities did not record.

## COUNT ONE

42.     Plaintiffs incorporate the foregoing paragraphs as though fully restated herein.

43.     11 U.S.C. § 727(a)(2) provides that a debtor shall not be granted a discharge under 11 U.S.C. § 727 if "the debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed – (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition."

44.     Defendant has, with the intent to hinder, delay or defraud Plaintiffs, or an officer of the bankruptcy estate, transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed – property of the Defendant within one year before the date of filing of the petition, or property of the estate after the date of the filing of the petition.

45.     Defendant has wrongfully, in exchange for little, or no value received, transferred his assets or the assets of the Motil Entities, including but not limited to the West 50th Street Property within one year of the Petition Date.

46.     As a result of Defendant's wrongful actions, Defendant should be denied a discharge under 11 U.S.C. § 727(a)(2) and Plaintiffs should receive judgment against the Defendant in an amount to be shown at trial, plus attorney's fees, interest and court costs.

8

## COUNT TWO

47.    Plaintiffs incorporate the foregoing paragraphs as though fully restated herein.

48.    11 U.S.C. § 727(a)(3) provides that a debtor shall not be granted a discharge under 11 U.S.C. § 727 if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

49.    Defendant has concealed, destroyed, mutilated, falsified, or failed to keep or preserve records of the First Hansen Loan, the Second Hansen Loan, and the Oliver Loan, including but not limited to not recording the First Hansen Mortgage, the Second Hansen Mortgage, and the Oliver Mortgage, after agreeing to do so, and failing to maintain or produce originals of such records.

50.    Upon information and belief, Defendant has also concealed, destroyed, mutilated, falsified, or failed to keep or preserve records of other creditors' loans and security interests, including but not limited to not recording such records, after agreeing to do so.

51.    Upon information and belief, Defendant has also mutilated or falsified records of loans and security interests by misappropriating and using a third-party's notary stamp on such records without authorization to do so.

52.    As a result of Defendant's wrongful actions, Defendant should be denied a discharge under 11 U.S.C. § 727(a)(3) and Plaintiffs should receive judgment against the Defendant in an amount to be shown at trial, plus attorney's fees, interest and court costs.

9

## COUNT THREE

53.     Plaintiffs incorporate the foregoing paragraphs as though fully restated herein.

54.     11 U.S.C. § 727(a)(4) provides, in part, that a debtor shall not be granted a discharge under 11 U.S.C. § 727 if "the debtor knowingly and fraudulently, or in connection with the case – (A) made a false oath or account...."

55.     Defendant has made a false oath or account, including but not limited to, upon information and belief, by misappropriating and using a third-party's notary stamp on loan and financial records without authorization to do so, and to the extent, upon information and belief, that he has made false statements in testimony given in his bankruptcy proceeding.

56.     As a result of Defendant's wrongful actions, Defendant should be denied a discharge under 11 U.S.C. § 727(a)(4) and Plaintiffs should receive judgment against the Defendant in an amount to be shown at trial, plus attorney's fees, interest and court costs.

## COUNT FOUR

57.     Plaintiffs incorporate the foregoing paragraphs as though fully restated herein.

58.     11 U.S.C. § 727(a)(5) provides that a debtor shall not be granted a discharge under 11 U.S.C. § 727 if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

59.     Defendant has failed to explain satisfactorily, before determination of denial of discharge, his loss of assets or a deficiency in his assets to meet his liabilities.

60.     As a result of Defendant's wrongful actions, Defendant should be denied a discharge under 11 U.S.C. § 727(a)(5) and Plaintiffs should receive judgment against the Defendant in an amount to be shown at trial, plus attorney's fees, interest and court costs.

## <u>COUNT FIVE</u>

61.     Plaintiffs incorporate the foregoing paragraphs as though fully restated herein.

62.     11 U.S.C. § 727(a)(7) provides that a debtor shall not be granted a discharge under 11 U.S.C. § 727 if "the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider."

63.     As set forth above, Defendant has committed acts specified in 11 U.S.C. § 727(a)(2), (3), (4), and (5) on or within one year before the Petition Date, or during the Debtor's bankruptcy case, or in connection with another case concerning an insider to the Motil Entities.

64.     As a result of Defendant's wrongful actions, Defendant should be denied a discharge under 11 U.S.C. § 727(a)(7) and Plaintiffs should receive judgment against the Defendant in an amount to be shown at trial, plus attorney's fees, interest and court costs.

WHEREFORE, Plaintiffs, Danielle Hansen and Toby Oliver request that this Court determine that Defendant, Matthew M. Motil is not entitled to a discharge under 11 U.S.C. § 727(a)(2), (3), (4), (5) or (7) and Bankruptcy Rule 4004 with respect to the debts owed by Motil to Plaintiffs or to any other debts. Further, Plaintiffs pray that judgment be entered against the Defendant in favor of Plaintiffs in an amount to be shown at trial, plus attorney's fees, court costs, and any other relief this Court deems just and equitable.

Respectfully submitted,

/s/ Matthew R. Duncan
Matthew R. Duncan (#0076420)
Email: mrduncan@bmdllc.com
Brennan, Manna & Diamond, LLC
75 E. Market Street
Akron, OH 44308

11

Phone (330) 253-5060
Fax    (330) 253-1977

*Attorneys for Plaintiffs, Danielle Hansen and Toby Oliver*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Complaint has been sent to:

Via ECF:
Scott R. Belhorn, Trustee, on behalf of Andrew R. Vara at scott.r.belhorn@usdoj.gov
Virgil E. Brown, Chapter 7 Trustee, at virgil@vebtrustee.com, vbrownjr@ecf.axosfs.com
Thomas W. Coffey, Attorney for Debtor, at tcoffey@tcoffeylaw.com

and by regular U.S. Mail to:

Matthew Motil
7011 Chadbourne Drive
North Olmstead, OH 44070

Thomas W. Coffey
Attorney for Debtor
2430 Tremont Avenue, Front
Cleveland, OH 44113-4635

Date of Service:  August 3, 2022            */s/ Matthew R. Duncan*
                                             Matthew R. Duncan (#0076420)
                                             *Attorney for Plaintiffs, Danielle Hansen and Toby Oliver*

4880-7071-2109, v. 1

12

# Promissory Note

On this date of <u>December 9, 2019</u>, in return for valuable consideration received, the undersigned, <u>NS Equity Cleveland, LLC</u> (hereinafter "Borrower") jointly and severally promises to pay <u>Danielle Hansen</u> (hereinafter "Lender"), the sum of <u>$50,000.00</u> together with interest thereon, as stated in the terms of this note.

**Terms of Repayment** - This loan shall be repaid under the following terms:

$50,000.00 to be financed at 14% APR with a 12 month balloon – Monthly payments of $583.33. 1st prorated payment on January 1st, 2020 – Last payment on January 1st, 2021 with a balloon of $50,000.00

**Collateral** - The following property will be used as collateral –

<u>3593 W. 50th Street, Cleveland, Ohio 44102</u>

**Payable On Demand** - The entire unpaid principal and accrued interest thereon, if any, shall become due and payable on demand by the holder of this note 120 days after such demand is made in writing.

**Place of Payment** - all payments due under this note shall be made by ACH or mailed to

_____

or at such other place as the holder of this Note may designate in writing.

**Borrower's Address** - The Borrower shall provide to provide prompt written notice to the Lender of any change of address.

**Prepayment** - This Note may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall first be applied to interest, and then to principal payments in the order of their maturity.

**Default** - In the event of default, the borrower[s] agree to pay all costs and expenses incurred by the Lender, including all reasonable attorney fees (including both hourly and contingent attorney fees as permitted by law) for the collection of this Note upon default, and including reasonable collection charges (including, where consistent with industry practices, a collection charge set as a percentage of the outstanding balance of this Note) should collection be referred to a collection agency.

The note holder understands and agrees that regardless of any other provisions contained herein, this note is a non-recourse note and the holder's sole recourse in the event of a default shall be against the property securing this note and not against the borrower.

**Acceleration of Debt** - In the event that the borrower fails to make any payment due under the terms of this Note, or breach any condition relating to any security, security agreement, note, mortgage or lien granted as collateral security for this Note, seeks relief under the Bankruptcy Code, or suffers an involuntary petition in bankruptcy or receivership not vacated within thirty

EXHIBIT

A

(30) days, the entire balance of this Note and any interest accrued thereon shall be immediately due and payable to the holder of this Note.

**Joint and Several Liability** - All borrowers identified in this Note shall be jointly and severally liable for any debts secured by this Note.

**Modification** - No modification or waiver of any of the terms of this Agreement shall be allowed unless by written agreement signed by both parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

**Transfer of the Note** - The borrowers hereby waive any notice of the transfer of this Note by the Lender or by any subsequent holder of this Note, agree to remain bound by the terms of this Note subsequent to any transfer, and agree that the terms of this Note may be fully enforced by any subsequent holder of this Note.

**Severability of Provisions** - In the event that any portion of this Note is deemed unenforceable, all other provisions of this Note shall remain in full force and effect.

**Choice of Law** - All terms and conditions of this Note shall be interpreted under the laws of the state of Ohio.

Signed Under Penalty of Perjury, this 9th Day of December, 2019,

Matthew  Motil   for NS Equity Cleveland, LLC

_____[Space Above This Line For Recording Date]_____

## MORTGAGE

Made on this ____ day of _____, 2019,

Between

Danielle Hansen

(hereinafter "Mortgagee")

And

NS Equity Cleveland, LLC

(hereinafter "Mortgagor")

**Whereas, MORTGAGOR** by its Note (hereinafter the "NOTE") dated <u>December 9, 2019</u> is indebted to MORTGAGEE in the principal amount of $50,000.00 advanced by MORTGAGEE to MORTGAGOR, together with interest thereon at the rate(s) provided in the NOTE until the INDEBTEDNESS is paid in full in the manner and at the times set forth in the NOTE, with the final payment of principal and interest, if not sooner paid, due and payable at the maturity date set forth in the NOTE, as the same may be amended, and containing other terms and conditions, all of which are specifically incorporated herein by reference; and

**Whereas**, as a condition to extending the aforementioned INDEBTEDNESS to MORTGAGOR, the MORTGAGEE requires, and MORTGAGOR has agreed to secure the payment and performance of its obligations under the Note with this MORTGAGE.

**Now, Therefore**, MORTGAGOR, in consideration of the INDEBTEDNESS and as security for the payment of the same, does hereby mortgage, grant and convey to the MORTGAGEE, its successors and assigns:

All of MORTGAGOR'S right, title and interest in, to and under (i) the premises commonly referred to as **3593 W. 50th Street, Cleveland, Ohio 44102** (i) as more particularly described in Exhibit A attached hereto and made a part hereof, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining and all of the estate, right, title, interest, claim and demand whatsoever of the Mortgagor therein and in the public streets and ways adjacent thereto, either at law or in equity, in possession or expectancy (collectively, the "Property"); and (ii) the structures and buildings, and all additions and improvements thereto, now or hereafter erected upon the Property (including all equipment constituting fixtures thereon) (collectively, the "Improvements", and together with the Property, the "Mortgaged Premises");

**TO HAVE AND TO HOLD**, the Mortgaged Premises unto the Mortgagee, its successors and/or assigns, to its own use forever in accordance with the provisions hereof.

**Provided**, however, that if the MORTGAGOR shall pay to the MORTGAGEE the INDEBTEDNESS and shall fully perform each of the other covenants and agreements hereinafter set forth, then this Mortgage and the estate hereby granted and conveyed shall become void.

**This Mortgage** is executed and delivered subject to the following covenants and agreements:

(1)         MORTGAGOR shall promptly pay when due the INDEBTEDNESS according to the NOTE and this Mortgage.



EXHIBIT

B

tabbies®

(2)     Until the INDEBTEDNESS is fully paid, MORTGAGOR shall: (a) pay and discharge, when the same shall become due and payable, all taxes, assessments, sewer and water rents and all other charges and claims assessed or levied from time to time by any lawful authority upon any part of the MORTGAGED PREMISES and which shall or might have priority in lien or payment to the INDEBTEDNESS secured hereby, such payments to be made directly to the person or entity to which payment is owed; (b) pay and discharge all liens, claims or encumbrances which may be filed against the MORTGAGED PREMISES and which might have priority in lien or payment to the INDEBTEDNESS secured hereby; (c) provide and keep in effect, by paying the necessary premiums and charges thereon, such policies of hazard and liability insurance as MORTGAGEE may from time to time require on the improvements now or hereafter erected on the MORTGAGED PREMISES, with loss payable clauses in favor of MORTGAGOR and MORTGAGEE, as their respective interests may appear; and (d) promptly submit to MORTGAGEE evidence of the date and punctual payment of all of the foregoing charges. In the event of loss, MORTGAGOR shall give prompt notice to the insurance carrier and MORTGAGEE. Unless MORTGAGEE and MORTGAGOR otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the MORTGAGED PREMISES, if the restoration or repair is economically feasible and MORTGAGEE'S security is not lessened. If the restoration or repair is not feasible or if MORTGAGEE'S security would be lessened, the insurance proceeds shall be applied to the INDEBTEDNESS secured by this Mortgage, whether or not then due, with any excess paid to MORTGAGOR. If MORTGAGOR abandons the MORTGAGED PREMISES or does not answer, within 30 days, a notice from MORTGAGEE that the insurance carrier has offered to settle a claim, then MORTGAGEE may collect the insurance proceeds. MORTGAGEE may use the proceeds to repair or restore the MORTGAGED PREMISES or to pay the INDEBTEDNESS secured by this MORTAGEE and MORTGAGOR otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of monthly payments. If the MORTGAGED PREMISES are acquired by the MORTGAGEE through foreclosure, MORTGAGOR'S rights to any insurance policies and proceeds resulting from damage to the MORTGAGED PREMISES prior to the acquisitions shall pass to MORTGAGEE to the extent of the INDEBTEDNESS secured by this Mortgage immediately prior to the acquisition.

