The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on September 1, 2022, which may be different from its entry on the record.

**IT IS SO ORDERED.**

Dated: September 1, 2022



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| In re: | ) | Chapter 7 |
|---|---|---|
| | ) | |
| MATTHEW M. MOTIL, | ) | Case No. 22-10571 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |

MEMORANDUM OF OPINION[1]

On April 21, 2022, and May 6, 2022, creditors Ray Cattaneo and Lori Rehn separately filed nearly identical motions for relief from stay under 11 U.S.C. § 362(d) to continue their state court litigation against the debtor, Matthew M. Motil. Nearly a year earlier, Lori Rehn sued the debtor in the Cuyahoga County Court of Common Pleas while Ray Cattaneo filed suit in the Richland County Court of Common Pleas. On March 7, 2022, the debtor filed for chapter 7 bankruptcy and thus automatically stayed both state court cases. On August 16,

---

[1] This Memorandum of Opinion is not intended for official publication.

2022, the Court heard argument on the creditors' motions. For the reasons stated below, the Court denies without prejudice the creditors' motions for relief from stay as to the debtor, though the automatic stay does not apply to any non-debtor entities.

JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

BACKGROUND AND PROCEDURAL HISTORY

On April 15, 2021, creditor Lori Rehn sued the debtor in the Cuyahoga County Court of Common Pleas over a loan she allegedly made to the debtor for $150,000, secured by first mortgages on three properties owned by three different debtor-controlled companies (Case No. CV-21-947601). Lori Rehn's suit claims the debtor defaulted on the loan, fraudulently misrepresented that the three properties were unencumbered, and fraudulently encumbered the properties with interests superior to hers. On the same day, creditor Ray Cattaneo filed a substantially similar lawsuit in the Richland County Court of Common Pleas over a $100,000 loan he allegedly made to the debtor, secured by a fourth property in

Mansfield, Ohio, and owned by another debtor-controlled company (Case No. 2021 CV 0169). Both lawsuits name the debtor as well as multiple debtor-controlled companies as defendants. Based on the public dockets for both cases, neither state court has issued a scheduling order setting a trial date or other deadlines. In his statement of financial affairs (Docket No. 14), the debtor listed an additional 15 pending lawsuits against the debtor and debtor-controlled companies, but only the two creditors in this matter have filed motions for relief from stay.

On March 7, 2022, the debtor filed a voluntary chapter 7 bankruptcy petition in this Court (Docket No. 1), which automatically stayed the creditors' state court actions. On April 21, 2022, and May 6, 2022, Ray Cattaneo and Lori Rehn timely filed their respective motions for relief from stay (Docket Nos. 25 and 31). The debtor filed briefs in opposition (Docket Nos. 34 and 39). Both Lori Rehn and Ray Cattaneo also timely filed adversary proceedings in this Court seeking the nondischargeability of their loans to the debtor because of the debtor's alleged fraudulent misrepresentations, defalcation, and violation of Federal securities laws under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(19) (Adv. Proc. Nos. 22-1036 and 22-1032). On August 16, 2022, the Court held a hearing on the creditors' motions for relief from stay and the debtor's responses. All parties consented to the Court ruling on the creditors' motions without an evidentiary hearing.

## DISCUSSION

Section 362(d)(1) of the Bankruptcy Code provides that a court may grant relief from stay "for cause," but the Code does not define what cause is. So a court must determine whether to grant relief "on a case-by-case basis." *Laguna Assocs. Ltd. P'ship. v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'shp.)*, 30 F.3d 734, 737 (6th Cir. 1994). The decision to grant relief from stay "resides within the sound discretion of the bankruptcy court," though a court should consider the following factors in making its decision:

> 1) judicial economy;
> 2) trial readiness;
> 3) the resolution of preliminary bankruptcy issues;
> 4) the creditor's chance of success on the merits; and
> 5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

*Garzoni v. K-Mart Corp.(In re Garzoni)*, 35 F. App'x 179, 181 (6th Cir. 2002); *see also In re Martin*, 542 B.R. 199 (B.A.P. 6th Cir. 2015) (using the five *Garzoni* factors). The creditors cite an additional six factors from an Alabama bankruptcy court that this Court should consider. *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) (in actuality listing ten factors the court considered). There is no published opinion from any court in this circuit applying those factors. Nor would the Alabama factors necessarily aid the Court in its determination because they are

largely a variation on the five *Garzoni* factors cited above.  The Court will use the *Garzoni* factors to guide its decision.

