# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 22-10571-(SKK) |
| | ) | |
| Matthew M. Motil, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Suzana Krstevski Koch |

**OBJECTION OF THE UNITED STATES TRUSTEE TO CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER APPROVING COMPROMISE AND SETTLEMENT OF CERTAIN CONTROVERSIES WITH MATTHEW M. MOTIL**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 (the "United States Trustee"), hereby objects (the "Objection") to chapter 7 trustee Virgil E. Brown, Jr.'s *Motion for an Order Approving Compromise and Settlement of Certain Controversies with Matthew M. Motil* (the "Motion to Approve Settlement") filed on July 1, 2024. The United States Trustee respectfully requests the Court to deny the Motion to Approve Settlement. In support, the United States Trustee states the following:

## Background

1. From approximately 2017 to 2021, debtor Matthew M. Motil (the "Debtor") perpetrated a massive real estate Ponzi scheme where he stole millions of dollars from dozens of investors, many of whom invested substantial portions of their personal savings. The Debtor convinced investors to lend him money via promissory notes by promising them that he would use their money to renovate or rent real properties and pay them back with interest using the properties' sales proceeds or rental income. He also assured them that their loans would be secured via a valid, recorded, first-lien mortgage. In reality, he used the investors' money to repay other investors, fund his other unrelated businesses, and spend lavishly on himself and his family. His promises about the notes being valid, recorded, first-lien mortgages were also lies; he often solicited multiple investments (all of which he had promised a first-priority lien) on the same property and their

1

combined value dwarfed the actual value of the property; also, he did not record the notes as promised.

2. Inevitably, the bottom fell out of the Debtor's scheme in 2021, and angry investors sued the Debtor in state court. Over the Debtor's strenuous objections, the Summit County and Cuyahoga County Courts of Common Pleas appointed Zachary B. Burkons as a receiver over the Debtor's businesses and tasked him with repaying investors.

3. On March 7, 2022, the Debtor filed his chapter 7 petition. Docket No. 1. The United States Trustee appointed Virgil E. Brown, Jr., as the chapter 7 trustee in this case (the "Trustee").

4. On his schedules filed with his petition, the Debtor listed his scheme's investors (the "Creditor-Investors") as unsecured creditors with unliquidated claims of unknown values. Docket No. 1 at 20-46. However, fifty-six creditors, most of whom are Creditor-Investors, have filed claims totaling $10,574,578.01. To date, no party has objected to any of these claims.

5. The United States Trustee initiated an adversary proceeding against the Debtor seeking denial of the Debtor's discharge on September 30, 2023. Adv. Proceeding No. 22-01084-AIH, Docket No. 1. On June 13, 2023, after a multi-day trial, the Court denied the Debtor's discharge. Adv. Proceeding No. 22-01084-AIH, Docket No. 54. The Court found that the Debtor transferred a truck to his wife for no consideration prior to filing his bankruptcy petition with the intent to hinder, delay, or defraud creditors by titling the truck in her name to keep it out of the creditors' reach while he still used the vehicle. Adv. Proceeding No. 22-01084-AIH, Docket No. 54. The Court also found that the Debtor made false oaths about that transaction. Adv. Proceeding No. 22-01084-AIH, Docket No. 54. The Debtor did not appeal this decision and did not file a motion to reconsider or vacate the judgment.

6. Several Creditor-Investors also had initiated adversary proceedings against the Debtor, seeking a determination that the debt owed to them was nondischargeable under 11 U.S.C. § 523. Adv. Proceeding Nos. 22-01032-(AIH), 22-01036-(AIH), 22-01043-(AIH), 22-01047-(AIH), 22-01048-(AIH), 22-01049-(AIH), 22-01062-(AIH), 22-01063-(AIH). While some of these adversary proceedings were settled early on, most were dismissed as moot after the Court entered the order denying the Debtor's discharge. Case No. 22-10571, Docket Entries Dated 09/22/2023 and 09/25/2023; Adv. Proceeding No. 22-01043-(AIH), Docket No. 22; Adv. Proceeding No. 22-01047-(AIH), Docket No. 14; Adv. Proceeding No. 22-01048-(AIH), Docket No. 20; Adv. Proceeding No. 22-01049-(AIH), Docket No. 23; Adv. Proceeding No. 22-01062-(AIH), Docket No. 10; Adv. Proceeding No. 22-01063-(AIH), Docket No. 15.