(3)     MORTGAGOR shall maintain all improvements subject to this Mortgage in good and substantial repair, MORTGAGEE shall have the right to enter upon the MORTGAGED PREMISES at any reasonable hour for the purpose of inspecting the order, condition and repair of the improvements erected thereon.

(4)     MORTGAGOR covenants and agrees not to create, nor permit to accrue, upon all or any part of the MORTGAGED PREMISES any debt, lien or charge which would be prior in lien or payment to the lien of this Mortgage.

(5)     In the event MORTGAGOR neglects or refuses to perform the covenants and agreements contained in this Mortgage, then MORTGAGEE may, but shall not be required to, do so, and make whatever advances are necessary to protect the value of the MORTGAGED PREMISES and MORTGAGEE'S rights in the MORTGAGED PREMISES, provided that no such payment by the MORTGAGEE shall be considered a waiver or release of any remedy MORTGAGEE may have against MORTGAGOR. MORTGAGEE'S actions may include paying taxes, assessments, maintenance charges, insurance premiums, costs or expenses for the protection of the MORTGAGED PREMISES or the lien of this Mortgage or paying expenses, including attorney's fees, incurred by reason of the MORTGAGOR'S default. Any advances made by MORTGAGEE hereunder shall become additional INDEBTEDNESS of MORTGAGOR secured by this Mortgage. Unless MORTGAGEE agrees in writing to other terms of payment, these advances shall bear interest from the date of disbursement at the rate(s) set forth in the NOTE and shall be payable, with interest, upon notice from MORTGAGEE to MORTGAGOR requesting payment.

(6)     Should the MORTGAGED PREMISES or any part thereof be taken or damaged by reason of any public condemnation proceeding or similar action, the MORTGAGEE shall be entitled to all compensation, awards, and any other payment or relief therefore to the extent of the outstanding INDEBTEDNESS and shall be entitled, at its option, to commence, appear in, and prosecute in its own name, any action or proceeding or to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action, and proceeds are hereby assigned to the

MORTGAGEE, who may, after deducting there from its expenses, including attorney's fees, release any monies received by it or apply the same to any INDEBTEDNESS secured hereby.

(7)     If all or any part of the MORTGAGED PREMISES or any interest in it is sold or transferred, or if a beneficial interest in MORTGAGOR is sold or transferred and MORTGAGOR is not a natural person, without MORTGAGEE'S prior written consent, MORTGAGEE may, at its option, require immediate payment in full of all INDEBTEDNESS secured by this Mortgage. This option shall not be exercised if prohibited by law as of the date of this Mortgage. If MORTGAGEE exercises this option, MORTGAGEE shall give MORTGAGOR written notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is mailed within which MORTGAGOR must pay the entire INDEBTEDNESS. If MORTGAGOR fails to pay these sums prior to the expiration of the 30-day period, MORTGAGEE may invoke any remedy permitted by this Mortgage without further notice or demand on MORTGAGOR.

(8)     The following shall constitute Events of Default under this Mortgage: (a) MORTGAGOR'S failure to pay any installment of principal or interest in accordance with the NOTE; (b) MORTGAGOR'S failure to pay any other sum required to be paid in accordance with the NOTE or this Mortgage, when the same is due and payable; or (c) MORTGAGOR'S failure to perform any covenant or agreement in the NOTE or this Mortgage. If one or more of the foregoing Events of Default occurs, MORTGAGEE may, at its option, after any notice and opportunity to cure required by law and otherwise without notice and opportunity to cure, declare the entire unpaid balance of the INDEBTEDNESS to be immediately due and payable. MORTGAGEE may immediately institute an action of mortgage foreclosure or take any other legal action for the enforcement of this Mortgage, and proceed to final judgment and execution thereon for the INDEBTEDNESS, costs of suit and an attorney's commission for collection of      ten      percent (10.0%) but not less than $2,500.00. Interest at the highest rate provided in the NOTE shall continue to accrue on any judgment obtained by MORTGAGEE, until actual payment is made of the full amount due MORTGAGEE. MORTGAOR hereby waives and releases all benefits that might accrue to MORTGAGOR by virtue of any present or future laws exempting the MORTGAGED PREMISES, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment.

(9)     The covenants in this Mortgage shall bind, and its benefits shall inure to, the MORTGAGOR and the MORTGAGEE and their respective heirs, executors, administrators, successors and assigns, subject to the provisions of Paragraph 8.

(10)    If this Mortgage is executed by more than one person, the undertakings and liability of each shall be joint and several.

(11)    Any notice which is mailed certified mail to MORTGAGOR or to the person(s) who (is)(are) the then owner(s) of the MORTGAGED PREMISES at the address of the MORTGAGED PREMISES or at such other address as MORTGAGOR shall designate to MORTGAGEE in writing, shall be sufficient notice when required under this Mortgage.

(12)    MORTGAGEE'S rights and remedies as provided herein or in the NOTE shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of MORTGAGEE, and may be exercised as often as the occasion therefor shall occur; and the failure to exercise any right or remedy shall in no event be construed as a waiver by MORTGAGEE or release of the same.

(13)    In the event any term or provision of this Mortgage or the application thereof to any person or circumstances shall, to any extent be invalid and unenforceable, the remainder of this Mortgage, or its application other than to that which is held invalid or unenforceable, shall not be affected thereby, and each term and provision hereof shall be valid and enforceable to the fullest extent permitted by law.

This Mortgage shall be governed by the law of Ohio, in which the MORTGAGED PREMISES are located. This provision shall not limit the applicability of federal law to this Mortgage.

Executed this 9th Day of December , 2019 .

For the Mortgagor,

By: _Mandew/MM&M_

NS Equity Cleveland, LLC

ACKNOWLEDGMENT STATE OF __Ohio__ COUNTY OF __Cuyahoga__

On this 9th day of December , 2019 personally appeared before me,

Matthew Motil
_____,

known to me or provided sufficient identification, to be the person(s) whose name(s) are subscribed to the
within instrument and acknowledged that they executed the same for the purposes therein contained.

_Kristen M Kish_ (seal)
Notary Public

My commission expires: 12/16/2023

Document Prepared by Matthew Motil

Legal Description

Situated in the State of <u>Ohio</u> County of <u>Cuyahoga</u> and in the City of <u>Cleveland</u>

Located at:
**3593 W. 50th Street, Cleveland, Ohio 44102**

With the legal description:

Parcel No. -- 016-22-010

EXHIBIT C

**CUYAHOGA COUNTY**
OFFICE OF FISCAL OFFICERS - 10
DEAF 3/31/2021 12:19:02 PM
**202103310235**

## AFFIDAVIT OF FACTS RELATING TO TITLE
## O.R.C. 5301.252

STATE OF FLORIDA )
                        ) SS:
COUNTY OF LEE )

I, Danielle Hansen, after being first duly sworn, state as follows:

1.     I am over the age of eighteen and am competent to testify as to the matters set forth herein.

2.     This Affidavit is made pursuant to O.R.C. 5301.252, and pertains to the property commonly

known as 3593 W. 50ᵗʰ Street, Cleveland, Ohio 44102 (the "Property") legally described as follows:

> Situated in the City of Cleveland, County of Cuyahoga and State of Ohio, and known as being Sublot No. 196 in Joseph Storer's Allotment of part of Original Brooklyn Township Lot No. 46, now in said City.
>
> Said Sublot No. 196 has a frontage of 40 feet on the Easterly side of West 50th Street (formerly Isabella Street), and extends back 128.32 feet deep on the Northerly line, 127.53 feet deep on the Southerly line, and is 40.01 feet wide in the rear, as per plat of said allotment recorded in Volume 12 of Maps, Page 50 of Cuyahoga County Records, be the same more or less, but subject to all legal highways. *And also including part of a vacated alley shown by the recorded plat in Volume 227, Page 95 of Cuyahoga County Records.



EXHIBIT
C

Permanent Parcel No.       016-22-010

Property Address:        3593 West 50th Street
                                    Cleveland, OH 44102

3.      Title to the Property is currently held in the name of NS Equity Cleveland, LLC ("NS Equity").

4.      On approximately December 9th, 2019 I entered into a lending transaction with NS Equity whereby a mortgage upon the real property described above to secure the sum of Fifty Thousand Dollars ($50,000) ("Mortgage") lent was to be filed with the Cuyahoga County Recorder.

5.      A true and accurate copy of the Mortgage supplied by NS Equity is attached hereto as Exhibit "A".

6.      I was issued a Promissory Note for the Mortgage on December 9th, 2019, a true and accurate copy of which is attached hereto as Exhibit "B".

7.      I have not been provided an unrecorded complete original or a copy of a mortgage upon the Property.

8.      I have not been provided an original or copy of a mortgage upon the Property recorded in the Cuyahoga County Records.

9.      I cannot locate a notation of the Mortgage being recorded on the online records of the Cuyahoga County Records.

10.     I am not aware of the location of a mortgage to Mortgagee upon the Property.

11.     I claim an equitable mortgage upon the Property in the name of Danielle Hansen; and

12.     I state that it is necessary to record and claim a mortgage interest on the Property to protect

2

the secured status bargained for in the loan transaction.

Affiant states nothing further.

By: _____

Danielle Hansen

STATE OF FLORIDA, COUNTY OF LEE, ss:

The foregoing instrument was sworn to before me and subscribed in my presence this 25 day of March, 2021, by Danielle Hansen.

Notary Public State of Florida
VICKIE L GOLDEN
My Commission GG 978409
Expires 04/28/2024

Vickie L. Golden
_____
Notary Public

3

_____[Space Above This Line For Recording Date]_____

## MORTGAGE

Made on this ____ day of _____, 2019,

Between

Danielle Hansen

(hereinafter "Mortgagee")

And

NS Equity Cleveland, LLC

(hereinafter "Mortgagor")

**Whereas, MORTGAGOR** by its Note (hereinafter the "NOTE") dated December 9, 2019 is indebted to MORTGAGEE in the principal amount of $50,000.00 advanced by MORTGAGEE to MORTGAGOR, together with interest thereon at the rate(s) provided in the NOTE until the INDEBTEDNESS is paid in full in the manner and at the times set forth in the NOTE, with the final payment of principal and interest, if not sooner paid, due and payable at the maturity date set forth in the NOTE, as the same may be amended, and containing other terms and conditions, all of which are specifically incorporated herein by reference; and

**Whereas,** as a condition to extending the aforementioned INDEBTEDNESS to MORTGAGOR, the MORTGAGEE requires, and MORTGAGOR has agreed to secure the payment and performance of its obligations under the Note with this MORTGAGE.

**Now, Therefore,** MORTGAGOR, in consideration of the INDEBTEDNESS and as security for the payment of the same, does hereby mortgage, grant and convey to the MORTGAGEE, its successors and assigns:

All of MORTGAGOR'S right, title and interest in, to and under (i) the premises commonly referred to as **3593 W. 50th Street, Cleveland, Ohio 44102** (i) as more particularly described in Exhibit A attached hereto and made a part hereof, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining and all of the estate, right, title, interest, claim and demand whatsoever of the Mortgagor therein and in the public streets and ways adjacent thereto, either at law or in equity, in possession or expectancy (collectively, the "Property"); and (ii) the structures and buildings, and all additions and improvements thereto, now or hereafter erected upon the Property (including all equipment constituting fixtures thereon) (collectively, the "Improvements", and together with the Property, the "Mortgaged Premises");

**TO HAVE AND TO HOLD,** the Mortgaged Premises unto the Mortgagee, its successors and/or assigns, to its own use forever in accordance with the provisions hereof.

**Provided,** however, that if the MORTGAGOR shall pay to the MORTGAGEE the INDEBTEDNESS and shall fully perform each of the other covenants and agreements hereinafter set forth, then this Mortgage and the estate hereby granted and conveyed shall become void.

**This Mortgage** is executed and delivered subject to the following covenants and agreements:

(1)     MORTGAGOR shall promptly pay when due the INDEBTEDNESS according to the NOTE and this Mortgage.