Judicial economy concerns the time and energy other courts have already spent on the proceedings.  *Hornback v. Polylok, Inc. (In re Hornback)*, No. 21-8006, 2021 WL 5320418, at *3 (B.A.P. 6th Cir. Nov. 16, 2021) (citing *Junk v. CitiMortgage, Inc. (In re Junk)*, 512 B.R. 584, 607 (Bankr. S.D. Ohio 2014)).  The more time and energy spent, the more familiar a court typically is with the facts and circumstances of the underlying causes of action.  *Id*. (citing *Ewald v. Nat'l City Mortgage Co. (In re Ewald)*, 298 B.R. 76, 81 (Bankr. E.D. Va. 2002)).  The time an action has been pending is not important in and of itself, rather a court should focus on "the stage to which the non-bankruptcy litigation has progressed" because "the further along the litigation, the more unfair it is to force the plaintiff suing the debtor-defendant to duplicate all of its efforts in the bankruptcy court."  *Id*. (citing *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 737 (7th Cir. 1991)).  The further along the state court litigation is, the more likely a court is to lift the stay to allow it to proceed.  *Compare In re Martin*, 542 B.R. at 203 (affirming the decision to lift the stay because "[d]iscovery has commenced and thousands of pages of written discovery have been exchanged and reviewed"), *with In re Sonnax Indus.*, 907 F.2d 1280, 1287 (2d Cir. 1990) (declining to lift the

stay because "the litigation in state court has not progressed even to the discovery stage").

The creditors argue that "the litigation concerning the [state court lawsuit] has been pending over [a] year" and, therefore, it "is at a much more advanced stage" (Docket No. 25, page 5 and Docket No. 31, page 4). But time alone does not mean a case is at a more advanced stage. The public dockets for both state court cases evidence that neither case has a trial date, nor have the parties exchanged discovery, taken depositions, or filed dispositive motions. The state court actions are no further along than the creditors' adversary proceedings in this Court. Judicial economy weighs against granting the creditors' motions.

The first factor drives the second. Presumably, parties in litigation that is further along are more prepared to go to trial. But before trial, parties need to conduct discovery . *See, e.g., In re United Imps.*, 203 B.R. 162, 167 (Bankr. D. Neb. 1996) ("This case is not ready for trial. Specifically, not a single deposition has been taken, nor have interrogatories been served, nor have any documents been produced . . . ."), *cited with approval in In re Garzoni*, 35 Fed. App'x at 181. They also need a trial date. As these necessary intermediate steps have yet to occur, the creditors' state court cases are not ready for trial in the foreseeable future. Additionally, Lori Rehn's lawsuit in the Cuyahoga County Court of Common

6

Pleas appears to be stayed pending an appeal of the state court's order appointing a receiver. Conversely, this Court held a pretrial conference on August 16, 2022, for both creditors' adversary proceedings and indicated that the Court would soon issue a scheduling order. This factor also weighs against granting the creditors relief from stay.

As for the third factor, the section 341 meeting of creditors in this case was first set for April 4, 2022, adjourned to May 3, 2022, and then adjourned again to August 8, 2022 (Docket Nos. 2, 21, and 66). The chapter 7 trustee has not yet issued a report on the debtor's assets nor set a bar date for proofs of claim. Therefore, whether there are assets available for distribution and whether the creditors will file proofs of claim are both preliminary bankruptcy issues that require resolution. *See, e.g., In re United Imps.*, 203 B.R. at 168 (concluding that the filing of a proof of claim is a preliminary bankruptcy issue requiring resolution); *accord Benedor Corp. v. Conejo Enters. (In re Conejo Enters.)*, 96 F.3d 346, 353 (9th Cir. 1996).

The fourth factor questions the creditors' likelihood of success on the merits in the state court action. Given the stage of litigation in both this Court and the state court actions, this Court is in no position to assess whether the creditors are likely to prevail on their claims. *See In re Hornback*, 2021 WL 5320418, at *5 ("A

7

bankruptcy court is not required to be clairvoyant regarding the movant's chance of success on the merits when determining whether to lift the automatic stay.").

The final factor weighs the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors. The debtor argues that it would be burdensome to litigate the state court claims in their "current fractured state in multiple venues" (Docket No. 34, page 6 and Docket No. 39, page 6). While both state court cases are located within the Northern District of Ohio, the debtor undoubtedly faces some additional expense to litigate in two courts rather than one. No party has identified the impact, if any, of the state court litigation on other creditors. This last factor has little effect on the analysis.

The creditors raise three other issues not squarely addressed in the above factors. First, the creditors assert that there are "defendants in the [state court lawsuits] over which the Court does not have jurisdiction" (Docket No. 25, page 5 and Docket No. 31, page 5). While it is true that the state court litigation names defendants not involved in this bankruptcy court proceeding, it is also true that neither court of common pleas alone has jurisdiction over all of the defendants in the two lawsuits.

8

Second, the creditors argue that the state court actions involve state law claims presumably better suited to adjudication in a state court. While the claims at issue may be "bread-and-butter issues" for state courts, this Court regularly determines issues under Ohio law. *In re Rombkowski*, No. 16-33856, 2017 WL 1103527, at *3 (Bankr. N.D. Ohio Mar. 21, 2017) (ultimately granting a motion for relief from stay but agreeing that bankruptcy courts are capable of determining state law issues); *see also Bavelis v. Doukas (In re Bavelis)*, 773 F.3d 148, 150 (6th Cir. 2014) (in short, holding that bankruptcy courts have the authority to interpret state law).