7. The Securities and Exchange Commission sued the Debtor, his wife, and several of the business entities he used for his Ponzi scheme, alleging that the Debtor orchestrated a Ponzi scheme and violated securities laws and regulations. United States District Court for the Northern District of Ohio Case No. 23-CV-1853, Docket No. 1. The Defendant is also the subject of an ongoing criminal investigation into his Ponzi scheme. United States District Court for the Northern District of Ohio Case No. 23-CV-1853, Docket No. 7 at 2.

### The Motion to Approve Settlement

8. On July 1, 2024, the Trustee filed the Motion to Approve Settlement. Docket No. 177. The Trustee writes that he began negotiating a settlement with the Debtor shortly after the denial of discharge. The United States Trustee was unaware of these negotiations and did not participate. Upon information and belief, none of the Creditor-Investors or other parties-in-interest participated in the negotiations besides the Trustee and the Debtor.

9. The Motion to Approve Settlement proposes resolving creditors' claims via the following arrangement (the "Proposed Settlement"):

a. Debtor will make an initial payment of One Hundred Thousand Dollars ($100,000) to the bankruptcy estate for distribution to creditors and expenses (the "*Initial Payment*");

b. The Initial Payment shall be in the form of a lump sum payment to the Trustee within 7 days of the later to occur of Court approval of this Settlement or execution of a settlement agreement between Debtor and Trustee;

c. Debtor will cooperate with Trustee and his counsel to timely review those claims for the purposes of allowance;

d. Upon receipt of the Initial Payment, Debtor will be released from personal liability for all claims and creditors will be enjoined from taking any action to enforce their claims against Debtor, so long as Debtor performs his obligations in full pursuant to the settlement agreement;

e. Following the first calendar year after the date the Initial Payment is made and thirty (30) calendar days after his federal income tax return is deemed accepted by the Internal Revenue Service, and each year thereafter on such date until the principal amount of each creditor's claims are paid in full, Debtor will make payments to the Trustee from his gross income in the following amounts:

   a. $0.00 to $100,000 – 7.5%

   b. $100,001 to $150,000 – 25%

   c. 150,000.01 to $200,000 – 20%

   d. 200,000.01 to $250,000 – 15%

   e. 250,000.01 to $300,000 – 10%

   f. 300,000.01 and above – 5%

f. Any failure by Debtor to make such payments owed will revoke his release and terminate the injunction against creditors;

g. Debtor shall be required to timely (within 5 days of filing or request by the Trustee, whichever comes first) provide the Trustee with accurate copies of his federal tax returns; tax returns for any businesses which Debtor is a member; and any other documents reasonably requested by the Trustee to substantiate Debtor's income levels;

h. Debtor shall promptly transfer and assign to the Trustee any and all claims which he may have against prior legal counsel; and

i. The Debtor and Trustee shall cooperatively work with the state court-appointed receiver, Zachary B. Burkons, Mr. Burkons' counsel, and any successors thereto (collectively the "Receiver") to account for any payments made by the Receiver to creditors which may offset remaining payments owed to creditors.

Docket No. 177 at 5-6 (¶ 15).

10. In the Motion to Approve Settlement, the Trustee did not explain how the Debtor would earn income, how long it would take to repay creditors in full, or how long the case might remain open.