(2)      Until the INDEBTEDNESS is fully paid, MORTGAGOR shall: (a) pay and discharge, when the same shall become due and payable, all taxes, assessments, sewer and water rents and all other charges and claims assessed or levied from time to time by any lawful authority upon any part of the MORTGAGED PREMISES and which shall or might have priority in lien or payment to the INDEBTEDNESS secured hereby, such payments to be made directly to the person or entity to which payment is owed; (b) pay and discharge all liens, claims or encumbrances which may be filed against the MORTGAGED PREMISES and which might have priority in lien or payment to the INDEBTEDNESS secured hereby; (c) provide and keep in effect, by paying the necessary premiums and charges thereon, such policies of hazard and liability insurance as MORTGAGEE may from time to time require on the improvements now or hereafter erected on the MORTGAGED PREMISES, with loss payable clauses in favor of MORTGAGOR and MORTGAGEE, as their respective interests may appear; and (d) promptly submit to MORTGAGEE evidence of the date and punctual payment of all of the foregoing charges. In the event of loss, MORTGAGOR shall give prompt notice to the insurance carrier and MORTGAGEE. Unless MORTGAGEE and MORTGAGOR otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the MORTGAGED PREMISES, if the restoration or repair is economically feasible and MORTGAGEE'S security is not lessened. If the restoration or repair is not feasible or if MORTGAGEE'S security would be lessened, the insurance proceeds shall be applied to the INDEBTEDNESS secured by this Mortgage, whether or not then due, with any excess paid to MORTGAGOR. If MORTGAGOR abandons the MORTGAGED PREMISES or does not answer, within 30 days, a notice from MORTGAGEE that the insurance carrier has offered to settle a claim, then MORTGAGEE may collect the insurance proceeds. MORTGAGEE may use the proceeds to repair or restore the MORTGAGED PREMISES or to pay the INDEBTEDNESS secured by this MORTGAGEE and MORTGAGOR otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of monthly payments. If the MORTGAGED PREMISES are acquired by the MORTGAGEE through foreclosure, MORTGAGOR'S rights to any insurance policies and proceeds resulting from damage to the MORTGAGED PREMISES prior to the acquisitions shall pass to MORTGAGEE to the extent of the INDEBTEDNESS secured by this Mortgage immediately prior to the acquisition.

(3)      MORTGAGOR shall maintain all improvements subject to this Mortgage in good and substantial repair, MORTGAGEE shall have the right to enter upon the MORTGAGED PREMISES at any reasonable hour for the purpose of inspecting the order, condition and repair of the improvements erected thereon.

(4)      MORTGAGOR covenants and agrees not to create, nor permit to accrue, upon all or any part of the MORTGAGED PREMISES any debt, lien or charge which would be prior in lien or payment to the lien of this Mortgage.

(5)      In the event MORTGAGOR neglects or refuses to perform the covenants and agreements contained in this Mortgage, then MORTGAGEE may, but shall not be required to, do so, and make whatever advances are necessary to protect the value of the MORTGAGED PREMISES and MORTGAGEE'S rights in the MORTGAGED PREMISES, provided that no such payment by the MORTGAGEE shall be considered a waiver or release of any remedy MORTGAGEE may have against MORTGAGOR. MORTGAGEE'S actions may include paying taxes, assessments, maintenance charges, insurance premiums, costs or expenses for the protection of the MORTGAGED PREMISES or the lien of this Mortgage or paying expenses, including attorney's fees, incurred by reason of the MORTGAGOR'S default. Any advances made by MORTGAGEE hereunder shall become additional INDEBTEDNESS of MORTGAGOR secured by this Mortgage. Unless MORTGAGEE agrees in writing to other terms of payment, these advances shall bear interest from the date of disbursement at the rate(s) set forth in the NOTE and shall be payable, with interest, upon notice from MORTGAGEE to MORTGAGOR requesting payment.

(6)      Should the MORTGAGED PREMISES or any part thereof be taken or damaged by reason of any public condemnation proceeding or similar action, the MORTGAGEE shall be entitled to all compensation, awards, and any other payment or relief therefore to the extent of the outstanding INDEBTEDNESS and shall be entitled, at its option, to commence, appear in, and prosecute in its own name, any action or proceeding or to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action, and proceeds are hereby assigned to the

MORTGAGEE, who may, after deducting there from its expenses, including attorney's fees, release any monies received by it or apply the same to any INDEBTEDNESS secured hereby.

(7) If all or any part of the MORTGAGED PREMISES or any interest in it is sold or transferred, or if a beneficial interest in MORTGAGOR is sold or transferred and MORTGAGOR is not a natural person, without MORTGAGEE'S prior written consent, MORTGAGEE may, at its option, require immediate payment in full of all INDEBTEDNESS secured by this Mortgage. This option shall not be exercised if prohibited by law as of the date of this Mortgage. If MORTGAGEE exercises this option, MORTGAGEE shall give MORTGAGOR written notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is mailed within which MORTGAGOR must pay the entire INDEBTEDNESS. If MORTGAGOR fails to pay these sums prior to the expiration of the 30-day period, MORTGAGEE may invoke any remedy permitted by this Mortgage without further notice or demand on MORTGAGOR.

(8) The following shall constitute Events of Default under this Mortgage: (a) MORTGAGOR'S failure to pay any installment of principal or interest in accordance with the NOTE; (b) MORTGAGOR'S failure to pay any other sum required to be paid in accordance with the NOTE or this Mortgage, when the same is due and payable; or (c) MORTGAGOR'S failure to perform any covenant or agreement in the NOTE or this Mortgage. If one or more of the foregoing Events of Default occurs, MORTGAGEE may, at its option, after any notice and opportunity to cure required by law and otherwise without notice and opportunity to cure, declare the entire unpaid balance of the INDEBTEDNESS to be immediately due and payable. MORTGAGEE may immediately institute an action of mortgage foreclosure or take any other legal action for the enforcement of this Mortgage, and proceed to final judgment and execution thereon for the INDEBTEDNESS, costs of suit and an attorney's commission for collection of ten percent (10.0%) but not less than $2,500.00. Interest at the highest rate provided in the NOTE shall continue to accrue on any judgment obtained by MORTGAGEE, until actual payment is made of the full amount due MORTGAGEE. MORTGAOR hereby waives and releases all benefits that might accrue to MORTGAGOR by virtue of any present or future laws exempting the MORTGAGED PREMISES, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment.

(9) The covenants in this Mortgage shall bind, and its benefits shall inure to, the MORTGAGOR and the MORTGAGEE and their respective heirs, executors, administrators, successors and assigns, subject to the provisions of Paragraph 8.

(10) If this Mortgage is executed by more than one person, the undertakings and liability of each shall be joint and several.

(11) Any notice which is mailed certified mail to MORTGAGOR or to the person(s) who (is)(are) the then owner(s) of the MORTGAGED PREMISES at the address of the MORTGAGED PREMISES or at such other address as MORTGAGOR shall designate to MORTGAGEE in writing, shall be sufficient notice when required under this Mortgage.

(12) MORTGAGEE'S rights and remedies as provided herein or in the NOTE shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of MORTGAGEE, and may be exercised as often as the occasion therefor shall occur; and the failure to exercise any right or remedy shall in no event be construed as a waiver by MORTGAGEE or release of the same.

(13) In the event any term or provision of this Mortgage or the application thereof to any person or circumstances shall, to any extent be invalid and unenforceable, the remainder of this Mortgage, or its application other than to that which is held invalid or unenforceable, shall not be affected thereby, and each term and provision hereof shall be valid and enforceable to the fullest extent permitted by law.

This Mortgage shall be governed by the law of Ohio, in which the MORTGAGED PREMISES are located. This provision shall not limit the applicability of federal law to this Mortgage.

Executed this _9th___ Day of _December___, _2019___.

For the Mortgagor,

_[signature]_

By: ___NS Equity Cleveland, LLC___

ACKNOWLEDGMENT STATE OF __Ohio_____ COUNTY OF __Cuyahoga_____

On this _9th__ day of _December_____, _2019_____ personally appeared before me,

___Matthew Motil_____,

known to me or provided sufficient identification, to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

_Kristen M Kish_____ (seal)
Notary Public

My commission expires: _12|16|2023_

**Document Prepared by Matthew Motil**

**Exhibit A**
Legal Description

Situated in the State of <u>Ohio</u> County of <u>Cuyahoga</u> and in the City of <u>Cleveland</u>

Located at:
**3593 W. 50th Street, Cleveland, Ohio 44102**

With the legal description:

Parcel No. – 016-22-010

# Promissory Note

On this date of <u>December 9, 2019</u>, in return for valuable consideration received, the undersigned, <u>NS Equity Cleveland, LLC</u> (hereinafter "Borrower") jointly and severally promises to pay <u>Danielle Hansen</u> (hereinafter "Lender"), the sum of <u>$50,000.00</u> together with interest thereon, as stated in the terms of this note.

**Terms of Repayment** - This loan shall be repaid under the following terms:

$50,000.00 to be financed at 14% APR with a 12 month balloon – Monthly payments of $583.33. 1st prorated payment on January 1st, 2020 – Last payment on January 1st, 2021 with a balloon of $50,000.00

**Collateral** - The following property will be used as collateral –

<u>3593 W. 50th Street, Cleveland, Ohio 44102</u>

**Payable On Demand** - The entire unpaid principal and accrued interest thereon, if any, shall become due and payable on demand by the holder of this note 120 days after such demand is made in writing.

**Place of Payment** - all payments due under this note shall be made by ACH or mailed to

_____

or at such other place as the holder of this Note may designate in writing.

**Borrower's Address** - The Borrower shall provide to provide prompt written notice to the Lender of any change of address.

**Prepayment** - This Note may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall first be applied to interest, and then to principal payments in the order of their maturity.

**Default** - In the event of default, the borrower[s] agree to pay all costs and expenses incurred by the Lender, including all reasonable attorney fees (including both hourly and contingent attorney fees as permitted by law) for the collection of this Note upon default, and including reasonable collection charges (including, where consistent with industry practices, a collection charge set as a percentage of the outstanding balance of this Note) should collection be referred to a collection agency.

The note holder understands and agrees that regardless of any other provisions contained herein, this note is a non-recourse note and the holder's sole recourse in the event of a default shall be against the property securing this note and not against the borrower.

**Acceleration of Debt** - In the event that the borrower fails to make any payment due under the terms of this Note, or breach any condition relating to any security, security agreement, note, mortgage or lien granted as collateral security for this Note, seeks relief under the Bankruptcy Code, or suffers an involuntary petition in bankruptcy or receivership not vacated within thirty

EXHIBIT

B

(30) days, the entire balance of this Note and any interest accrued thereon shall be immediately due and payable to the holder of this Note.

**Joint and Several Liability** - All borrowers identified in this Note shall be jointly and severally liable for any debts secured by this Note.

**Modification** - No modification or waiver of any of the terms of this Agreement shall be allowed unless by written agreement signed by both parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

**Transfer of the Note** - The borrowers hereby waive any notice of the transfer of this Note by the Lender or by any subsequent holder of this Note, agree to remain bound by the terms of this Note subsequent to any transfer, and agree that the terms of this Note may be fully enforced by any subsequent holder of this Note.

**Severability of Provisions** - In the event that any portion of this Note is deemed unenforceable, all other provisions of this Note shall remain in full force and effect.

**Choice of Law** - All terms and conditions of this Note shall be interpreted under the laws of the state of Ohio.

Signed Under Penalty of Perjury, this 9th Day of December, 2019,

_Matthew Motil_   for NS Equity Cleveland, LLC

CUYAHOGA COUNTY FISCAL OFFICER

016-22-010   *Pluto Chambro*  4/22/2021 E
                        F-04222021-16

SFR3-020 LLC       Tax Dist. 3100
Warranty Deed       LUC: 5100  EX:
Sale Amt:  $ 32,000.00   LAND: 7,800
Conv. Fee: $ 128.00    BLDG: 11,600
Bridge Title        TOTAL: 19,400

*1022226*

CUYAHOGA COUNTY
OFFICE OF FISCAL OFFICERS - 2
DEED 4/22/2021 11:28:00 AM
202104220405

## GENERAL WARRANTY DEED

File No.: 78032-OH

THIS DEED is made this 8 day of _April_, 2021 between **NS Equity Cleveland, LLC** ("Grantor") in favor of **SFR3-020 LLC** ("Grantee").

Grantor, for valuable consideration paid, grants, with general warranty covenants, unto Grantee, and whose tax mailing address is, _500 Westove Dr #14104 Sanford NC 27330_ the following real property (the "**Property**"):

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio, and known as being Sublot No. 196 in Joseph Storer's Allotment of part of Original Brooklyn Township Lot No. 46, now in said City.

Said Sublot No. 196 has a frontage of 40 feet on the Easterly side of West 50th Street (formerly Isabella Street), and extends back 128.32 feet deep on the Northerly line, 127.53 feet deep on the Southerly line, and is 40.01 feet wide in the rear, as per plat of said allotment recorded in Volume 12 of Maps, Page 50 of Cuyahoga County Records, be the same more or less, but subject to all legal highways.