Third, the creditors assert that denying relief from stay would also deny them their right to trial by jury, which both creditors have requested in state court. Federal Rule of Civil Procedure 38—which preserves "inviolate" the parties' right to a jury trial—applies to bankruptcy cases and proceedings. Bankr. R. 9015. As in Ohio state court, a party must file a written demand for trial by jury in bankruptcy court. Fed. R. Civ. P. 38(b) and Bankr. R. 9015(b). But a party must first have a right to a jury trial. Bankr. R. 9015(b) and 28 U.S.C. § 157(e). It is precedent in this circuit that "a dischargeability proceeding is a type of equitable claim for which a party cannot obtain a jury trial." *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 960 (6th Cir. 1993); *see also Anderson v. Demis (In re*

*Anderson)*, 98 F. App'x 367, 369 (6th Cir. 2004). This includes liquidating a claim in connection with a dischargeability proceeding. *In re McLaren*, 3 F.3d at 966 (quoting *In re Devitt*, 126 B.R. 212, 215 (Bankr. D. Md. 1991)); *see also Markwood Invs. Ltd. v. Neves (In re Neves)*, 500 B.R. 651, 659 (Bankr. S.D. Fla. 2013) (citing *In re McLaren* among other cases and concluding that "virtually every court to consider the issue of whether the Bankruptcy Court has jurisdiction under the Bankruptcy Code to liquidate a claim in connection with a dischargeability action has found that jurisdiction exists and . . . the debtor has no jury trial right associated with liquidation of that claim.").

By filing their adversary proceedings, the creditors lost their right to a jury trial in this Court. *In re McLaren*, 3 F.3d at 961 ("Under *Granfinanciera* [*v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782 (1989)], [the creditor's] filing [the dischargeability proceeding] thus stripped him of any right to a jury trial he might have otherwise claimed."); *see also In re Richard Potasky Jeweler*, 222 B.R. 816, 824 (S.D. Ohio 1998) ("Because [the creditor] availed himself of the equitable jurisdiction of the bankruptcy court, he cannot complain of his consequent loss of the right to jury trial."). The unavailability in this Court of the jury trial requested in state court bears consideration, but the Court must weigh it against the five factors analyzed above. *See In re Martin*, 542 B.R. at 203 (a jury demand together

10

with state court litigation at a more advanced stage, state law fraud issues, and additional parties not involved in the bankruptcy proceeding weighed in favor of granting relief from stay); *see also In re Rombkowski*, 2017 WL 1103527, at *3 (same).  Here, all of the other factors outweigh the creditors' state court jury demand and support a decision to deny the creditors' motions for relief from stay.

Lastly, the debtor argued at the August 16, 2022, hearing that the Court should not grant the creditors' motions because of the potential preclusive effect the Court would need to give to the state court judgments.  As the 6th Circuit Bankruptcy Appellate Panel explained in *In re Martin*, the Court would not be "improperly abdicat[ing] its role" if it were to grant the creditors' motions and allow the state court actions to continue while holding in abeyance the dischargeability actions.  542 B.R. at 203.  This argument has little weight.

As a final matter, a bankruptcy petition stays "the . . . continuation . . . of a judicial . . . action or proceeding *against the debtor* . . . ." 11 U.S.C. § 362(a)(1) (emphasis added).  Absent unusual circumstances, the automatic stay does not stop proceedings against non-debtor entities.  *In re Delta Air Lines*, 310 F.3d 953, 956 (6th Cir. 2002) (citing *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 314 (6th Cir. 2000)); *see also Plastech Holding Corp. v. WM GreenTech Auto. Corp.*, No. 17-2122, 2018 U.S. App. LEXIS 16915, at *1 (6th Cir. June 21, 2018)

(summarizing the three categories of unusual circumstances); *cf. In re Johnson*, 548 B.R. 770, 795 (Bankr. S.D. Ohio 2016) (continuing a prepetition arbitration proceeding against parties related to the debtor did not violate § 362(a)(1) but did violate § 362(a)(3) because the arbitration award exercised control over property of the estate). Therefore, although the Court denies the creditors' motions for relief from stay, the automatic stay does not apply to any non-debtor entities.

For better or worse, this Court must already become familiar with denial of discharge claims against the debtor in two adversary proceedings and a potential third adversary proceeding with the United States Trustee. If those denial of discharge claims are unsuccessful, there are also six adversary proceedings seeking the nondischargeability of certain debts whose amounts have yet to be determined. Therefore, at least for now, the Court believes that the better option is for all claims and proceedings involving the debtor to be heard in a single forum before a single judge and that this Court is in the best position to achieve, so far as possible, the just, speedy, and inexpensive determination of all such claims. If circumstances change in the future, the creditors may renew their motions for relief from stay. *See Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 592 n.4 (2020).

CONCLUSION

For the reasons stated above, the Court denies without prejudice the creditors' motions for relief from stay.

IT IS SO ORDERED.