11. The Trustee justifies the Proposed Settlement by arguing that (1) settlements are usually favored in bankruptcy, (2) the Court has authority to enter an order approving the settlement under 11 U.S.C. § 105(a), and (3) the settlement is both fair and equitable and in the best interest of the estate under Federal Rule of Bankruptcy Procedure 9019. Docket No. 177. Regarding the third point, the Trustee argues that the Proposed Settlement satisfies the four factors identified by this Court in *In re Parkview Hospital-Osteopathic Medical Center*: (a) the probability of success in the litigation; (b) the difficulties of collecting a judgment; (c) the complexity, expense, inconvenience, and delay required of the litigation; and (d) "the paramount interest of the creditors with proper deference to their reasonable views." Docket No. 177 at 8-9. The Trustee believes he is likely to succeed in litigation against the Debtor, but that collecting a judgment would be difficult and "prosecution of the claims will be expensive and time consuming and may lead to diminishing returns." *In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603 (Bankr. N.D. Ohio 1996) (quoting *In re A & C Properties,* 784 F.2d 1377, 1381 (9th Cir.), *cert. denied,* 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986)); Docket No. 177 at 8-9 (¶¶ 23-25). The Trustee then makes a conclusory allegation that the last element – the paramount interest of the creditors and proper deference to their reasonable views – is satisfied because "[i]t is in the best interest of the estate and creditors for the Trustee to compromise a needed adversary proceeding under the terms of the Proposed Settlement." Docket No. 177 at 9 (¶ 26).

## Law and Argument

### I. The Trustee has not established his authority to propose this settlement.

12. First, it is unclear what controversy the Proposed Settlement would resolve. At certain points, it seems as if the Trustee seeks to resolve potential litigation between himself and the Debtor. For instance, in the opening paragraph, he states that "[t]he proposed settlement . . . will resolve potential litigation"; in paragraph twenty-three, when discussing the probability of success in litigation, he states that "[t]he Trustee further believes if he were to go to trial, it would result in a favorable outcome for the estate"; and in paragraph twenty-six, he states that "[t]he Debtor has agreed to settle the Trustee's claims against him." Docket No. 177 at 1, 9, 10 (¶¶ 23, 26). However, elsewhere in the motion, it sounds like the Trustee wants to settle creditors' claims against the Debtor on the creditors' behalf. In the opening paragraph, the Trustee asks the Court to "[enjoin] third parties [i.e., creditors, including Creditor-Investors] from pursuing claims that the Trustee is resolving in the settlement." Docket No. 177 at 1. The Trustee later states that the purpose of settlement negotiations was to "resolve claims by creditors and the Debtor's personal liability." Docket No. 177 at 5 (¶ 14). This ambiguity alone makes approval of the settlement unjustifiable; any settlement agreement should clearly state what dispute it resolves.

13. Both interpretations of the dispute at hand present problems because under either interpretation, the Trustee seeks to bind creditors to this settlement and release their claims without their consent. The Trustee argues that the Court has the power to approve the Proposed Settlement under 11 U.S.C. § 105(a), which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." However, this power can only be used to carry out an authority expressly given in the Bankruptcy Code. *See Law v. Siegel*, 571 U.S. 415, 421 (2014); *In re Middleton Arms, Ltd. P'ship*, 934 F.2d 723, 724 (6th Cir. 1991). The Trustee does not cite a single code provision, rule, or case that allows

6

a trustee to settle creditors' claims against the Debtor on their behalf without their consent. No such code provision, rule, or case exists.

14. Federal Rule of Bankruptcy Procedure 9019, which the Trustee also cites as authority for the Proposed Settlement, provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." There is no mention of a trustee settling claims on behalf of creditors. While the Trustee has the capacity to sue under 11 U.S.C. § 323(b), that only includes the power to prosecute suits that are part of the estate (e.g., where the Trustee serves as the successor to the Debtor's interest or where a suit has been assigned to the Trustee to prosecute for the benefit of the estate) or to bring suits under the Trustee's avoidance powers. *3 Collier on Bankruptcy P 323.03*. The creditors' claims in this case fall under neither category. The Trustee has no authority to settle the creditors' claims on their behalf without their consent.