*And also including part of a vacated alley shown by the recorded plat in Volume 227, Page 95 of Cuyahoga County Records.

Parcel Number: 016-22-010
Prior Instrument Number: 201909130459
Property Address: 3593 West 50 Street, Cleveland, OH 44102

Exceptions to the general warranty covenants: (a) such encroachments and recorded restrictions, easements and conditions, including without limitations subsurface rights, which do not materially adversely affect the Property's use or value; (b) zoning ordinances, if any; (c) taxes and assessments, whether general or special, which are a lien on the Property but are not yet payable; (d) all coal, oil, gas, and other mineral rights and interests previously transferred or reserved of record.



EXHIBIT

D

**IN WITNESS WHEREOF,** Grantor have caused these presents to be executed the day and year first above written.

NS Equity Cleveland, LLC
By: Matthew Motil
Its: Managing Member


STATE OF _Ohio_ )
COUNTY OF _Cuyahoga_ ) SS.
BE IT REMEMBERED, that on this _8_ day of _April_ 2021, before me, the subscriber, a Notary Public in and for said state, personally came **NS Equity Cleveland, LLC by Matthew Motil, its Managing Member,** and acknowledged the signing thereof to be their voluntary act and deed. IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my official seal on the day and year last aforesaid.



Notary Public
Print Name: _Brian J. Gaughen_


This instrument prepared by Akhil M. Patel, Esq., 6055 Tain Drive, Suite 200, Dublin, Ohio 43017

# Promissory Note

On this date of <u>June 26, 2020</u>, in return for valuable consideration received, the undersigned, <u>NSEM Mansfield 1, LLC</u> (hereinafter "Borrower") jointly and severally promises to pay <u>Danielle Hansen (hereinafter "Lender"),</u> the sum of $85,000.00 together with interest thereon, as stated in the terms of this note.

**Terms of Repayment** - This loan shall be repaid under the following terms:

$85,000.00 to be financed at 12% simple interest payed in arrears – Monthly payments of $850.00. 1st prorated payment on August 1st, 2020, last payment on February 1, 2021 with a balloon of $85,000.00

**Collateral** - The following property will be used as collateral –

<u>431 Plymouth Street, Plymouth, Ohio 44865</u>

**Payable On Demand** - The entire unpaid principal and accrued interest thereon, if any, shall become due and payable on demand by the holder of this note 30 days after such demand is made in writing.

**Place of Payment** - all payments due under this note shall be made by ACH or mailed to

_____
 or at such other place as the holder of this Note may designate in writing.

**Borrower's Address** - The Borrower shall provide to provide prompt written notice to the Lender of any change of address.

**Prepayment** - This Note may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall first be applied to interest, and then to principal payments in the order of their maturity.

**Default** - In the event of default, the borrower[s] agree to pay all costs and expenses incurred by the Lender, including all reasonable attorney fees (including both hourly and contingent attorney fees as permitted by law) for the collection of this Note upon default, and including reasonable collection charges (including, where consistent with industry practices, a collection charge set as a percentage of the outstanding balance of this Note) should collection be referred to a collection agency.

The note holder understands and agrees that regardless of any other provisions contained herein, this note is a non-recourse note and the holder's sole recourse in the event of a default shall be against the property securing this note and not against the borrower.

**Acceleration of Debt** - In the event that the borrower fails to make any payment due under the terms of this Note, or breach any condition relating to any security, security agreement, note, mortgage or lien granted as collateral security for this Note, seeks relief under the Bankruptcy Code, or suffers an involuntary petition in bankruptcy or receivership not vacated within thirty

EXHIBIT

E

tabbies®

(30) days, the entire balance of this Note and any interest accrued thereon shall be immediately due and payable to the holder of this Note.

**Joint and Several Liability** - All borrowers identified in this Note shall be jointly and severally liable for any debts secured by this Note.

**Modification** - No modification or waiver of any of the terms of this Agreement shall be allowed unless by written agreement signed by both parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

**Transfer of the Note** - The borrowers hereby waive any notice of the transfer of this Note by the Lender or by any subsequent holder of this Note, agree to remain bound by the terms of this Note subsequent to any transfer, and agree that the terms of this Note may be fully enforced by any subsequent holder of this Note.

**Severability of Provisions** - In the event that any portion of this Note is deemed unenforceable, all other provisions of this Note shall remain in full force and effect.

**Choice of Law** - All terms and conditions of this Note shall be interpreted under the laws of the state of Ohio.

Signed Under Penalty of Perjury, this 26<u>th</u> Day of June, 2020,


Matthew Motil for
NSEM Mansfield 1, LLC

_____[Space Above This Line For Recording Date]_____

## MORTGAGE

Made on this 25<u>th</u> day of JU<u>NE</u>, 2020,

Between

DANIELLE HANSEN

(hereinafter "Mortgagee")

And

NSEM MANSFIELD 1, LLC

(hereinafter "Mortgagor")

**Whereas, MORTGAGOR** by its Note (hereinafter the "NOTE") dated <u>JUNE 25, 2020</u> is indebted to MORTGAGEE in the principal amount of $85,000.00 advanced by MORTGAGEE to MORTGAGOR, together with interest thereon at the rate(s) provided in the NOTE until the INDEBTEDNESS is paid in full in the manner and at the times set forth in the NOTE, with the final payment of principal and interest, if not sooner paid, due and payable at the maturity date set forth in the NOTE, as the same may be amended, and containing other terms and conditions, all of which are specifically incorporated herein by reference; and

**Whereas,** as a condition to extending the aforementioned INDEBTEDNESS to MORTGAGOR, the MORTGAGEE requires, and MORTGAGOR has agreed to secure the payment and performance of its obligations under the Note with this MORTGAGE.

**Now, Therefore,** MORTGAGOR, in consideration of the INDEBTEDNESS and as security for the payment of the same, does hereby mortgage, grant and convey to the MORTGAGEE, its successors and assigns:

All of MORTGAGOR'S right, title and interest in, to and under (i) the premises commonly referred to as **860-904 ELM STREET, BUCYRUS, OHIO 44820** (i) as more particularly described in <u>Exhibit A</u> attached hereto and made a part hereof, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining and all of the estate, right, title, interest, claim and demand whatsoever of the Mortgagor therein and in the public streets and ways adjacent thereto, either at law or in equity, in possession or expectancy (collectively, the "Property"); and (ii) the structures and buildings, and all additions and improvements thereto, now or hereafter erected upon the Property (including all equipment constituting fixtures thereon) (collectively, the "Improvements", and together with the Property, the "Mortgaged Premises");

**TO HAVE AND TO HOLD**, the Mortgaged Premises unto the Mortgagee, its successors and/or assigns, to its own use forever in accordance with the provisions hereof.

**Provided,** however, that if the MORTGAGOR shall pay to the MORTGAGEE the INDEBTEDNESS and shall fully perform each of the other covenants and agreements hereinafter set forth, then this Mortgage and the estate hereby granted and conveyed shall become void.

**This Mortgage** is executed and delivered subject to the following covenants and agreements:

(1)        MORTGAGOR shall promptly pay when due the INDEBTEDNESS according to the NOTE and this Mortgage.



EXHIBIT

F

tabbies®

(2)        Until the INDEBTEDNESS is fully paid, MORTGAGOR shall: (a) pay and discharge, when the same shall become due and payable, all taxes, assessments, sewer and water rents and all other charges and claims assessed or levied from time to time by any lawful authority upon any part of the MORTGAGED PREMISES and which shall or might have priority in lien or payment to the INDEBTEDNESS secured hereby, such payments to be made directly to the person or entity to which payment is owed; (b) pay and discharge all liens, claims or encumbrances which may be filed against the MORTGAGED PREMISES and which might have priority in lien or payment to the INDEBTEDNESS secured hereby; (c) provide and keep in effect, by paying the necessary premiums and charges thereon, such policies of hazard and liability insurance as MORTGAGEE may from time to time require on the improvements now or hereafter erected on the MORTGAGED PREMISES, with loss payable clauses in favor of MORTGAGOR and MORTGAGEE, as their respective interests may appear; and (d) promptly submit to MORTGAGEE evidence of the date and punctual payment of all of the foregoing charges. In the event of loss, MORTGAGOR shall give prompt notice to the insurance carrier and MORTGAGEE. Unless MORTGAGEE and MORTGAGOR otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the MORTGAGED PREMISES, if the restoration or repair is economically feasible and MORTGAGEE'S security is not lessened. If the restoration or repair is not feasible or if MORTGAGEE'S security would be lessened, the insurance proceeds shall be applied to the INDEBTEDNESS secured by this Mortgage, whether or not then due, with any excess paid to MORTGAGOR. If MORTGAGOR abandons the MORTGAGED PREMISES or does not answer, within 30 days, a notice from MORTGAGEE that the insurance carrier has offered to settle a claim, then MORTGAGEE may collect the insurance proceeds. MORTGAGEE may use the proceeds to repair or restore the MORTGAGED PREMISES or to pay the INDEBTEDNESS secured by this MORTAGEE and MORTGAGOR otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of monthly payments. If the MORTGAGED PREMISES are acquired by the MORTGAGEE through foreclosure, MORTGAGOR'S rights to any insurance policies and proceeds resulting from damage to the MORTGAGED PREMISES prior to the acquisitions shall pass to MORTGAGEE to the extent of the INDEBTEDNESS secured by this Mortgage immediately prior to the acquisition.

(3)        MORTGAGOR shall maintain all improvements subject to this Mortgage in good and substantial repair, MORTGAGEE shall have the right to enter upon the MORTGAGED PREMISES at any reasonable hour for the purpose of inspecting the order, condition and repair of the improvements erected thereon.

(4)        MORTGAGOR covenants and agrees not to create, nor permit to accrue, upon all or any part of the MORTGAGED PREMISES any debt, lien or charge which would be prior in lien or payment to the lien of this Mortgage.

(5)        In the event MORTGAGOR neglects or refuses to perform the covenants and agreements contained in this Mortgage, then MORTGAGEE may, but shall not be required to, do so, and make whatever advances are necessary to protect the value of the MORTGAGED PREMISES and MORTGAGEE'S rights in the MORTGAGED PREMISES, provided that no such payment by the MORTGAGEE shall be considered a waiver or release of any remedy MORTGAGEE may have against MORTGAGOR. MORTGAGEE'S actions may include paying taxes, assessments, maintenance charges, insurance premiums, costs or expenses for the protection of the MORTGAGED PREMISES or the lien of this Mortgage or paying expenses, including attorney's fees, incurred by reason of the MORTGAGOR'S default. Any advances made by MORTGAGEE hereunder shall become additional INDEBTEDNESS of MORTGAGOR secured by this Mortgage. Unless MORTGAGEE agrees in writing to other terms of payment, these advances shall bear interest from the date of disbursement at the rate(s) set forth in the NOTE and shall be payable, with interest, upon notice from MORTGAGEE to MORTGAGOR requesting payment.

(6)        Should the MORTGAGED PREMISES or any part thereof be taken or damaged by reason of any public condemnation proceeding or similar action, the MORTGAGEE shall be entitled to all compensation, awards, and any other payment or relief therefore to the extent of the outstanding INDEBTEDNESS and shall be entitled, at its option, to commence, appear in, and prosecute in its own name, any action or proceeding or to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action, and proceeds are hereby assigned to the

MORTGAGEE, who may, after deducting there from its expenses, including attorney's fees, release any monies received by it or apply the same to any INDEBTEDNESS secured hereby.

(7)    If all or any part of the MORTGAGED PREMISES or any interest in it is sold or transferred, or if a beneficial interest in MORTGAGOR is sold or transferred and MORTGAGOR is not a natural person, without MORTGAGEE'S prior written consent, MORTGAGEE may, at its option, require immediate payment in full of all INDEBTEDNESS secured by this Mortgage. This option shall not be exercised if prohibited by law as of the date of this Mortgage. If MORTGAGEE exercises this option, MORTGAGEE shall give MORTGAGOR written notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is mailed within which MORTGAGOR must pay the entire INDEBTEDNESS. If MORTGAGOR fails to pay these sums prior to the expiration of the 30-day period, MORTGAGEE may invoke any remedy permitted by this Mortgage without further notice or demand on MORTGAGOR.

(8)    The following shall constitute Events of Default under this Mortgage: (a) MORTGAGOR'S failure to pay any installment of principal or interest in accordance with the NOTE; (b) MORTGAGOR'S failure to pay any other sum required to be paid in accordance with the NOTE or this Mortgage, when the same is due and payable; or (c) MORTGAGOR'S failure to perform any covenant or agreement in the NOTE or this Mortgage. If one or more of the foregoing Events of Default occurs, MORTGAGEE may, at its option, after any notice and opportunity to cure required by law and otherwise without notice and opportunity to cure, declare the entire unpaid balance of the INDEBTEDNESS to be immediately due and payable. MORTGAGEE may immediately institute an action of mortgage foreclosure or take any other legal action for the enforcement of this Mortgage, and proceed to final judgment and execution thereon for the INDEBTEDNESS, costs of suit and an attorney's commission for collection of     ten     percent (10.0%) but not less than $2,500.00. Interest at the highest rate provided in the NOTE shall continue to accrue on any judgment obtained by MORTGAGEE, until actual payment is made of the full amount due MORTGAGEE. MORTGAOR hereby waives and releases all benefits that might accrue to MORTGAGOR by virtue of any present or future laws exempting the MORTGAGED PREMISES, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment.