15. The injunction in the Proposed Settlement is invalid for the same reasons as a nonconsensual third-party release in a chapter 11 case. The Proposed Settlement prevents third parties – the creditors – from pursuing claims against the Debtor, under a payment plan that they did not negotiate or consent to. The releases are non-consensual third-party releases. The Supreme Court just held, in *Harrington v. Purdue Pharma L.P.*, that the Bankruptcy Code does not authorize such releases. *See Harrington v. Purdue Pharma L.P., et al.*, 144 S. Ct. 2071, 2088 (2024). Just as in *Purdue* there was no statutory authority to force creditors to release their claims against non-debtor principals of the debtor, there is no statutory authority to force the creditors here to release their claims either.

16. Mutual assent of the litigants is a basic requirement for a valid settlement agreement. *See Gilstrap v. Sushinati LLC*, No. 1:22-CV-434, 2024 WL 2197824, at *8 (S.D. Ohio

May 15, 2024). Here, there is no mutual assent because none of the creditors have agreed to the Proposed Settlement, and none even helped negotiate it. Two Creditor-Investors have already objected to the Motion to Approve Settlement. Docket No. 179. The Trustee cannot settle these claims on the creditors' behalf without their consent. If the Debtor wants to settle them, he should negotiate directly with the creditors.

## II. The injunction provision would provide the Debtor a discharge that the Court has already denied him.

17. The Debtor is using the Proposed Settlement to improperly purchase the discharge the Court denied him. Every bankruptcy debtor seeks to obtain a discharge. *See In re Heinbuch*, No. 06-60670, 2016 WL 1417913 at *2 (Bankr. N.D. Ohio Apr. 7, 2016) ("[t]he main purpose of a bankruptcy filing is to obtain a discharge"). A "bankruptcy discharge is a privilege and not a right and should be granted only to the honest but unfortunate debtor." *McDermott v. Spencer (In re Spencer)*, 539 B.R. 777, 784 (Bankr. N.D. Ohio 2015) (citation omitted). Under 11 U.S.C. § 727(a), a debtor who "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred . . . property of the debtor, within one year before the date of the filing of the petition" or who "knowingly and fraudulently, in or in connection with the case – made a false oath or account" is not entitled to a discharge. 11 U.S.C. § 727(a)(2)(A), (4)(A). If the bankruptcy court makes such a finding and denies the debtor a discharge, the debtor's debts remain collectable. An order denying discharge is a final order because it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *In re Perkins*, 581 B.R. 822, 827 (B.A.P. 6th Cir. 2018) (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989)). At that point, the Debtor may appeal to the bankruptcy appellate panel or the district court.

18. This Court denied the Debtor's discharge after finding that he transferred a vehicle to his wife less than a year before filing for bankruptcy with the intent to hinder, delay, or defraud his creditors or an officer of the estate and knowingly and fraudulently made false oaths about the transaction. Docket Nos. 143-44; Adv. Proceeding No. 22-01084-AIH, Docket No. 54. The Debtor chose not to appeal this order and, thus, his creditors may collect on their debts when the automatic stay terminates. However, the Trustee now proposes to sell the Debtor back his discharge for a nominal portion of what he owes via the provision of the Proposed Settlement that prevents creditors from collecting on their debts owed them by the Debtor once the Debtor pays the Trustee $100,000. Docket No. 177 at 5 (¶ 15(d)). The Trustee has no power to offer such a deal. Nowhere in the Bankruptcy Code does it allow a chapter 7 trustee to effectively reinstate a debtor's discharge after the bankruptcy court has already denied it. Thus, not only does the Trustee lack authority to negotiate on behalf of creditors without their consent, as discussed earlier, he also lacks the authority to negotiate a reversal of a final order from the Court.