(9)    The covenants in this Mortgage shall bind, and its benefits shall inure to, the MORTGAGOR and the MORTGAGEE and their respective heirs, executors, administrators, successors and assigns, subject to the provisions of Paragraph 8.

(10)    If this Mortgage is executed by more than one person, the undertakings and liability of each shall be joint and several.

(11)    Any notice which is mailed certified mail to MORTGAGOR or to the person(s) who (is)(are) the then owner(s) of the MORTGAGED PREMISES at the address of the MORTGAGED PREMISES or at such other address as MORTGAGOR shall designate to MORTGAGEE in writing, shall be sufficient notice when required under this Mortgage.

(12)    MORTGAGEE'S rights and remedies as provided herein or in the NOTE shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of MORTGAGEE, and may be exercised as often as the occasion therefor shall occur; and the failure to exercise any right or remedy shall in no event be construed as a waiver by MORTGAGEE or release of the same.

(13)    In the event any term or provision of this Mortgage or the application thereof to any person or circumstances shall, to any extent be invalid and unenforceable, the remainder of this Mortgage, or its application other than to that which is held invalid or unenforceable, shall not be affected thereby, and each term and provision hereof shall be valid and enforceable to the fullest extent permitted by law.

This Mortgage shall be governed by the law of Ohio, in which the MORTGAGED PREMISES are located. This provision shall not limit the applicability of federal law to this Mortgage.

Executed this __26th__ Day of __JUNE_____, __2020__ .

For the Mortgagor,

_Matthew Motil (signature)_

By: Matthew Motil

ACKNOWLEDGMENT STATE OF __Ohio_____ COUNTY OF __Cuyahoga_____

On this __26th__ day of __JUNE_____, __2020_____ personally appeared before me,

__Matthew Motil_____ ,

known to me or provided sufficient identification, to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

__Kristen M Kish_____ (seal)
Notary Public

My commission expires: __12|16|2023__

**Document Prepared by Matthew Motil**

KRISTEN M. KISH
NOTARY PUBLIC • STATE OF OHIO
MY COMMISSION EXPIRES DECEMBER 16, 2023
RECORDED IN CUYAHOGA COUNTY

**Exhibit A**
Legal Description

Situated in the State of <u>Ohio</u> County of <u>RICHLAND</u> and in the City of <u>PLYMOUTH</u>

Located at:
**431 PLYMOUTH STREET, PLYMOUTH, OHIO 44865**

With the legal description:

Parcel No. – 035-56-161-01-001



BK: 2878 PG: 26

202100004452
Filed for Record in
RICHLAND
SARAH M DAVIS, RECORDER
03-31-2021 At 11:06 am.
AFFLOSTMORT     98.00
OR Book   2878 Page   26 -  35
202100004452
BRENNAN MANNA DIAMOND LLC
200 PUBLIC SQUARE
SUITE 3270
CLEVELAND OH 44114

## AFFIDAVIT OF FACTS RELATING TO TITLE
## O.R.C. 5301.252

STATE OF FLORIDA       )
                       ) SS:
COUNTY OF LEE          )

I, Danielle Hansen, after being first duly sworn, state as follows:

1.     I am over the age of eighteen and am competent to testify as to the matters set forth herein.

2.     This Affidavit is made pursuant to O.R.C. 5301.252, and pertains to the property commonly

known as 431 Plymouth Street, Plymouth, Ohio 44865 (the "Property") legally described as follows:

SITUATED IN THE VILLAGE OF PLYMOUTH, COUNTY OF RICHLAND AND
'STATE OF OHIO: BEING IN OUTLOT NUMBER THIRTY-FOUR (#34) IN SAID
VILLAGE, MORE FULLY BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT AN IRON BAR MONUMENT SET ON THE EASTERLY
RIGHT-OF-WAY LINE OF PLYMOUTH STREET, SAID BAR BEING 307.38
FEET SOUTH 01 DEGREES 47 MINUTES 45 SECONDS EAST FROM THE
NORTH WEST CORNER OF SAID OUTLOT NO. 34- IN THE SAID VILLAGE;
THENCE NORTH 89 DEGREES 08 MINUTES 15 SECONDS EAST, A
DISTANCE OF 210.28 FEET TO AN IRON BAR MONUMENT;

THENCE SOUTH 01 DEGREES 47 MINUTES 45 SECONDS EAST, A
DISTANCE OF 208.68 FEET TO AN IRON BAR MONUMENT;

THENCE NORTH 87 DEGREES 12 MINUTES 30 SECONDS WEST, A
DISTANCE OF 210.93 FEET TO AN IRON BAR MONUMENT SET ON THE
EASTERLY RIGHT-OF-WAY LINE OF PLYMOUTH STREET; THENCE
NORTH 01 DEGREES 47 MINUTES 45 SECONDS WEST ALONG SAID



**EXHIBIT**

**G**


EASTERLY RIGHT-OF-WAY OF PLYMOUTH STREET, A DISTANCE OF 195.24 FEET TO THE PLACE OF BEGINNING.

THE ABOVE BOUNDS ENCLOSE AN AREA OF .9748 OF AN ACRE OF LAND, SUBJECT HOWEVER TO ALL LEGAL EASEMENTS OF RECORD.

PARCEL NO; 035-56-161-01-001

431 PLYMOUTH STREET, PLYMOUTH, OHIO

3. Title to the Property is currently held in the name of NSEM Mansfield 1, LLC ("NSEM").

4. On approximately June 25th, 2020 I entered into a lending transaction with NSEM whereby a mortgage upon the real property described above to secure the sum of Eighty-Five Thousand Dollars ($85,000) ("Mortgage") lent was to be filed with the Richland County Recorder.

5. A true and accurate copy of the Mortgage supplied by NSEM is attached hereto as Exhibit "A".

6. I was issued a Promissory Note for the Mortgage on June 26th, 2020, a true and accurate copy of which is attached hereto as Exhibit "B".

7. I have not been provided an unrecorded complete original or a copy of a mortgage upon the Property.

8. I have not been provided an original or copy of a mortgage upon the Property recorded in the Richland County Records.

9. I cannot locate a notation of the Mortgage being recorded on the online records of the Richland County Records.

10. I am not aware of the location of a mortgage to Mortgagee upon the Property.

11. I claim an equitable mortgage upon the Property in the name of Danielle Hansen; and

2

12. I state that it is necessary to record and claim a mortgage interest on the Property to protect the secured status bargained for in the loan transaction.

    Affiant states nothing further.

By: _____
          Danielle Hansen

STATE OF FLORIDA, COUNTY OF LEE, ss:

    The foregoing instrument was sworn to before me and subscribed in my presence this 25 day of March, 2021, by Danielle Hansen.



Notary Public State of Florida
VICKIE L GOLDEN
My Commission GG 978409
Expires 04/28/2024

_____
Notary Public

3



BK: 2878 PG: 29

_____ [Space Above This Line For Recording Date] _____

## MORTGAGE

Made on this 25th day of JUNE , 2020,

Between

**DANIELLE HANSEN**

(hereinafter "Mortgagee")

And

**NSEM MANSFIELD I, LLC**

(hereinafter "Mortgagor")

Whereas, **MORTGAGOR** by its Note (hereinafter the "NOTE") dated JUNE 25, 2020 is indebted to MORTGAGEE in the principal amount of $85,000.00 advanced by MORTGAGEE to MORTGAGOR, together with interest thereon at the rate(s) provided in the NOTE until the INDEBTEDNESS is paid in full in the manner and at the times set forth in the NOTE, with the final payment of principal and interest, if not sooner paid, due and payable at the maturity date set forth in the NOTE, as the same may be amended, and containing other terms and conditions, all of which are specifically incorporated herein by reference; and

Whereas, as a condition to extending the aforementioned INDEBTEDNESS to MORTGAGOR, the MORTGAGEE requires, and MORTGAGOR has agreed to secure the payment and performance of its obligations under the Note with this MORTGAGE.

**Now, Therefore, MORTGAGOR**, in consideration of the INDEBTEDNESS and as security for the payment of the same, does hereby mortgage, grant and convey to the MORTGAGEE, its successors and assigns:

All of MORTGAGOR'S right, title and interest in, to and under (i) the premises commonly referred to as 860-904 ELM STREET, BUCYRUS, OHIO 44820 (i) as more particularly described in Exhibit A attached hereto and made a part hereof, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining and all of the estate, right, title, interest, claim and demand whatsoever of the Mortgagor therein and in the public streets and ways adjacent thereto, either at law or in equity, in possession or expectancy (collectively, the "Property"); and (ii) the structures and buildings, and all additions and improvements thereto, now or hereafter erected upon the Property (including all equipment constituting fixtures thereon) (collectively, the "Improvements", and together with the Property, the "Mortgaged Premises");

**TO HAVE AND TO HOLD**, the Mortgaged Premises unto the Mortgagee, its successors and/or assigns, to its own use forever in accordance with the provisions hereof.

**Provided,** however, that if the MORTGAGOR shall pay to the MORTGAGEE the INDEBTEDNESS and shall fully perform each of the other covenants and agreements hereinafter set forth, then this Mortgage and the estate hereby granted and conveyed shall become void.

This Mortgage is executed and delivered subject to the following covenants and agreements:

(1)       MORTGAGOR shall promptly pay when due the INDEBTEDNESS according to the NOTE and this Mortgage.



Page 1 of 5



(2)    Until the INDEBTEDNESS is fully paid, MORTGAGOR shall: (a) pay and discharge, when the same shall become due and payable, all taxes, assessments, sewer and water rents and all other charges and claims assessed or levied from time to time by any lawful authority upon any part of the MORTGAGED PREMISES and which shall or might have priority in lien or payment to the INDEBTEDNESS secured hereby, such payments to be made directly to the person or entity to which payment is owed; (b) pay and discharge all liens, claims or encumbrances which may be filed against the MORTGAGED PREMISES and which might have priority in lien or payment to the INDEBTEDNESS secured hereby; (c) provide and keep in effect, by paying the necessary premiums and charges thereon, such policies of hazard and liability insurance as MORTGAGEE may from time to time require on the improvements now or hereafter erected on the MORTGAGED PREMISES, with loss payable clauses in favor of MORTGAGOR and MORTGAGEE, as their respective interests may appear; and (d) promptly submit to MORTGAGEE evidence of the date and punctual payment of all of the foregoing charges. In the event of loss, MORTGAGOR shall give prompt notice to the insurance carrier and MORTGAGEE. Unless MORTGAGEE and MORTGAGOR otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the MORTGAGED PREMISES, if the restoration or repair is economically feasible and MORTGAGEE'S security is not lessened. If the restoration or repair is not feasible or if MORTGAGEE'S security would be lessened, the insurance proceeds shall be applied to the INDEBTEDNESS secured by this Mortgage, whether or not then due, with any excess paid to MORTGAGOR. If MORTGAGOR abandons the MORTGAGED PREMISES or does not answer, within 30 days, a notice from MORTGAGEE that the insurance carrier has offered to settle a claim, then MORTGAGEE may collect the insurance proceeds. MORTGAGEE may use the proceeds to repair or restore the MORTGAGED PREMISES or to pay the INDEBTEDNESS secured by this MORTAGE and MORTGAGOR otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of monthly payments. If the MORTGAGED PREMISES are acquired by the MORTGAGEE through foreclosure, MORTGAGOR'S rights to any insurance policies and proceeds resulting from damage to the MORTGAGED PREMISES prior to the acquisitions shall pass to MORTGAGEE to the extent of the INDEBTEDNESS secured by this Mortgage immediately prior to the acquisition.

(3)    MORTGAGOR shall maintain all improvements subject to this Mortgage in good and substantial repair, MORTGAGEE shall have the right to enter upon the MORTGAGED PREMISES at any reasonable hour for the purpose of inspecting the order, condition and repair of the improvements erected thereon.

(4)    MORTGAGOR covenants and agrees not to create, nor permit to accrue, upon all or any part of the MORTGAGED PREMISES any debt, lien or charge which would be prior in lien or payment to the lien of this Mortgage.