19. Further, allowing the injunction would not be in the interest of creditors and would cause them significant harm. Because the Debtor has not proven himself to be an honest and unfortunate debtor, the creditors have the right to collect on their debts as they see fit. If the Debtor wants creditors to release his liability and their claims against him, he should negotiate with them directly rather than trying to sneak in a back-door discharge.

### III. Under the Proposed Settlement, the bankruptcy case would be open indefinitely and creditors would likely never be paid in full.

20. The Proposed Settlement is sparse on details of how the Debtor would repay creditors and how long it would take. As of the petition date, the Debtor was unemployed and earned no income. Docket No. 11. The Motion to Approve Settlement does not mention any new job or source of income from which the Debtor would pay creditors.

21. The Proposed Settlement does not state how long it will take for creditors to be repaid. It merely provides that the Debtor will make annual payments of a percentage of his gross annual income "until the principal amount of each creditor's claims are[sic] paid in full." Docket No. 177. The payment process laid out in the Proposed Settlement is ambiguous. It is unclear whether the payments function like a tax bracket[1] (i.e., the value ranges are "brackets" or "layers" and the Debtor would pay the listed rate for whatever income falls in that bracket or layer) or if the percentages are flat rates that apply to different income levels.[2] It is also puzzling that the rate of payment goes down after the debtor reaches the $150,000 mark. Increasing or maintaining the rate as the Debtor's income increased would allow for a quicker payoff. It is nearly impossible to estimate how long it would take the Debtor to pay his creditors in full (especially since the Motion to Approve Settlement is silent on that issue) but given the low rates of payment set out in the Proposed Settlement and the high amount owed to the creditors, it will likely take a long time, if it happens at all. It is not fair to creditors, especially the Creditor-Investors, to omit a timeline or some notice of when they might be paid. Such an omission is inconsistent with an orderly payment process that the Proposed Settlement ostensibly seeks to create.

---

[1] If this is how the payment plan works, at an annual gross income of $300,000, it would take the Debtor about 249 years to pay claims in full:
> $(0.075 * 100,000) + (0.25 * 50,000) + (0.20 * 50,000) + (0.15 * 50,000) + (0.10 * 50,000) = $42,500 annual payment. Total claims amount of $10,574,578.01 / $42,500 per year = 248.81 years to pay claims in full.

To pay claims in full within forty years (the Debtor is currently forty-four, so this time period would likely coincide with the majority of the remainder of his life), the Debtor would need to earn an annual gross income of $4,437,289:
> Total claims amount of $10,574,578.01 / 40 years = $264,364.45 per year
> ($264,364.45 per year - $42,500 payment for first $300,000 of annual gross income) / 5% rate on income above $300,000 per the Proposed Settlement = $4,437,289 in annual gross income needed to produce an annual payment to claims that would allow them to be paid in full within forty years.

[2] If the payment plan uses a flat rate, then it would take the Debtor the following amounts of time to repay creditors in full at the listed gross annual income levels:
> $110,000 → 384 years | Total claims amount of $10,574,578.01 / (0.25 payment rate * $110,000 gross annual income) = 384.53 years
> $310,000 → 682 years | Total claims amount of $10,574,578.01 / (0.05 payment rate * $310,000 gross annual income) = 682.23 years
> $5,000,000 → 42 years | Total claims amount of $10,574,578.01 / (0.05 payment rate * $5,000,000 gross annual income) = 42.29 years

22-10571-skk    Doc 196    FILED 08/09/24    ENTERED 08/09/24 14:16:12    Page 10 of 13

22. The Proposed Settlement is not a serious or realistic plan to make creditors whole. Instead, the Trustee has unwittingly cooperated with a blatant attempt by the Debtor to buy back his discharge by circumventing the Bankruptcy Code and this Court. The proposed settlement has no sound legal basis and would unleash significant harm on creditors, most of whom are already victims of the Debtor's malfeasance and bad faith. Creditors deserve the chance to collect on or negotiate their claims directly with the Debtor. Accordingly, the Court should deny the Motion to Approve Settlement.