(5)    In the event MORTGAGOR neglects or refuses to perform the covenants and agreements contained in this Mortgage, then MORTGAGEE may, but shall not be required to, do so, and make whatever advances are necessary to protect the value of the MORTGAGED PREMISES and MORTGAGEE'S rights in the MORTGAGED PREMISES, provided that no such payment by the MORTGAGEE shall be considered a waiver or release of any remedy MORTGAGEE may have against MORTGAGOR. MORTGAGEE'S actions may include paying taxes, assessments, maintenance charges, insurance premiums, costs or expenses for the protection of the MORTGAGED PREMISES or the lien of this Mortgage or paying expenses, including attorney's fees, incurred by reason of the MORTGAGOR'S default. Any advances made by MORTGAGEE hereunder shall become additional INDEBTEDNESS of MORTGAGOR secured by this Mortgage. Unless MORTGAGEE agrees in writing to other terms of payment, these advances shall bear interest from the date of disbursement at the rate(s) set forth in the NOTE and shall be payable, with interest, upon notice from MORTGAGEE to MORTGAGOR requesting payment.

(6)    Should the MORTGAGED PREMISES or any part thereof be taken or damaged by reason of any public condemnation proceeding or similar action, the MORTGAGEE shall be entitled to all compensation, awards, and any other payment or relief therefore to the extent of the outstanding INDEBTEDNESS and shall be entitled, at its option, to commence, appear in, and prosecute in its own name, any action or proceeding or to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action, and proceeds are hereby assigned to the


MORTGAGEE, who may, after deducting there from its expenses, including attorney's fees, release any monies received by it or apply the same to any INDEBTEDNESS secured hereby.

(7)      If all or any part of the MORTGAGED PREMISES or any interest in it is sold or transferred, or if a beneficial interest in MORTGAGOR is sold or transferred and MORTGAGOR is not a natural person, without MORTGAGEE'S prior written consent, MORTGAGEE may, at its option, require immediate payment in full of all INDEBTEDNESS secured by this Mortgage. This option shall not be exercised if prohibited by law as of the date of this Mortgage. If MORTGAGEE exercises this option, MORTGAGEE shall give MORTGAGOR written notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is mailed within which MORTGAGOR must pay the entire INDEBTEDNESS. If MORTGAGOR fails to pay these sums prior to the expiration of the 30-day period, MORTGAGEE may invoke any remedy permitted by this Mortgage without further notice or demand on MORTGAGOR.

(8)      The following shall constitute Events of Default under this Mortgage: (a) MORTGAGOR'S failure to pay any installment of principal or interest in accordance with the NOTE; (b) MORTGAGOR'S failure to pay any other sum required to be paid in accordance with the NOTE or this Mortgage, when the same is due and payable; or (c) MORTGAGOR'S failure to perform any covenant or agreement in the NOTE or this Mortgage. If one or more of the foregoing Events of Default occurs, MORTGAGEE may, at its option, after any notice and opportunity to cure required by law and otherwise without notice and opportunity to cure, declare the entire unpaid balance of the INDEBTEDNESS to be immediately due and payable. MORTGAGEE may immediately institute an action of mortgage foreclosure or take any other legal action for the enforcement of this Mortgage, and proceed to final judgment and execution thereon for the INDEBTEDNESS, costs of suit and an attorney's commission for collection of     ten     percent (10.0%) but not less than $2,500.00. Interest at the highest rate provided in the NOTE shall continue to accrue on any judgment obtained by MORTGAGEE, until actual payment is made of the full amount due MORTGAGEE. MORTGAGOR hereby waives and releases all benefits that might accrue to MORTGAGOR by virtue of any present or future laws exempting the MORTGAGED PREMISES, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment.

(9)      The covenants in this Mortgage shall bind, and its benefits shall inure to, the MORTGAGOR and the MORTGAGEE and their respective heirs, executors, administrators, successors and assigns, subject to the provisions of Paragraph 8.

(10)      If this Mortgage is executed by more than one person, the undertakings and liability of each shall be joint and several.

(11)      Any notice which is mailed certified mail to MORTGAGOR or to the person(s) who (is)(are) the then owner(s) of the MORTGAGED PREMISES at the address of the MORTGAGED PREMISES or at such other address as MORTGAGOR shall designate to MORTGAGEE in writing, shall be sufficient notice when required under this Mortgage.

(12)      MORTGAGEE'S rights and remedies as provided herein or in the NOTE shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of MORTGAGEE, and may be exercised as often as the occasion therefor shall occur, and the failure to exercise any right or remedy shall in no event be construed as a waiver by MORTGAGEE or release of the same.

(13)      In the event any term or provision of this Mortgage or the application thereof to any person or circumstances shall, to any extent be invalid and unenforceable, the remainder of this Mortgage, or its application other than to that which is held invalid or unenforceable, shall not be affected thereby, and each term and provision hereof shall be valid and enforceable to the fullest extent permitted by law.

This Mortgage shall be governed by the law of Ohio, in which the MORTGAGED PREMISES are located. This provision shall not limit the applicability of federal law to this Mortgage.

Page 3 of 5

Executed this 26th Day of JUNE , 2020 .

For the Mortgagor,

By: Matthew Motil

ACKNOWLEDGMENT STATE OF Ohio          COUNTY OF Cuyahoga

On this 26th day of JUNE , 2020 personally appeared before me,

Matthew Motil                                      .

known to me or provided sufficient identification, to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

Kristen M Kish          (seal)
Notary Public

My commission expires: 12|16|2023

Document Prepared by Matthew Motil

Page 4 of 5

Exhibit A
Legal Description

Situated in the State of Ohio County of RICHLAND and in the City of PLYMOUTH

Located at:
431 PLYMOUTH STREET, PLYMOUTH, OHIO 44865

With the legal description:

Parcel No. – 035-56-161-01-001

Page 5 of 5

## Promissory Note

On this date of <u>June 26, 2020</u>, in return for valuable consideration received, the undersigned, <u>NSEM Mansfield 1, LLC</u> (hereinafter "Borrower") jointly and severally promises to pay <u>Danielle Hansen (hereinafter "Lender")</u>, the sum of $85,000.00 together with interest thereon, as stated in the terms of this note.

**Terms of Repayment** - This loan shall be repaid under the following terms:

$85,000.00 to be financed at 12% simple interest payed in arrears – Monthly payments of $850.00. 1st prorated payment on August 1st, 2020, last payment on February 1, 2021 with a balloon of $85,000.00

**Collateral** - The following property will be used as collateral –

<u>431 Plymouth Street, Plymouth, Ohio 44865</u>

**Payable On Demand** - The entire unpaid principal and accrued interest thereon, if any, shall become due and payable on demand by the holder of this note 30 days after such demand is made in writing.

**Place of Payment** - all payments due under this note shall be made by ACH or mailed to

_____
or at such other place as the holder of this Note may designate in writing.

**Borrower's Address** - The Borrower shall provide to provide prompt written notice to the Lender of any change of address.

**Prepayment** - This Note may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall first be applied to interest, and then to principal payments in the order of their maturity.

**Default** - In the event of default, the borrower[s] agree to pay all costs and expenses incurred by the Lender, including all reasonable attorney fees (including both hourly and contingent attorney fees as permitted by law) for the collection of this Note upon default, and including reasonable collection charges (including, where consistent with industry practices, a collection charge set as a percentage of the outstanding balance of this Note) should collection be referred to a collection agency.

The note holder understands and agrees that regardless of any other provisions contained herein, this note is a non-recourse note and the holder's sole recourse in the event of a default shall be against the property securing this note and not against the borrower.

**Acceleration of Debt** - In the event that the borrower fails to make any payment due under the terms of this Note, or breach any condition relating to any security, security agreement, note, mortgage or lien granted as collateral security for this Note, seeks relief under the Bankruptcy Code, or suffers an involuntary petition in bankruptcy or receivership not vacated within thirty

**EXHIBIT**
**B**



(30) days, the entire balance of this Note and any interest accrued thereon shall be immediately due and payable to the holder of this Note.

**Joint and Several Liability** - All borrowers identified in this Note shall be jointly and severally liable for any debts secured by this Note.

**Modification** - No modification or waiver of any of the terms of this Agreement shall be allowed unless by written agreement signed by both parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

**Transfer of the Note** - The borrowers hereby waive any notice of the transfer of this Note by the Lender or by any subsequent holder of this Note, agree to remain bound by the terms of this Note subsequent to any transfer, and agree that the terms of this Note may be fully enforced by any subsequent holder of this Note.

**Severability of Provisions** - In the event that any portion of this Note is deemed unenforceable, all other provisions of this Note shall remain in full force and effect.

**Choice of Law** - All terms and conditions of this Note shall be interpreted under the laws of the state of Ohio.

Signed Under Penalty of Perjury, this 26<u>th</u> Day of June, 2020,

Matthew Motil for
NSEM Mansfield I, LLC

# Promissory Note

On this date of June 26, 2020, in return for valuable consideration received, the undersigned, NSEM Mansfield 2, LLC (hereinafter "Borrower") jointly and severally promises to pay Toby Oliver (hereinafter "Lender"), the sum of $150,000.00 together with interest thereon, as stated in the terms of this note.

**Terms of Repayment** - This loan shall be repaid under the following terms:

$150,000.00 to be financed at 15% simple interest payed in arrears – Monthly payments of $1,875.00. 1st prorated payment on August 1st, 2020, last payment on February 1, 2021 with a balloon of $150,000.00

**Collateral** - The following property will be used as collateral –

860-904 Elm Street, Bucyrus, Ohio 44820

**Payable On Demand** - The entire unpaid principal and accrued interest thereon, if any, shall become due and payable on demand by the holder of this note 30 days after such demand is made in writing.

**Place of Payment** - all payments due under this note shall be made by ACH or mailed to

_____

or at such other place as the holder of this Note may designate in writing.

**Borrower's Address** - The Borrower shall provide to provide prompt written notice to the Lender of any change of address.

**Prepayment** - This Note may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall first be applied to interest, and then to principal payments in the order of their maturity.

**Default** - In the event of default, the borrower[s] agree to pay all costs and expenses incurred by the Lender, including all reasonable attorney fees (including both hourly and contingent attorney fees as permitted by law) for the collection of this Note upon default, and including reasonable collection charges (including, where consistent with industry practices, a collection charge set as a percentage of the outstanding balance of this Note) should collection be referred to a collection agency.

The note holder understands and agrees that regardless of any other provisions contained herein, this note is a non-recourse note and the holder's sole recourse in the event of a default shall be against the property securing this note and not against the borrower.

**Acceleration of Debt** - In the event that the borrower fails to make any payment due under the terms of this Note, or breach any condition relating to any security, security agreement, note, mortgage or lien granted as collateral security for this Note, seeks relief under the Bankruptcy Code, or suffers an involuntary petition in bankruptcy or receivership not vacated within thirty



EXHIBIT

H

(30) days, the entire balance of this Note and any interest accrued thereon shall be immediately due and payable to the holder of this Note.

**Joint and Several Liability** - All borrowers identified in this Note shall be jointly and severally liable for any debts secured by this Note.

**Modification** - No modification or waiver of any of the terms of this Agreement shall be allowed unless by written agreement signed by both parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

**Transfer of the Note** - The borrowers hereby waive any notice of the transfer of this Note by the Lender or by any subsequent holder of this Note, agree to remain bound by the terms of this Note subsequent to any transfer, and agree that the terms of this Note may be fully enforced by any subsequent holder of this Note.

**Severability of Provisions** - In the event that any portion of this Note is deemed unenforceable, all other provisions of this Note shall remain in full force and effect.

**Choice of Law** - All terms and conditions of this Note shall be interpreted under the laws of the state of Ohio.

Signed Under Penalty of Perjury, this 26<u>th</u> Day of June, 2020,

Matthew Motil  for
NSEM Mansfield 2, LLC

## MORTGAGE

Made on this 25ᵗʰ day of JUNE , 2020,

Between

TOBY OLIVER

(hereinafter "Mortgagee")

And

NSEM MANSFIELD 2, LLC

(hereinafter "Mortgagor")

**Whereas, MORTGAGOR** by its Note (hereinafter the "NOTE") dated JUNE 25, 2020 is indebted to MORTGAGEE in the principal amount of $150,000.00 advanced by MORTGAGEE to MORTGAGOR, together with interest thereon at the rate(s) provided in the NOTE until the INDEBTEDNESS is paid in full in the manner and at the times set forth in the NOTE, with the final payment of principal and interest, if not sooner paid, due and payable at the maturity date set forth in the NOTE, as the same may be amended, and containing other terms and conditions, all of which are specifically incorporated herein by reference; and

**Whereas,** as a condition to extending the aforementioned INDEBTEDNESS to MORTGAGOR, the MORTGAGEE requires, and MORTGAGOR has agreed to secure the payment and performance of its obligations under the Note with this MORTGAGE.

**Now, Therefore,** MORTGAGOR, in consideration of the INDEBTEDNESS and as security for the payment of the same, does hereby mortgage, grant and convey to the MORTGAGEE, its successors and assigns;

All of MORTGAGOR'S right, title and interest in, to and under (i) the premises commonly referred to as **860-904 ELM STREET, BUCYRUS, OHIO 44820** (i) as more particularly described in Exhibit A attached hereto and made a part hereof, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining and all of the estate, right, title, interest, claim and demand whatsoever of the Mortgagor therein and in the public streets and ways adjacent thereto, either at law or in equity, in possession or expectancy (collectively, the "Property"); and (ii) the structures and buildings, and all additions and improvements thereto, now or hereafter erected upon the Property (including all equipment constituting fixtures thereon) (collectively, the "Improvements", and together with the Property, the "Mortgaged Premises");

**TO HAVE AND TO HOLD,** the Mortgaged Premises unto the Mortgagee, its successors and/or assigns, to its own use forever in accordance with the provisions hereof.