**WHEREFORE**, the United States Trustee respectfully requests this Court to enter an order sustaining the United States Trustee's Objection and denying the Trustee's Motion to Approve Settlement and for such further relief as the Court may deem appropriate.

Dated: August 9, 2024　　　　　　　　　　　　　　　　Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

By:　　*/s/ Spencer H. Lutz*
　　　　Spencer H. Lutz (0101482)
　　　　Trial Attorney
　　　　United States Department of Justice
　　　　Office of the United States Trustee
　　　　Howard M. Metzenbaum U.S. Courthouse
　　　　201 Superior Avenue East, Suite 441
　　　　Cleveland, Ohio 44114
　　　　Phone: (216) 522-8289
　　　　Fax: (216) 522-7193
　　　　Email: Spencer.Lutz@usdoj.gov

# Certificate of Service

I hereby certify that on August 9, 2024, a true and correct copy of *Objection of the United States Trustee to Trustee's Motion for an Order Approving Compromise and Settling Certain Controversies with Matthew M. Motil* was served upon the following in the manner indicated:

Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

- Austin B. Barnes    abarnes@sandhu-law.com, bk1notice@sandhu-law.com
- Scott R. Belhorn    Scott.R.Belhorn@usdoj.gov
- Virgil E. Brown    virgil@vebtrustee.com
- Virgil E. Brown    virgil@vebtrustee.com, vbrownjr@ecf.axosfs.com
- Evan T. Byron    etb@kdglegal.com, hlb@kdglegal.com
- Hunter G. Cavell    hcavell@cavelllaw.com
- Thomas W. Coffey    tcoffey@tcoffeylaw.com, nbeba@tcoffeylaw.com
- Daniel A. Cox    bankruptcy@woodlamping.com, dacox@woodlamping.com
- Matthew R. Duncan    mrduncan@bmdllc.com, smjakuszewski@bmdllc.com
- Scott D. Fink    ecfndoh@weltman.com
- Brian J. Green    bgreen@shaperolaw.com
- Herbert J. Kramer    hjklegal@gmail.com
- Jeffrey M. Levinson    jml@jml-legal.com
- Spencer Lutz    spencer.lutz@usdoj.gov
- Eric R. Neuman    eric@drlawllc.com, kim@drlawllc.com;r50765@notify.bestcase.com;raymond@drlawllc.com;jennifer@drlawllc.com
- David M. Neumann    dneumann@meyersroman.com, docket@meyersroman.com;mnowak@meyersroman.com
- Michael Ohara    mike@michaeloharaattorney.com
- Jody Michelle Oster    jodymoster@gmail.com
- Paige M. Rabatin    pmrabatin@bmdllc.com
- United States Trustee    (Registered address)@usdoj.gov

Via regular United States Mail, postage pre-paid:

American Express National Bank
c/o Zwicker & Associates, PC
80 Minuteman Road
PO Box 9043
Andover, MA 01810-1041


Ford Motor Credit Company, LLC, c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS

Oklahoma City, OK 73118

Haywood Holder
McPerson Investments LLC
302 North Starfish Court
Hampton, VA 23669

Mike Motil
834 Fairway Vista Drive
Santa Maria, CA 93455

                By:      */s/ Spencer H. Lutz*
                        Spencer H. Lutz (0101482)
                        Trial Attorney
                        United States Department of Justice
                        Office of the United States Trustee
                        Howard M. Metzenbaum U.S. Courthouse
                        201 Superior Avenue East, Suite 441
                        Cleveland, Ohio 44114
                        Phone: (216) 522-8289
                        Fax: (216) 522-7193
                        Email: Spencer.Lutz@usdoj.gov