**Provided,** however, that if the MORTGAGOR shall pay to the MORTGAGEE the INDEBTEDNESS and shall fully perform each of the other covenants and agreements hereinafter set forth, then this Mortgage and the estate hereby granted and conveyed shall become void.

**This Mortgage** is executed and delivered subject to the following covenants and agreements:

(1)         MORTGAGOR shall promptly pay when due the INDEBTEDNESS according to the NOTE and this Mortgage.



EXHIBIT

I

(2)     Until the INDEBTEDNESS is fully paid, MORTGAGOR shall: (a) pay and discharge, when the same shall become due and payable, all taxes, assessments, sewer and water rents and all other charges and claims assessed or levied from time to time by any lawful authority upon any part of the MORTGAGED PREMISES and which shall or might have priority in lien or payment to the INDEBTEDNESS secured hereby, such payments to be made directly to the person or entity to which payment is owed; (b) pay and discharge all liens, claims or encumbrances which may be filed against the MORTGAGED PREMISES and which might have priority in lien or payment to the INDEBTEDNESS secured hereby; (c) provide and keep in effect, by paying the necessary premiums and charges thereon, such policies of hazard and liability insurance as MORTGAGEE may from time to time require on the improvements now or hereafter erected on the MORTGAGED PREMISES, with loss payable clauses in favor of MORTGAGOR and MORTGAGEE, as their respective interests may appear; and (d) promptly submit to MORTGAGEE evidence of the date and punctual payment of all of the foregoing charges. In the event of loss, MORTGAGOR shall give prompt notice to the insurance carrier and MORTGAGEE. Unless MORTGAGEE and MORTGAGOR otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the MORTGAGED PREMISES, if the restoration or repair is economically feasible and MORTGAGEE'S security is not lessened. If the restoration or repair is not feasible or if MORTGAGEE'S security would be lessened, the insurance proceeds shall be applied to the INDEBTEDNESS secured by this Mortgage, whether or not then due, with any excess paid to MORTGAGOR. If MORTGAGOR abandons the MORTGAGED PREMISES or does not answer, within 30 days, a notice from MORTGAGEE that the insurance carrier has offered to settle a claim, then MORTGAGEE may collect the insurance proceeds. MORTGAGEE may use the proceeds to repair or restore the MORTGAGED PREMISES or to pay the INDEBTEDNESS secured by this MORTAGEE and MORTGAGOR otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of monthly payments. If the MORTGAGED PREMISES are acquired by the MORTGAGEE through foreclosure, MORTGAGOR'S rights to any insurance policies and proceeds resulting from damage to the MORTGAGED PREMISES prior to the acquisitions shall pass to MORTGAGEE to the extent of the INDEBTEDNESS secured by this Mortgage immediately prior to the acquisition.

(3)     MORTGAGOR shall maintain all improvements subject to this Mortgage in good and substantial repair, MORTGAGEE shall have the right to enter upon the MORTGAGED PREMISES at any reasonable hour for the purpose of inspecting the order, condition and repair of the improvements erected thereon.

(4)     MORTGAGOR covenants and agrees not to create, nor permit to accrue, upon all or any part of the MORTGAGED PREMISES any debt, lien or charge which would be prior in lien or payment to the lien of this Mortgage.

(5)     In the event MORTGAGOR neglects or refuses to perform the covenants and agreements contained in this Mortgage, then MORTGAGEE may, but shall not be required to, do so, and make whatever advances are necessary to protect the value of the MORTGAGED PREMISES and MORTGAGEE'S rights in the MORTGAGED PREMISES, provided that no such payment by the MORTGAGEE shall be considered a waiver or release of any remedy MORTGAGEE may have against MORTGAGOR. MORTGAGEE'S actions may include paying taxes, assessments, maintenance charges, insurance premiums, costs or expenses for the protection of the MORTGAGED PREMISES or the lien of this Mortgage or paying expenses, including attorney's fees, incurred by reason of the MORTGAGOR'S default. Any advances made by MORTGAGEE hereunder shall become additional INDEBTEDNESS of MORTGAGOR secured by this Mortgage. Unless MORTGAGEE agrees in writing to other terms of payment, these advances shall bear interest from the date of disbursement at the rate(s) set forth in the NOTE and shall be payable, with interest, upon notice from MORTGAGEE to MORTGAGOR requesting payment.

(6)     Should the MORTGAGED PREMISES or any part thereof be taken or damaged by reason of any public condemnation proceeding or similar action, the MORTGAGEE shall be entitled to all compensation, awards, and any other payment or relief therefore to the extent of the outstanding INDEBTEDNESS and shall be entitled, at its option, to commence, appear in, and prosecute in its own name, any action or proceeding or to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action, and proceeds are hereby assigned to the

MORTGAGEE, who may, after deducting there from its expenses, including attorney's fees, release any monies received by it or apply the same to any INDEBTEDNESS secured hereby.

(7) If all or any part of the MORTGAGED PREMISES or any interest in it is sold or transferred, or if a beneficial interest in MORTGAGOR is sold or transferred and MORTGAGOR is not a natural person, without MORTGAGEE'S prior written consent, MORTGAGEE may, at its option, require immediate payment in full of all INDEBTEDNESS secured by this Mortgage. This option shall not be exercised if prohibited by law as of the date of this Mortgage. If MORTGAGEE exercises this option, MORTGAGEE shall give MORTGAGOR written notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is mailed within which MORTGAGOR must pay the entire INDEBTEDNESS. If MORTGAGOR fails to pay these sums prior to the expiration of the 30-day period, MORTGAGEE may invoke any remedy permitted by this Mortgage without further notice or demand on MORTGAGOR.

(8) The following shall constitute Events of Default under this Mortgage: (a) MORTGAGOR'S failure to pay any installment of principal or interest in accordance with the NOTE; (b) MORTGAGOR'S failure to pay any other sum required to be paid in accordance with the NOTE or this Mortgage, when the same is due and payable; or (c) MORTGAGOR'S failure to perform any covenant or agreement in the NOTE or this Mortgage. If one or more of the foregoing Events of Default occurs, MORTGAGEE may, at its option, after any notice and opportunity to cure required by law and otherwise without notice and opportunity to cure, declare the entire unpaid balance of the INDEBTEDNESS to be immediately due and payable. MORTGAGEE may immediately institute an action of mortgage foreclosure or take any other legal action for the enforcement of this Mortgage, and proceed to final judgment and execution thereon for the INDEBTEDNESS, costs of suit and an attorney's commission for collection of      ten      percent (10.0%) but not less than $2,500.00. Interest at the highest rate provided in the NOTE shall continue to accrue on any judgment obtained by MORTGAGEE, until actual payment is made of the full amount due MORTGAGEE. MORTGAOR hereby waives and releases all benefits that might accrue to MORTGAGOR by virtue of any present or future laws exempting the MORTGAGED PREMISES, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment.

(9) The covenants in this Mortgage shall bind, and its benefits shall inure to, the MORTGAGOR and the MORTGAGEE and their respective heirs, executors, administrators, successors and assigns, subject to the provisions of Paragraph 8.

(10) If this Mortgage is executed by more than one person, the undertakings and liability of each shall be joint and several.

(11) Any notice which is mailed certified mail to MORTGAGOR or to the person(s) who (is)(are) the then owner(s) of the MORTGAGED PREMISES at the address of the MORTGAGED PREMISES or at such other address as MORTGAGOR shall designate to MORTGAGEE in writing, shall be sufficient notice when required under this Mortgage.

(12) MORTGAGEE'S rights and remedies as provided herein or in the NOTE shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of MORTGAGEE, and may be exercised as often as the occasion therefor shall occur; and the failure to exercise any right or remedy shall in no event be construed as a waiver by MORTGAGEE or release of the same.

(13) In the event any term or provision of this Mortgage or the application thereof to any person or circumstances shall, to any extent be invalid and unenforceable, the remainder of this Mortgage, or its application other than to that which is held invalid or unenforceable, shall not be affected thereby, and each term and provision hereof shall be valid and enforceable to the fullest extent permitted by law.

This Mortgage shall be governed by the law of Ohio, in which the MORTGAGED PREMISES are located. This provision shall not limit the applicability of federal law to this Mortgage.

Executed this __26th__ Day of __JUNE_____, __2020___.

For the Mortgagor,

_By:_ Matthew Motil

ACKNOWLEDGMENT STATE OF __Ohio_____ COUNTY OF __Cuyahoga_____

On this __26th__ day of __JUNE_____, __2020_____ personally appeared before me,

__Matthew Motil_____,

known to me or provided sufficient identification, to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

__Kristen M Kish_____ (seal)
Notary Public

My commission expires: __12|16|2023__

**Document Prepared by Matthew Motil**

**Exhibit A**
Legal Description

Situated in the State of <u>Ohio</u> County of <u>CRAWFORD</u> and in the City of <u>BUCYRUS</u>

Located at:
**860-904 ELM STREET, BUCYRUS, OHIO 44820**

With the legal description:

Parcel No. – 08-0016894.000

202100218662     Pages: 10
Filed for Record in CRAWFORD County, Ohio
Julie A. Smith, Recorder
04/13/2021 10:08 AM     Recording Fees: $98.00
AFDT FACTS OR 1044 / p166 - p175

## AFFIDAVIT OF FACTS RELATING TO TITLE
## O.R.C. 5301.252

STATE OF FLORIDA      )
                             ) SS:
COUNTY OF LEE        )

I, TOBY OLIVER, after being first duly sword, state as follows:

1.      I am over the age of eighteen and am competent to testify as to the matters set forth herein.

2.      This Affidavit is made pursuant to O.R.C. 5301.252, and pertains to the property commonly known as 860-904 Elm Street, Bucyrus, Ohio 44820 (the "Property") legally described as follows:

SITUATED IN THE CITY OF BUCYRUS, COUNTY OF CRAWFORD AND STATE OF OHIO:

BEING INLOT 750 OF THE REVISED INLOTS OF SAID CITY.

PARCEL NO. 08-0016894.00
PROPERTY ADDRESS: 860-904 ELM STREET, BUCYRUS, OHIO 44820



EXHIBIT
J

3.    Title to the Property is currently held in the name of NSEM Mansfield 2, LLC ("NSEM").

4.    On approximately June 25. 2020, I entered into a lending transaction with NSEM whereby a mortgage upon the real property described above to secure the sum of One Hundred Fifty Thousand Dollars ($150,000.00)("Mortgage") lent was to be filed with the Crawford County Recorder.

5.    A true and accurate copy of the Mortgage supplied by NSEM is attached hereto as Exhibit "A".

6.    I was issued a Promissory Note for the Mortgage on June 26, 2020, a true and accurate copy of which is attached hereto as "Exhibit B".

7.    I have not been provided an unrecorded complete original or a copy of a mortgage upon the Property.

8.    I have not been provided an original or copy of a mortgage upon the Property recorded in the Crawford County Records.

9.    I cannot locate a notation of the Mortgage being recorded on the online records of the Crawford County Records.

10.    I am not aware of a mortgage to Mortgagee upon the Property.

11.    I claim an equitable mortgage upon the Property in the name of Toby Oliver; and

12.    I state that it is necessary to record and claim a mortgage interest on the Property to protect the secured status bargained for in the loan transaction.

By: _____
Toby Oliver

STATE OF FLORIDA, COUNTY OF LEE, ss:

The foregoing instruction was sworn to before me and subscribed in my presence the _3/_

day of March, 2021, by Toby Oliver.



Notary Public

4825-4336-8419, v. 1

_____[Space Above This Line For Recording Date]_____

## MORTGAGE

Made on this 25th day of JUNE , 2020,

Between

TOBY OLIVER

(hereinafter "Mortgagee")

And

NSEM MANSFIELD 2, LLC

(hereinafter "Mortgagor")

**Whereas, MORTGAGOR** by its Note (hereinafter the "NOTE") dated JUNE 25, 2020 is indebted to MORTGAGEE in the principal amount of $150,000.00 advanced by MORTGAGEE to MORTGAGOR, together with interest thereon at the rate(s) provided in the NOTE until the INDEBTEDNESS is paid in full in the manner and at the times set forth in the NOTE, with the final payment of principal and interest, if not sooner paid, due and payable at the maturity date set forth in the NOTE, as the same may be amended, and containing other terms and conditions, all of which are specifically incorporated herein by reference; and

**Whereas,** as a condition to extending the aforementioned INDEBTEDNESS to MORTGAGOR, the MORTGAGEE requires, and MORTGAGOR has agreed to secure the payment and performance of its obligations under the Note with this MORTGAGE.

**Now, Therefore,** MORTGAGOR, in consideration of the INDEBTEDNESS and as security for the payment of the same, does hereby mortgage, grant and convey to the MORTGAGEE, its successors and assigns:

All of MORTGAGOR'S right, title and interest in, to and under (i) the premises commonly referred to as **860-904 ELM STREET, BUCYRUS, OHIO 44820** (i) as more particularly described in Exhibit A attached hereto and made a part hereof, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining and all of the estate, right, title, interest, claim and demand whatsoever of the Mortgagor therein and in the public streets and ways adjacent thereto, either at law or in equity, in possession or expectancy (collectively, the "Property"); and (ii) the structures and buildings, and all additions and improvements thereto, now or hereafter erected upon the Property (including all equipment constituting fixtures thereon) (collectively, the "Improvements", and together with the Property, the "Mortgaged Premises");

**TO HAVE AND TO HOLD,** the Mortgaged Premises unto the Mortgagee, its successors and/or assigns, to its own use forever in accordance with the provisions hereof.

**Provided,** however, that if the MORTGAGOR shall pay to the MORTGAGEE the INDEBTEDNESS and shall fully perform each of the other covenants and agreements hereinafter set forth, then this Mortgage and the estate hereby granted and conveyed shall become void.

**This Mortgage** is executed and delivered subject to the following covenants and agreements:

(1)    MORTGAGOR shall promptly pay when due the INDEBTEDNESS according to the NOTE and this Mortgage.

(2)        Until the INDEBTEDNESS is fully paid, MORTGAGOR shall: (a) pay and discharge, when the same shall become due and payable, all taxes, assessments, sewer and water rents and all other charges and claims assessed or levied from time to time by any lawful authority upon any part of the MORTGAGED PREMISES and which shall or might have priority in lien or payment to the INDEBTEDNESS secured hereby, such payments to be made directly to the person or entity to which payment is owed; (b) pay and discharge all liens, claims or encumbrances which may be filed against the MORTGAGED PREMISES and which might have priority in lien or payment to the INDEBTEDNESS secured hereby; (c) provide and keep in effect, by paying the necessary premiums and charges thereon, such policies of hazard and liability insurance as MORTGAGEE may from time to time require on the improvements now or hereafter erected on the MORTGAGED PREMISES, with loss payable clauses in favor of MORTGAGOR and MORTGAGEE, as their respective interests may appear; and (d) promptly submit to MORTGAGEE evidence of the date and punctual payment of all of the foregoing charges. In the event of loss, MORTGAGOR shall give prompt notice to the insurance carrier and MORTGAGEE. Unless MORTGAGEE and MORTGAGOR otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the MORTGAGED PREMISES, if the restoration or repair is economically feasible and MORTGAGEE'S security is not lessened. If the restoration or repair is not feasible or if MORTGAGEE'S security would be lessened, the insurance proceeds shall be applied to the INDEBTEDNESS secured by this Mortgage, whether or not then due, with any excess paid to MORTGAGOR. If MORTGAGOR abandons the MORTGAGED PREMISES or does not answer, within 30 days, a notice from MORTGAGEE that the insurance carrier has offered to settle a claim, then MORTGAGEE may collect the insurance proceeds. MORTGAGEE may use the proceeds to repair or restore the MORTGAGED PREMISES or to pay the INDEBTEDNESS secured by this MORTAGEE and MORTGAGOR otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of monthly payments. If the MORTGAGED PREMISES are acquired by the MORTGAGEE through foreclosure, MORTGAGOR'S rights to any insurance policies and proceeds resulting from damage to the MORTGAGED PREMISES prior to the acquisitions shall pass to MORTGAGEE to the extent of the INDEBTEDNESS secured by this Mortgage immediately prior to the acquisition.

(3)        MORTGAGOR shall maintain all improvements subject to this Mortgage in good and substantial repair, MORTGAGEE shall have the right to enter upon the MORTGAGED PREMISES at any reasonable hour for the purpose of inspecting the order, condition and repair of the improvements erected thereon.

(4)        MORTGAGOR covenants and agrees not to create, nor permit to accrue, upon all or any part of the MORTGAGED PREMISES any debt, lien or charge which would be prior in lien or payment to the lien of this Mortgage.

(5)        In the event MORTGAGOR neglects or refuses to perform the covenants and agreements contained in this Mortgage, then MORTGAGEE may, but shall not be required to, do so, and make whatever advances are necessary to protect the value of the MORTGAGED PREMISES and MORTGAGEE'S rights in the MORTGAGED PREMISES, provided that no such payment by the MORTGAGEE shall be considered a waiver or release of any remedy MORTGAGEE may have against MORTGAGOR. MORTGAGEE'S actions may include paying taxes, assessments, maintenance charges, insurance premiums, costs or expenses for the protection of the MORTGAGED PREMISES or the lien of this Mortgage or paying expenses, including attorney's fees, incurred by reason of the MORTGAGOR'S default. Any advances made by MORTGAGEE hereunder shall become additional INDEBTEDNESS of MORTGAGOR secured by this Mortgage. Unless MORTGAGEE agrees in writing to other terms of payment, these advances shall bear interest from the date of disbursement at the rate(s) set forth in the NOTE and shall be payable, with interest, upon notice from MORTGAGEE to MORTGAGOR requesting payment.

(6)        Should the MORTGAGED PREMISES or any part thereof be taken or damaged by reason of any public condemnation proceeding or similar action, the MORTGAGEE shall be entitled to all compensation, awards, and any other payment or relief therefore to the extent of the outstanding INDEBTEDNESS and shall be entitled, at its option, to commence, appear in, and prosecute in its own name, any action or proceeding or to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action, and proceeds are hereby assigned to the

MORTGAGEE, who may, after deducting there from its expenses, including attorney's fees, release any monies received by it or apply the same to any INDEBTEDNESS secured hereby.

(7)    If all or any part of the MORTGAGED PREMISES or any interest in it is sold or transferred, or if a beneficial interest in MORTGAGOR is sold or transferred and MORTGAGOR is not a natural person, without MORTGAGEE'S prior written consent, MORTGAGEE may, at its option, require immediate payment in full of all INDEBTEDNESS secured by this Mortgage. This option shall not be exercised if prohibited by law as of the date of this Mortgage. If MORTGAGEE exercises this option, MORTGAGEE shall give MORTGAGOR written notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is mailed within which MORTGAGOR must pay the entire INDEBTEDNESS. If MORTGAGOR fails to pay these sums prior to the expiration of the 30-day period, MORTGAGEE may invoke any remedy permitted by this Mortgage without further notice or demand on MORTGAGOR.

(8)    The following shall constitute Events of Default under this Mortgage: (a) MORTGAGOR'S failure to pay any installment of principal or interest in accordance with the NOTE; (b) MORTGAGOR'S failure to pay any other sum required to be paid in accordance with the NOTE or this Mortgage, when the same is due and payable; or (c) MORTGAGOR'S failure to perform any covenant or agreement in the NOTE or this Mortgage. If one or more of the foregoing Events of Default occurs, MORTGAGEE may, at its option, after any notice and opportunity to cure required by law and otherwise without notice and opportunity to cure, declare the entire unpaid balance of the INDEBTEDNESS to be immediately due and payable. MORTGAGEE may immediately institute an action of mortgage foreclosure or take any other legal action for the enforcement of this Mortgage, and proceed to final judgment and execution thereon for the INDEBTEDNESS, costs of suit and an attorney's commission for collection of     ten    percent (10.0%) but not less than $2,500.00. Interest at the highest rate provided in the NOTE shall continue to accrue on any judgment obtained by MORTGAGEE, until actual payment is made of the full amount due MORTGAGEE. MORTGAOR hereby waives and releases all benefits that might accrue to MORTGAGOR by virtue of any present or future laws exempting the MORTGAGED PREMISES, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment.

(9)    The covenants in this Mortgage shall bind, and its benefits shall inure to, the MORTGAGOR and the MORTGAGEE and their respective heirs, executors, administrators, successors and assigns, subject to the provisions of Paragraph 8.

(10)    If this Mortgage is executed by more than one person, the undertakings and liability of each shall be joint and several.

(11)    Any notice which is mailed certified mail to MORTGAGOR or to the person(s) who (is)(are) the then owner(s) of the MORTGAGED PREMISES at the address of the MORTGAGED PREMISES or at such other address as MORTGAGOR shall designate to MORTGAGEE in writing, shall be sufficient notice when required under this Mortgage.

(12)    MORTGAGEE'S rights and remedies as provided herein or in the NOTE shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of MORTGAGEE, and may be exercised as often as the occasion therefor shall occur; and the failure to exercise any right or remedy shall in no event be construed as a waiver by MORTGAGEE or release of the same.

(13)    In the event any term or provision of this Mortgage or the application thereof to any person or circumstances shall, to any extent be invalid and unenforceable, the remainder of this Mortgage, or its application other than to that which is held invalid or unenforceable, shall not be affected thereby, and each term and provision hereof shall be valid and enforceable to the fullest extent permitted by law.

This Mortgage shall be governed by the law of Ohio, in which the MORTGAGED PREMISES are located. This provision shall not limit the applicability of federal law to this Mortgage.

Executed this 26th Day of JUNE , 2020 .

For the Mortgagor,

*[signature]*

By: Matthew Motil

ACKNOWLEDGMENT STATE OF Ohio COUNTY OF Cuyahoga

On this 26th day of JUNE , 2020 personally appeared before me,

Matthew Motil

known to me or provided sufficient identification, to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

Kristen M Kish (seal)
Notary Public

My commission expires: 12|16|2023

Document Prepared by Matthew Motil

**Exhibit A**
Legal Description

Situated in the State of <u>Ohio</u> County of <u>CRAWFORD</u> and in the City of <u>BUCYRUS</u>

Located at:
**860-904 ELM STREET, BUCYRUS, OHIO 44820**

With the legal description:

Parcel No. – 08-0016894.000

# Promissory Note

On this date of <u>June 26, 2020</u>, in return for valuable consideration received, the undersigned, <u>NSEM Mansfield 2, LLC</u> (hereinafter "Borrower") jointly and severally promises to pay <u>Toby Oliver (hereinafter "Lender"), the sum of $150,000.00</u> together with interest thereon, as stated in the terms of this note.

**Terms of Repayment** - This loan shall be repaid under the following terms:

$150,000.00 to be financed at 15% simple interest payed in arrears – Monthly payments of $1,875.00. 1st prorated payment on August 1st, 2020, last payment on February 1, 2021 with a balloon of $150,000.00

**Collateral** - The following property will be used as collateral –

<u>860-904 Elm Street, Bucyrus, Ohio 44820</u>

**Payable On Demand** - The entire unpaid principal and accrued interest thereon, if any, shall become due and payable on demand by the holder of this note 30 days after such demand is made in writing.

**Place of Payment** - all payments due under this note shall be made by ACH or mailed to

_____

or at such other place as the holder of this Note may designate in writing.

**Borrower's Address** - The Borrower shall provide to provide prompt written notice to the Lender of any change of address.

**Prepayment** - This Note may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall first be applied to interest, and then to principal payments in the order of their maturity.

**Default** - In the event of default, the borrower[s] agree to pay all costs and expenses incurred by the Lender, including all reasonable attorney fees (including both hourly and contingent attorney fees as permitted by law) for the collection of this Note upon default, and including reasonable collection charges (including, where consistent with industry practices, a collection charge set as a percentage of the outstanding balance of this Note) should collection be referred to a collection agency.

The note holder understands and agrees that regardless of any other provisions contained herein, this note is a non-recourse note and the holder's sole recourse in the event of a default shall be against the property securing this note and not against the borrower.

**Acceleration of Debt** - In the event that the borrower fails to make any payment due under the terms of this Note, or breach any condition relating to any security, security agreement, note, mortgage or lien granted as collateral security for this Note, seeks relief under the Bankruptcy Code, or suffers an involuntary petition in bankruptcy or receivership not vacated within thirty

(30) days, the entire balance of this Note and any interest accrued thereon shall be immediately due and payable to the holder of this Note.

**Joint and Several Liability** - All borrowers identified in this Note shall be jointly and severally liable for any debts secured by this Note.

**Modification** - No modification or waiver of any of the terms of this Agreement shall be allowed unless by written agreement signed by both parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

**Transfer of the Note** - The borrowers hereby waive any notice of the transfer of this Note by the Lender or by any subsequent holder of this Note, agree to remain bound by the terms of this Note subsequent to any transfer, and agree that the terms of this Note may be fully enforced by any subsequent holder of this Note.

**Severability of Provisions** - In the event that any portion of this Note is deemed unenforceable, all other provisions of this Note shall remain in full force and effect.

**Choice of Law** - All terms and conditions of this Note shall be interpreted under the laws of the state of Ohio.

Signed Under Penalty of Perjury, this 26<u><sup>th</sup> Day of June, 2020,</u>

_Matthew Motil (signature)_

Matthew Motil for
NSEM Mansfield 2, LLC

201100218662

**BRENNAN MANNA DIAMOND**
**300 PUBLIC SQUARE**
**SUITE 3270**
**CLEVELAND, OH 44114**